1  BART H. WILLIAMS (State Bar No. 134009)
   bart.williams@mto.com
2  MANUEL F. CACHÁN (State Bar No. 216987)
   manuel.cachan@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, California 90071-1560
5  Telephone:     (213) 683-9100
   Facsimile:     (213) 687-3702
6

7  DAVID H. FRY (State Bar No. 189276)
   david.fry@mto.com
8  JESLYN A. MILLER (State Bar No. 274701)
   jeslyn.miller@mto.com
9  MUNGER, TOLLES & OLSON LLP
   560 Mission Street
10 Twenty-Seventh Floor
   San Francisco, California 94105-2907
11 Telephone:     (415) 512-4000
   Facsimile:     (415) 512-4077
12
   Attorneys for Defendants
13 WELLS FARGO & COMPANY and
   WELLS FARGO BANK, N.A.
14

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17

18 SHAHRIAR JABBARI,                        Case No. 15-cv-02159 VC

19          Plaintiff,                      **DEFENDANTS' NOTICE OF MOTION
                                            AND MOTION TO COMPEL
20     vs.                                  ARBITRATION**

21 WELLS FARGO & COMPANY and WELLS          [REDACTED VERSION OF DOCUMENT
   FARGO BANK, N.A.,                        SOUGHT TO BE SEALED]
22
            Defendants.                     Judge:  Hon. Vince Chhabria
23                                          Ctrm.:  4
                                            Date:   September 10, 2015
24                                          Time:   10:00 a.m.

25                                          Action Filed:     May 13, 2015

26

27

28

DEFENDANTS' MOTION TO COMPEL ARBITRATION

1

**TABLE OF CONTENTS**

2
**Page**

3  MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

4  I.       Introduction ........................................................................................................... 1

5  II.      Background ............................................................................................................ 1

6          A.       Jabbari's Initial Accounts........................................................................ 1

7          B.       Jabbari's Subsequent Consumer Accounts .............................................. 2

8          C.       Jabbari's Use of His Initial Accounts...................................................... 2

9          D.       Jabbari Receives Notice Concerning the Arbitration Agreement ........... 3

10         E.       Jabbari's Use of His Subsequent Accounts............................................. 4

11         F.       ▮▮▮▮▮▮▮▮▮▮▮▮▮ ................................................................. 5

12  III.     ARGUMENT .......................................................................................................... 5

13         A.       Jabbari Is Bound By His Agreement to Arbitrate With Wells Fargo........................ 5

14         B.       The Dispute Falls Within the Agreement, But the Court Should Not Reach
                    that Question ............................................................................................. 9

15
                    1.       The Arbitration Agreement Clearly and Unmistakably Assigns to
16                           the Arbitrator All Decisions Regarding the Arbitrability of This
                             Dispute ......................................................................................... 9

17
                    2.       If the Court Were To Reach the Question of Arbitrability, Jabbari's
18                           Claims Should Be Arbitrated ...................................................... 10

19         C.       Jabbari Should Be Compelled to Arbitrate on an Individual Basis......................... 10

20         D.       The Case Should Dismissed or Stayed Pending the Outcome of The
                    Arbitration ............................................................................................... 11

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ackerberg v. Citicorp USA, Inc.*,
    898 F. Supp. 2d 1172 (2012)................................................................................... 6, 7, 8

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ........................................................................................ 1, 5, 11

*AT&T Tech., Inc. v. Commc'ns Workers of America*,
    475 U.S. 643 (1986) ................................................................................................ 9, 10

*Bischoff v. DirecTV, Inc.*,
    180 F. Supp. 2d 1097 (C.D. Cal. 2002)........................................................................ 8

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) ....................................................................................................... 8

*Collins v. Burlington N R.R. Co.*,
    867 F.2d 542 (9th Cir. 1989)....................................................................................... 11

*Davis v. Nordstrom*,
    755 F.3d 1089 (9th Cir. 2014)....................................................................................... 7

*Hill v. Gateway 2000 Inc.*,
    105 F.3d 1147 (7th Cir. 1997)....................................................................................... 8

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ......................................................................................................... 9

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014)......................................................................................... 7

*Oracle America, Inc. v. Myriad Group A.G.*,
    724 F.3d 1069 (9th Cir. 2013)....................................................................................... 9

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ......................................................................................................... 9

*Sparling v. Hoffman Constr. Co.*,
    864 F.2d 635 (9th Cir. 1988)....................................................................................... 11

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ..................................................................................................... 11

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ..................................................................................................... 10

DEFENDANTS' MOTION TO COMPEL ARBITRATION

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Zenelaj v. Handybook Inc.*,
   No. 14-CV-05449-TEH, 2015 WL 971320 (N.D. Cal. Mar. 3, 2015)....................................... 9

**STATE CASES**

*Badie v. Bank of America*,
   67 Cal. App. 4th 779 (1998).................................................................................................. 8

*Craig v. Brown & Root, Inc.*,
   84 Cal. App. 4th 416 (2000).................................................................................................. 7

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
   25 Cal. App. 3d 987 (1972).................................................................................................. 6

**FEDERAL STATUTES**

Federal Arbitration Act, 9 U.S.C. § 1 et seq. ........................................................................ 1, 5, 11

**STATE STATUTES**

Civ. Code § 1589............................................................................................................................ 6

Civ. Code § 3521............................................................................................................................ 6

Evid. Code. § 641 ........................................................................................................................... 6

**STATE RULES**

AAA Commercial Arbitration Rules, Rule 7(a).............................................................................. 9

1  **PLEASE TAKE NOTICE THAT** at 10:00 A.M. on September 10, 2015, or as soon

2  thereafter as the parties may be heard, in Courtroom 4 of the United States District Court for the

3  Northern District of California, located at 450 Golden Gate Avenue, 17th Floor, San Francisco,

4  California, Defendants Wells Fargo & Company and Wells Fargo Bank, N.A., will and hereby do

5  move the Court for an order compelling Plaintiff Shahriar Jabbari to submit his claims in this

6  action to binding individual arbitration.

7  <center>**STATEMENT OF RELIEF SOUGHT**</center>

8  Defendants seek an order compelling Plaintiff Shahriar Jabbari to arbitrate his claims on an

9  individual basis, pursuant to the terms of his agreement with Wells Fargo.

10  <center>**ISSUE TO BE DECIDED**</center>

11  Should Jabbari be compelled to resolve his dispute with Wells Fargo in individual

12  arbitration, pursuant to the terms of the arbitration agreement that governed his relationship with

13  the bank?

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

<center>DEFENDANTS' MOTION TO COMPEL ARBITRATION</center>

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Shahriar Jabbari agreed to arbitrate all disputes between himself and Wells Fargo, and that an arbitrator would settle any disagreement about whether a particular dispute was subject to arbitration.  He further agreed that any arbitration would not be pursued as a class action or on a representative basis.  The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, requires that agreements to arbitrate be enforced.  And, as the Supreme Court has emphasized, agreements to arbitrate are enforceable even if they prohibit class action arbitration.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-53 (2011).  Jabbari must therefore arbitrate his claims on an individual basis and may not pursue them in federal court, as he is attempting to do here.

### II.   BACKGROUND

#### A.   Jabbari's Initial Accounts

In January 2011, Jabbari opened two accounts with Wells Fargo Bank, a checking account ▮▮▮▮ and a savings account ▮▮▮▮.[1]  Compl. ¶ 47; Declaration of Connie Kotzman ("Kotzman Decl.") ¶ 16, Ex. 5.  Monthly statements were sent to his home address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  These initial statements, as well as subsequent statements, included a notification that "California account terms and conditions apply."  *Id.* Exs. 11-66, 74-97. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Jabbari's various bank accounts are identified by reference to the last four digits of their respective account numbers.

DEFENDANTS' MOTION TO COMPEL ARBITRATION

1  Upon opening an account, new Wells Fargo customers are provided a Consumer Account

2  Agreement ("CAA"), which states the terms that govern the account.  *Id.* ¶ 8.  The CAA that was

3  distributed to new customers in January 2011 was dated September 24, 2010 ("2010 CAA").  *Id.* ¶

4  9, Ex. 1.  Prominently featured in the 2010 CAA—indeed, the first substantive section following

5  the definitions—was an arbitration provision entitled, "Dispute Resolution Program:  Arbitration

6  Agreement."  *Id.* Ex. 1 at 4.

7  **B.      Jabbari's Subsequent Consumer Accounts**

23  **C.      Jabbari's Use of His Initial Accounts**

---

27  [2] The Complaint includes the puzzling allegation that Jabbari learned he had more than two Wells
Fargo accounts only in 2013, on visiting the Los Gatos bank branch.  Compl. ¶ 48.  By then, he
28  had been receiving monthly statements on multiple accounts for years.

-2-



**D.**     <u>**Jabbari Receives Notice Concerning the Arbitration Agreement**</u>

With the December 2011 statement ▮▮▮▮▮▮▮▮ Wells Fargo sent a notification to

Jabbari that the Consumer Account Agreement had been revised by an addendum.  *Id*. at ¶ 10, Ex.

2.  The addendum, entitled "Important Change in Terms Notice:  Dispute Resolution Program:

Arbitration Agreement," read:

> This Addenda amends the Consumer Account Agreement ('Agreement'). All terms
> defined in the Agreement will have the same meaning when used in this Addenda.
> If there is a conflict between the addenda and the Agreement, this Addenda will
> control. Except as expressly amended by this Addenda, the Agreement remains in
> full force and effect.

DEFENDANTS' MOTION TO COMPEL ARBITRATION

1  *Id.* ¶ 10, Ex. 2 at 1.

2        The addendum provided further that if a customer and the bank had a dispute that could

3  not be resolved informally, then "the dispute will be resolved through the arbitration process as set

4  forth" in the addendum.  *Id.*  The term "dispute" was defined to include "any unresolved

5  disagreement between [the customer] and the Bank."  *Id.*  The full terms of the arbitration

6  agreement were then set forth.  *Id.*  Among those terms, in bold-faced capital letters, was the

7  following:

8          **NEITHER YOU NOR THE BANK SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY**

9          **ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO**

10          **ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.**

11  *Id.*[3]

12          **E.**    **Jabbari's Use of His Subsequent Accounts**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [3] Exactly the same language appeared in the 2010 CAA, although it was not in all capital letters. Kotzman Decl. Ex. 1 at 5.

28

1 

2

3

4

5

6

7

8

9

10

11    **F.**

12

13

14

15

16

17

18  **III.    ARGUMENT**

19       "Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid,

20  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

21  of any contract.'"  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1744 (2011) (quoting

22  9 U.S.C. § 2).  Whenever a party to such an agreement fails, neglects, or refuses to arbitrate a

23  dispute subject to the agreement, the aggrieved party may petition a United States District Court

24  for an order compelling arbitration of the dispute.  9 U.S.C. § 4.

25       **A.       Jabbari Is Bound By His Agreement to Arbitrate With Wells Fargo**

26       Jabbari admits that he opened two accounts with Wells Fargo in 2011.  Compl. ¶ 47.

27  Those accounts were governed by a Customer Account Agreement that included an arbitration

28  clause.  Kotzman Decl. ¶ 9, Ex. 1.  The agreement provides that "[b]y signing the Bank's signature

DEFENDANTS' MOTION TO COMPEL ARBITRATION

1   card for your Account or using your Account or Service, you will be considered to have received

2   and agreed to this Agreement." *Id.* Ex. 1 at 1.  Although Jabbari disputes the genuineness of at

3   least some of his signatures on file with Wells Fargo[4] (Compl. ¶ 49), he cannot dispute that he

4   "used" his accounts:  he deposited money in and took money out of them.  *See*, *e.g.*, Kotzman

5   Decl. Exs. 12-30, 49-53.  Nor can Jabbari claim that he was given inadequate notice of the

6   arbitration clause.  In December 2011, he was sent the addendum to the Customer Account

7   Agreement, which specifically concerned the arbitration clause and made clear that it governed

8   any dispute he had with the bank.  Kotzman Decl. Ex. 2 at 1 ("A 'dispute' is any unresolved

9   disagreement between you and the Bank.").

10          "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the

11   obligations arising from it, so far as the facts are known, or ought to be known, to the person

12   accepting."  Civ. Code § 1589; *see also* Civ. Code § 3521 ("He who takes the benefit must bear

13   the burden.").  Indeed, "an offeree, knowing that an offer has been made to him but not knowing

14   all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains."

15   *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972).

16          Jabbari accepted the benefits of his Wells Fargo accounts by using them—depositing and

17   withdrawing money both before and after he received the addendum.  And he knew or ought to

18   have known that his accounts were governed by an agreement that included an arbitration clause.

19   If nothing else, he ought to have known it because he was sent a notice expressly telling him so.

20   *See* Evid. Code. § 641 ("A letter correctly addressed and properly mailed is presumed to have been

21   received in the ordinary course of mail.").  Judge Illston's decision in *Ackerberg v. Citicorp USA,*

22   *Inc.*, 898 F. Supp. 2d 1172 (2012), is on point.  Ms. Ackerberg had been a long-standing Sears

23   credit card holder.  *Id.* at 1173-74.  Sears ultimately assigned her account to Citibank, which over

24

25   [4] Wells Fargo has submitted the account applications for Jabbari's various personal accounts together with this motion.  These are true and correct copies of the business records of Wells Fargo Bank, but Wells Fargo is not, by virtue of submitting them, making any representation as to

26   the genuineness of Jabbari's signatures on them, which Jabbari disputes.  None of Wells Fargo's arguments is premised on the assertion that Jabbari signed any of those personal account

27   applications.  Wells Fargo *does* assert that Jabbari signed the ███████████████████

28   ███████████ .

1  a number of years sent Ms. Ackerberg various amended account agreements that included

2  arbitration clauses.  *Id.* at 1174.  Each amendment gave account holders a period of time to close

3  their accounts if they did not wish to be bound by the new terms.  *Id.*  Ms. Ackerberg did not close

4  her account, but continued to use it, and the court found that she was bound by the amendment.

5  *Id.* at 1176.

6        The California Court of Appeal reached the same conclusion in an analogous context in

7  *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416 (2000).  Ms. Craig's employer mailed her a

8  brochure describing the ADR program it had established for any disputes with its employees.  *Id.*

9  at 419, 421.  The brochure explained that the ADR program included mandatory arbitration for

10  disputes that were not resolved through discussions or mediation, and a memorandum that

11  accompanied the brochure made clear that the program applied to all employees.  *Id.* at 419.

12  Although Ms. Craig denied ever having seen the brochure, the court inferred from the proof of

13  mailing that she had received it, and further found that she had implicitly agreed to be bound by it

14  by continuing in the defendant's employ for several years.  *Id.* at 422.

15        The Ninth Circuit followed *Craig* in *Davis v. Nordstrom*, 755 F.3d 1089 (9th Cir. 2014),

16  holding that Nordstrom employees who received an arbitration provision in the mail from their

17  employer were bound by it if they continued their employment.  *Id*. at 1092.[5]  The court found,

18  moreover, that Nordstrom did not need to say in its notice that continued employment constituted

19  acceptance of the terms of the new arbitration clause.  *Id*. at 1094.  Nevertheless, the employees

20  were bound because they continued to work after being given adequate notice of the terms

21

22  [5] The Ninth Circuit's decision in *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014), is
not to the contrary.  The court there refused to enforce the arbitration clause in a satellite radio
subscription agreement that was mailed to the plaintiff, who had received the service for a trial
23  period after purchasing a Toyota.  *Id.* at 561-62.  *Knutson* turned, however, on the fact that the
plaintiff did not even know he had a relationship with Sirius—plaintiff had simply purchased a car
24  from Toyota, which had installed the service unprompted by him—and would therefore have had
25  no reason to open the envelope from Sirius XM when it arrived.  *Id.* at 566 ("Knutson would only
have had notice of his opportunity to cancel his subscription, or the effect of his continued use of
26  the service, if he opened the Welcome Kit from Sirius and read all of the documents therein,
which—in view of his lack of awareness of any contractual relationship with Sirius—he had no
27  reason to do.").  That plainly is not true of Jabbari, who was well aware he had bank accounts at
28  Wells Fargo and had every reason to open his mail from the bank.

DEFENDANTS' MOTION TO COMPEL ARBITRATION

1    Nordstrom was offering.  *Id.*  The same principles apply to arbitration agreements sent to

2    consumers.[6]  *See*, *e.g.*, *Hill v. Gateway 2000 Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) (consumer

3    who receives arbitration agreement in the mail bound by terms if he does not return the computer);

4    *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1105 (C.D. Cal. 2002) (satellite television

5    contract was binding where customer used service after receiving contract in the mail); *cf.*

6    *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (cruise ship passenger bound by

7    forum selection clause in form contract printed on back of ticket).

8         These authorities control here.  Jabbari's accounts are governed by the CAA, which

9    includes an arbitration provision.  Kotzman Decl. ¶¶ 8-9, Ex. 1.  In December 2011, Jabbari was

10   sent the addendum to the CAA setting forth the terms of the arbitration provision that applied to

11   his accounts.[7]  *Id.* ¶¶ 10-11, Ex. 2.  ███████████████████████████████

12   ███████████████████████  Nor is there any basis to conclude that Jabbari was averse to

13   arbitrating any dispute with Wells Fargo.  To the contrary, he affirmatively consented to at least

14   two additional agreements—███████████████████████████████████—

15   with Wells Fargo that included arbitration clauses.  *Id.* ¶¶ 12-15, Exs. 3, 4.

16

17   _____

18   [6] *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998), does not require a different result.
     There, the court found that a "bill stuffer" advising credit card customers that the card issuer was
19   adding an arbitration clause to an existing terms-of-use agreement was insufficient.  *Id.*  The
     premise of the court's conclusion was not that an issuer is prohibited from changing the terms of
20   existing account agreements, or that mail notice is an ineffective way to do that, but only that the
     issuer could not unilaterally add an entirely *new* term that was not present in the original
21   agreement.  *Id.* at 796 (addition of arbitration clause not "objectively reasonable" in that it added
     "a new term which has no bearing on any subject, issue, right, or obligation addressed in the
22   original contract").  The CAA here, unlike the agreement in *Badie*, *did* have an arbitration clause.
     Kotzman Decl. Ex. 1.  Moreover, the addendum Jabbari received did not require accountholders to
23   immediately close their accounts to avoid being bound; it was sent with the December 2011
     statement, but did not take effect until February 15, 2012.  *See Ackerberg*, 898 F. Supp. 2d at 1176
24   (distinguishing *Badie* on precisely this ground).  ██████████████████████████████
     ████████████████████████████████████████████████████████████
25
     ██████████████████████████████████████
26
     [7] The addendum also stated that Jabbari's account was covered by a more expansive agreement,
27   which would remain in effect except as modified by the addendum.  Kotzman Decl. Ex. 2.  The
     CAA was available on the Wells Fargo website.  *Id.* ¶ 8.
28

-8-
DEFENDANTS' MOTION TO COMPEL ARBITRATION

**B.** **The Dispute Falls Within the Agreement, But the Court Should Not Reach that Question**

**1.** **The Arbitration Agreement Clearly and Unmistakably Assigns to the Arbitrator All Decisions Regarding the Arbitrability of This Dispute**

In deciding whether to compel arbitration, a court determines two gateway questions of "arbitrability": (1) whether a valid arbitration exists and, if so, (2) whether the agreement encompasses the dispute at issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, the parties may delegate these gateway questions to the arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). If the parties' agreement "clearly and unmistakably" provides that the arbitrator should decide questions of arbitrability, the court must honor that agreement. *AT&T Tech., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986).

The arbitration agreement here clearly and unmistakably directs that "disputes," "includ[ing] disagreements about the meaning, application or enforceability of this arbitration agreement," will be arbitrated. Kotzman Decl. Ex. 2; *see also id.* Ex. 1 at 4 ("A dispute also includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a 'dispute' subject to binding arbitration as provided for in this Arbitration Agreement."). That language could not be clearer. Moreover, the arbitration agreement incorporates the AAA Commercial Arbitration Rules, including Rule 7(a), which provides that the arbitrator shall decide the validity of the arbitration agreement and the arbitrability of any claim. *Id.* Ex. 2 (Addendum); Ex. 1 at 5 (2010 CAA). Incorporation of the AAA rules into an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to delegate the issue of arbitrability to the arbitrator. *See Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) (incorporation by reference of AAA rules delegated jurisdictional questions to an arbitrator); *Zenelaj v. Handybook Inc.*, No. 14-CV-05449-TEH, 2015 WL 971320, at *3 (N.D. Cal. Mar. 3, 2015) (citing Northern District of California cases finding incorporation of AAA arbitration rules constitutes clear and unmistakable evidence the parties agreed to arbitrate arbitrability).

The Court should therefore compel arbitration, leaving for the arbitrator to decide whether the claims are within the scope of the agreement.

-9-

DEFENDANTS' MOTION TO COMPEL ARBITRATION

1      **2.      If the Court Were To Reach the Question of Arbitrability, Jabbari's
               Claims Should Be Arbitrated**

2

3          "An order to arbitrate the particular grievance should not be denied unless it may be said

4   with positive assurance that the arbitration clause is not susceptible of an interpretation that covers

5   the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers v. Warrior &*

6   *Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  Where the arbitration clause is sufficiently

7   broad, there is a heightened presumption of arbitrability, such that "[i]n the absence of any express

8   provision excluding a particular grievance from arbitration, we think only the most forceful

9   evidence of a purpose to exclude the claim from arbitration can prevail." *Id*.  That principle

10  plainly applies here.  The addendum to the arbitration agreement states that "[i]f you have a

11  dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank

12  agree that upon demand by either you or the Bank, the dispute will be resolved through the

13  arbitration process as set forth in this part."  Kotzman Decl. Ex. 2 at 1.  It goes on to define

14  "dispute" as broadly as possible to include "any unresolved disagreement between you and the

15  Bank," providing examples as follows:  "[i]t includes any disagreement relating in any way to

16  services, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to

17  any means you may use to access your account(s). It includes claims based on broken promises or

18  contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable

19  claims." *Id.*; *see also* Ex. 1 at 4-5 (2010 CAA, similar language).

20         Jabbari's action falls squarely within this definition.  His claims constitute an "unresolved

21  disagreement" with the Bank, and they clearly concern Wells Fargo's banking services and

22  Jabbari's accounts.  *E.g.*, Compl. ¶ 48 (alleging that "[a]fter opening [his Wells Fargo] accounts in

23  2011, [Jabbari] experienced some anomalies, such as unexplained fees" on his accounts), *id*. ¶ 84

24  (alleging that Wells Fargo made, and that Jabbari relied on, "false representations . . . regarding

25  the costs, benefits, and policies governing Wells Fargo's products and accounts"), *id.* at 25

26  (seeking restitution of account fees paid to Wells Fargo).

27         **C.      Jabbari Should Be Compelled to Arbitrate on an Individual Basis**

28         The arbitration agreement in bold capital letters prohibits class arbitration:

-10-
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1

**NEITHER YOU NOR THE BANK SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.**

2

3

4

5   Kotzman Decl. Ex. 2 at 1.  An arbitration agreement's prohibition of class or representative

6   arbitration is enforceable.  *Concepcion*, 131 S. Ct. at 1748-53.  And any class-wide award issued

7   by the arbitrator would be vacated on the grounds the arbitrator had exceeded his powers.  *See*

8   *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 (2010).

9       **D.      The Case Should Dismissed or Stayed Pending the Outcome of The Arbitration**

10

11          The Court may, in its discretion, dismiss the Complaint without prejudice.  *Sparling v.*

12   *Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (FAA rule mandating stay in no way

13   "limit[s] the court's authority to grant dismissal in the case").  The Court should do so here,

14   because, upon compelling arbitration, no claims will exist over which it has jurisdiction.

15          Alternatively, the Court may stay this pending action, including all discovery, until the

16   conclusion of the arbitration.  9 U.S.C. § 3 (authorizing district court to stay the civil action "until

17   such arbitration has been had in accordance with the terms of the agreement"); *see also Collins v.*

18   *Burlington N R.R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where district court

19   failed to consider whether a stay was appropriate as a result of binding arbitration agreement).

20          Respectfully submitted,

21

22   DATED:  July 9, 2015                    MUNGER, TOLLES & OLSON LLP
                                                 BART H. WILLIAMS
23                                               DAVID H. FRY
                                                 MANUEL F. CACHÁN
24                                               JESLYN MILLER
25

26                                           By:  _____/s/ David H. Fry_____
                                                  DAVID H. FRY
27                                           Attorneys for Defendants, WELLS FARGO &
                                             COMPANY; WELLS FARGO BANK, N.A.
28

-11-

DEFENDANTS' MOTION TO COMPEL ARBITRATION