BART H. WILLIAMS (State Bar No. 134009)
bart.williams@mto.com
MANUEL F. CACHÁN (State Bar No. 216987)
manuel.cachán@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

DAVID H. FRY (State Bar No. 189276)
david.fry@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendants,
WELLS FARGO & COMPANY and WELLS
FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>　　　　　Defendants. | Case No. 3:15-cv-02159-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST, THIRD, FOURTH AND FIFTH CAUSES OF ACTION AND TO STAY THE CASE**<br><br>**[Request for Judicial Notice filed concurrently herewith]**<br><br>Judge:　　Hon. Vince G. Chhabria<br>Ctrm.:　　4<br>Date:　　September 10, 2015<br>Time:　　10:00 a.m.<br><br>Action Filed:　　May 13, 2015 |

1

## TABLE OF CONTENTS

2

**Page**

3

STATEMENT OF RELIEF SOUGHT...................................................................................1

4

MEMORANDUM OF POINTS AND AUTHORITIES.........................................................1

5

I.      INTRODUCTION ....................................................................................................1

6

II.     STATEMENT OF THE ISSUES TO BE DECIDED..............................................3

7

III.    BACKGROUND ......................................................................................................3

8

IV.     ARGUMENT ............................................................................................................5

9

10

        A.      California's Consumers Legal Remedies Act Does Not Apply to Intangible "Financial Products," Including Bank Accounts and Credit Cards. .......................5

11

        B.      Plaintiff Fails to Plausibly Allege Wells Fargo Violated His Rights Under Either the Consumers Legal Remedies Act or the Fair Credit Reporting Act, and He Cannot Assert Those Claims on Behalf of the Putative Class. ...........6

12

13

                1.      Plaintiff Does Not Allege He Relied on a Misrepresentation by Wells Fargo When Opening His Authorized Accounts, and He Thus Fails to State a Claim Under the CLRA....................................................6

14

15

                2.      Plaintiff Does Not Allege Wells Fargo Accessed His Credit Report—Improperly or Otherwise—and Thus Fails to State a Claim Under the FCRA. ......................................................................................8

16

17

                3.      Plaintiff Cannot Assert Class Claims That He Individually Lacks Standing to Assert. .....................................................................................8

18

        C.      Plaintiff Fails to State a Claim Under California's Customer Records Act...............9

19

20

                1.      California Civil Code § 1798.81.5 Does Not Apply to "Financial Institutions," Such as Wells Fargo, That Are Already Subject to California's Financial Privacy Information Act...........................................9

21

22

                2.      Plaintiff Fails to Allege Any Injury Resulting From a Delay in Notification of a Security Breach Under California Civil Code § 1798.82. ...............................................................................................10

23

        D.      Plaintiff's Unjust Enrichment Claim Is Tantamount to a Request for Restitution, and Must Be Dismissed as Duplicative of His UCL Claim. ...............12

24

        E.      Plaintiff's Remaining Claim, Under the UCL, Should Be Stayed. ........................13

25

V.      CONCLUSION ......................................................................................................15

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**FEDERAL CASES**

4

*Adoma v. University of Phoenix, Inc.,*

5
   711 F. Supp. 2d 1142 (E.D. Cal. 2010).................................................................. 14

6
*Alltrade, Inc. v. Uniweld Prods., Inc.,*
   946 F.2d 622 (9th Cir. 1991)................................................................................... 15

7
*AT&T Techs. Inc. v. Commc'ns Workers of Am.,*

8
   475 U.S. 643 (1986)................................................................................................. 2

9
*Ashcroft v. Iqbal,*

10
   556 U.S. 662 (2009)................................................................................................. 7

11
*Barocio v. Bank of America, N.A.,*
   2012 WL 3945535 (N.D. Cal. Sept. 10, 2012) ....................................................... 12

12
*Blum v. Yaretsky,*

13
   457 U.S. 991 (1982)................................................................................................. 8

14
*Boorstein v. Men's Journal LLC,*

15
   2012 WL 2152815 (C.D. Cal. June 14, 2012) ....................................................... 11

16
*Cedars–Sinai Med. Ctr. v. Shalala,*
   125 F.3d 765 (9th Cir. 1997).................................................................................. 14

17
*Colorado River Water Conservation Dist. v. United States,*

18
   424 U.S. 800 (1976)............................................................................................... 14

19
*Daugherty v. Oppenheimer & Co., Inc.,*
   2007 WL 1994187 (N.D. Cal. July 5, 2007).......................................................... 13

20

21
*Fakespace Labs v. Robinson,*
   2000 WL 1721061 (N.D. Cal. Nov. 6, 2000).......................................................... 13

22
*In re Adobe Sys., Inc. Privacy Litig.,*

23
   -- F. Supp. 3d --, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014)............................. 11

24
*In re Apple and AT&T iPad Unlimited Data Plan Litig.,*
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................................ 13

25
*In re Ditropan XL Antitrust Litig.,*

26
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) .................................................................. 8

27
*In re Sony Gaming Networks and Customer Data Security Breach Litig.,*

28
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................... 11

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................................. 8

*Lyons v. Bank of America, N.A.*,
   2011 WL 3607608 (N.D. Cal. Aug. 15, 2011) .......................................................... 8

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ................................................................................. 8

*Motiv Power Sys., Inc. v. Livernois Vehicle Dev., LLC*,
   20147 WL 94370 (N.D. Cal. Jan. 9, 2014) ............................................................ 13

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989) ............................................................................... 14

*PETA, Inc. v. Beyond the Frame, Ltd.*,
   2011 WL 686158 (C.D. Cal. Nov. 16, 2011) .......................................................... 14

*Pratt v. Whole Foods Market California, Inc.*,
   2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ........................................................ 13

*Ross v. U.S. Bank Nat'l Ass'n*,
   542 F. Supp. 2d 1014 (N.D. Cal. 2008) ................................................................. 14

*Taylor v. AlliedBarton Sec. Servs. LP*,
   2014 WL 1329415 (E.D. Cal. Apr. 1, 2014) .......................................................... 15

*Tompkins v. Basic Research LL*,
   2008 WL 1808316 (E.D. Cal. Apr. 22, 2008) ........................................................ 14

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
   967 F. Supp. 2d 1289 (N.D. Cal. 2013) ................................................................. 15

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*,
   218 F.R.D. 663 (N.D. Cal. 2003) ........................................................................... 13

STATE CASES

*Berry v. Am. Express Publ'g, Inc.*,
   147 Cal. App. 4th 224 (2007) ................................................................................... 6

*Boorstein v. CBS Interactive, Inc.*,
   222 Cal. App. 4th 456 (2013) ................................................................................. 11

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011) ................................................................................. 13

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ................................................................................. 7

1
2

*Fairbanks v. Superior Court*,
    46 Cal. 4th 56 (2009) ................................................................................ 5, 6

3

*Ghirado v. Antonioli*,
    14 Cal. 4th 39 (1996) ...................................................................................... 7

4
5

*Mass. Mutual Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002) .......................................................................... 7

6
7

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) ........................................................................ 12

8

*Nelson v. Pearson Ford Co.*,
    186 Cal. App. 4th 983 (2010) .......................................................................... 7

9
10

*Reese v. Wal–Mart Stores, Inc.*,
    73 Cal. App. 4th 1225 (1999) ........................................................................ 14

11

**FEDERAL STATUTES**

12

Bank Holding Company Act, 12 U.S.C. § 1843(k) ................................................ 10

13

Fair Credit Reporting Act,  15 U.S.C. § 1681b................................................... 8

14

**CALIFORNIA STATUTES**

15

Unfair Competition Law

16

    Cal. Bus. and Prof. Code §§ 17200, 17203, and 17204  .................................... 14

17

Consumers Legal Remedy Act

18

    Cal. Civ. Code § 1761(a)................................................................................ 5

19

    Cal. Civ. Code § 1770(a)................................................................................ 5

20

    Cal. Civ. Code § 1780(a)................................................................................ 7

21

Customer Records Act

22

    Cal. Civ. Code § 1798.81.5......................................................................... 2, 9, 10

23

    Cal. Civ. Code § 1798.82 ................................................... 2, 9, 10, 11, 12

24

    Cal. Civ. Code § 1798.83 ............................................................................. 11

25

    Cal. Civ. Code § 1798.84 ........................................................................ 10, 11

26

Financial Privacy Information Act

27

    Cal. Fin. Code § 4052 ................................................................................. 10

28

DEFENDANTS' MOTION TO DISMISS AND STAY
CASE NO. 3:15-CV-02159-VC

1      **PLEASE TAKE NOTICE** that on September 10, 2015 at 10:00 a.m. or as soon hereafter

2  as this matter may be heard, in the courtroom of the Honorable Vince G. Chhabria, located at 450

3  Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Wells Fargo & Company

4  and Wells Fargo Bank, N.A. (collectively "Defendants" or "Wells Fargo") will and hereby do

5  move for an order dismissing Plaintiff's first, third, fourth, and fifth causes of action, and staying

6  the case as to Plaintiff's second cause of action pending resolution of the same claim brought as

7  an enforcement action by the Los Angeles City Attorney's Office in *People of the State of*

8  *California v. Wells Fargo & Co., et al.*, No. 2:15-cv-04181-GW-FFM (C.D. Cal.). This motion is

9  based on this Notice of Motion, the following Memorandum of Points and Authorities, the

10  complaint, any further pleadings and records filed in this action, any argument presented at the

11  hearing, and such additional matters as the Court may consider.

12  **STATEMENT OF RELIEF SOUGHT**

13      Wells Fargo seeks an order dismissing Plaintiff's claims under California's Consumer

14  Legal Remedies Act (first cause of action), the federal Fair Credit Reporting Act (third cause of

15  action), and California's Customer Records Act (fifth cause of action) for lack of standing and

16  failure to state a claim for relief; dismissing Plaintiff's claim for unjust enrichment (fourth cause

17  of action) as duplicative of Plaintiff's second cause of action; and staying the case as to Plaintiff's

18  remaining claim under California's Unfair Competition Law (second cause of action) pending

19  resolution of the Los Angeles City Attorney's action, styled *People of the State of California v.*

20  *Wells Fargo & Co., et al.*, No. 2:15-cv-04181-GW-FFM (C.D. Cal.), which asserts the same

21  claim against Wells Fargo and seeks the same remedies on behalf of the same class of consumers.

22  **MEMORANDUM OF POINTS AND AUTHORITIES**

23  **I.**    **INTRODUCTION**

24      One week after the Los Angeles City Attorney's Office filed suit against Wells Fargo

25  seeking injunctive relief, restitution, and civil penalties for Wells Fargo's alleged violations of

26  California's Unfair Competition Law (the "City Attorney Action"), Plaintiff Shahriar Jabbari

27  filed this putative class action.  It is largely based on allegations that Jabbari's lawyers have

28  cribbed from the City Attorney Action.

DEFENDANTS' MOTION TO DISMISS AND STAY
CASE NO. 3:15-CV-02159-VC

1    Jabbari's case should have been brought, if at all, in arbitration, as Wells Fargo argues in

2    its concurrently filed motion to compel arbitration.  The Court therefore should not reach any of

3    the issues raised in this motion because, where the parties have agreed to arbitration, "[t]he courts

4    . . . have no business weighing the merits of the grievance, considering whether there is equity in

5    a particular claim, or determining whether there is particular language in the written instrument

6    that will support the claim."  *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650

7    (1986).  Given the parties' arbitration agreement, the merits of Jabbari's claims are the province

8    of an arbitrator, not a federal judge.

9    If Jabbari were somehow to escape arbitration, however, his complaint would still fail as a

10   matter of law.  Jabbari first asserts a claim under California's Consumers Legal Remedies Act

11   ("CLRA").  But the intangible financial products offered by Wells Fargo that are the subjects of

12   Jabbari's complaint are not covered by the CLRA.  And even if the CLRA reached them,

13   Jabbari's claim would fail because he does not plead facts showing he relied on any

14   misrepresentations by Wells Fargo in purchasing any of these financial products, as the CLRA

15   requires—Jabbari's claim is not that he was fooled into signing up for unwanted banking

16   products, but that accounts were opened for him without his consent.  This fundamental pleading

17   deficiency strips Jabbari of standing to assert this claim on behalf of a class.

18   Jabbari's claim under the federal Fair Credit Reporting Act ("FCRA") fails as well.  That

19   cause of action requires a showing that Wells Fargo improperly accessed Jabbari's credit report, a

20   fact Jabbari does not allege.  Indeed, Jabbari does not even claim that Wells Fargo issued him a

21   credit card.  Yet that  is the only circumstance under which he claims Wells Fargo would have

22   accessed his credit reports.  Because Jabbari has no FCRA claim, it follows that he cannot serve

23   as the representative of a putative class asserting such a claim.

24   Jabbari next asserts a claim under California's Customer Records Act ("CRA"), alleging

25   violations of two CRA provisions.  One provision, California Civil Code § 1798.81.5, expressly

26   exempts "financial institutions" like Wells Fargo from its reach.  It is entirely inapplicable here.

27   And the other, California Civil Code § 1798.82, permits civil actions to be brought only by

28   customers who have suffered an injury as a result of an alleged violation—it is not sufficient

1  simply to contend that Wells Fargo failed to comply with certain disclosure obligations under the

2  statute, as Jabbari does.

3          As for Jabbari's claim for unjust enrichment, it is not a recognized cause of action under

4  California law.  California courts consider unjust enrichment to be synonymous with a request for

5  restitution and, indeed, Jabbari asks for restitution as a remedy for Wells Fargo's alleged "unjust

6  enrichment"—rendering this claim superfluous given Jabbari's (and the City Attorney's) claim

7  against Wells Fargo under the Unfair Competition Law ("UCL").  To the extent Jabbari has

8  ventured beyond the template provided by the City Attorney Action, his claims are facially

9  defective and must be dismissed.

10          Jabbari's sole remaining claim is brought under the UCL.  But it is only a rehash of the

11  same UCL claim, based on the same allegations and brought in favor of the same class of

12  consumers, that the Los Angeles City Attorney previously filed—a case that is now pending in

13  the U.S. District Court for the Central District of California.  Jabbari's UCL claim offers no relief

14  to the putative class members that is not already sought in the City Attorney Action, and his

15  parallel claim under the UCL will needlessly duplicate judicial efforts if it is not stayed in favor

16  of the earlier-filed action.  Under the "first-to-file" rule, it should be.

17  **II.      STATEMENT OF THE ISSUES TO BE DECIDED**

18          Whether: (1) Jabbari's CLRA claim should be dismissed for lack of standing and failure

19  to state a claim for relief; (2) Jabbari's FCRA claim should be dismissed for lack of standing and

20  failure to state a claim for relief; (3) Jabbari's CRA claim should be dismissed for lack of

21  standing and failure to state a claim for relief; (4) Jabbari's "unjust enrichment" claim should be

22  dismissed as duplicative of his UCL claim; and (5) Jabbari's UCL claim should be stayed pending

23  resolution of the City Attorney Action.

24  **III.     BACKGROUND**

25          On May 4, 2015, the Office of the Los Angeles City Attorney filed a complaint in Los

26  Angeles Superior Court on behalf of the people of California against Wells Fargo, alleging among

27  other things that Wells Fargo "open[ed] . . . customer accounts . . . without permission" and

28  "engaged in practices called 'gaming,'" which consists of "misrepresenting the costs, benefits,

fees, and/or attendant services that come with an account or product, all in order to meet sales quotas."  (Ex. A to Request for Judicial Notice (Compl., *People of California v. Wells Fargo & Co., et al.*, No. 2:15-cv-04181, Dkt. 1-1, at ¶ 5 (C.D. Cal.).).)[1]  The City Attorney Action asserts two claims under the UCL and seeks restitution "to all persons in interest" of any money or property Wells Fargo acquired as a result of the conduct alleged, as well as civil penalties and injunctive relief.  (*Id.* at 19.)

The following week, Jabbari filed this putative class action against Wells Fargo, parroting the allegations in the City Attorney Action.  (*Compare, e.g.*, Compl. (ECF No. 5)[2] ¶¶ 10, 11, 12, 22, 23, 24, 28, *with* City Attorney Action Compl. (RJN Ex. A) ¶¶ 6, 8, 9, 21, 22, 23, 26.)  Jabbari, the lone named plaintiff, alleges that after he opened accounts with Wells Fargo in 2011 he "experienced some anomalies, such as unexplained fees."  (Compl. ¶¶ 47-48.)  In 2013, two years later, Jabbari visited a Wells Fargo branch "to inquire about an unauthorized charge," and it was during that visit that he supposedly "learned that he had multiple Wells Fargo accounts that he did not open."  (*Id.*)  Some of those accounts had already been closed.  (*Id.*)  A "few months" after this visit, Jabbari received a change of address notification listing several accounts that he had not opened.  He tallies "seven unauthorized accounts with Wells Fargo."  (*Id.* ¶¶ 53-54.)  Jabbari "believes that he has been charged fees for all of them" and further "believes his credit score has been harmed as a result of Wells Fargo's effort to collect on unpaid fees."  (*Id.* ¶¶ 54-55.)  Jabbari also alleges that Wells Fargo mailed him three debit cards that he did not request.  (*Id.* ¶ 52.)

Notably, Jabbari does not allege that Wells Fargo or any of its employees made any misrepresentation to him in the course of his interactions with them, or that he relied on misrepresentations in signing up for additional accounts or financial products through Wells Fargo.  In fact, Jabbari does not allege that he ever authorized the opening of an account other than the two accounts, checking and savings, that he wanted.  (*See id.* ¶ 47.)  Jabbari does not

---

[1] Wells Fargo removed the City Attorney Action to federal court on June 3, 2015.  The case is now pending in the United States District Court for the Central District of California.  The City Attorney's Office filed a motion to remand the case on July 2, 2015.

[2] All citations to the complaint refer to the version filed at ECF No. 5.

allege he ever had a credit card with Wells Fargo.

Jabbari's complaint asserts four statutory causes of action for violations of California's CLRA, CRA, and UCL, and the federal FCRA. (*See id.* at 19-24.) He asserts a fifth cause of action for unjust enrichment, arguing that Defendants should provide "restitution to the Plaintiffs and the Class for the monies paid to Defendants as a result of the unfair, deceptive, and/or illegal practices," which is the same remedy available under his UCL claim. (*Id.* ¶ 95.)

## IV.   ARGUMENT

### A.   California's Consumers Legal Remedies Act Does Not Apply to Intangible "Financial Products," Including Bank Accounts and Credit Cards.

California's Consumers Legal Remedies Act, the basis for Jabbari's first cause of action, proscribes specified "unfair methods of competition and unfair or deceptive acts or practices" in a "transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Section 1770(a) lists 24 acts prohibited under the CLRA. Jabbari does not identify which subsection Wells Fargo has allegedly violated, but merely asserts generally that "Wells Fargo engaged in unfair, deceptive, and/or unlawful marketing in violation of Civ. Code § 1770(a) by providing customers with false, misleading, deceptive, and/or unlawful statements about the costs, benefits, and policies regarding Wells Fargo financial products." (Compl. ¶ 73.) Jabbari's complaint also skirts the threshold question of whether the "financial products" offered by Wells Fargo constitute "goods or services" within the meaning of the CLRA. They do not.

"Goods," as used in the CLRA, "means tangible chattels bought or leased for use primarily for personal, family, or household purposes . . . ." Cal. Civ. Code § 1761(a). "'Services' means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b). The California Supreme Court in *Fairbanks v. Superior Court*, 46 Cal. 4th 56 (2009), addressed whether a financial transaction—specifically, life insurance—was subject to the CLRA. "Because life insurance is not a 'tangible chattel,'" the Court concluded, "it is not a 'good' as that term is defined in the Consumers Legal Remedies Act." *Id.* at 61. Nor is life insurance a covered

1   "service," because "[a]n insurer's contractual obligation to pay money under a life insurance

2   policy is not work or labor, nor is it related to the sale or repair of any tangible chattel." *Id.*

3        *Fairbanks* rejected the argument that the "ancillary services" insurance agents provided

4   consumers in helping them select policies, or the processing of claims, brought life insurance

5   within the reach of the CLRA. *Id.* at 65.  The Court broadly observed that "ancillary services are

6   provided by the sellers of virtually all intangible goods—investment securities, *bank deposit*

7   *accounts and loans*, and so forth"—in "assist[ing] prospective customers in selecting products

8   that suit their needs" and "provid[ing] additional customer services related to the maintenance,

9   value, use, redemption, resale, or repayment of the intangible item." *Id.* (emphasis added).  Yet

10  "[u]sing the existence of these ancillary services to bring intangible goods within the coverage of

11  the [CLRA] would defeat the apparent legislative intent on limiting the definition of 'goods' to

12  include only 'tangible chattels.'" *Id.*  Nor does the CLRA extend to credit cards.  The extension

13  of credit is not a tangible chattel or a covered service, and the card itself "has no intrinsic value

14  and exists only as indicia of the credit extended to the card holder." *Berry v. Am. Express Publ'g,*

15  *Inc.*, 147 Cal. App. 4th 224, 229 (2007).

16       In sum, none of the "financial products" referenced in Jabbari's complaint—bank

17  accounts, credit cards, life insurance—qualify as "goods or services" covered by the CLRA.

18  Accordingly, Jabbari's claim under the CLRA must be dismissed.[3]

19      **B.**    **Plaintiff Fails to Plausibly Allege Wells Fargo Violated His Rights Under**
20               **Either the Consumers Legal Remedies Act or the Fair Credit Reporting Act,**
                 **and He Cannot Assert Those Claims on Behalf of the Putative Class.**

21         **1.**    **Plaintiff Does Not Allege He Relied on a Misrepresentation by Wells**
22                 **Fargo When Opening His Authorized Accounts, and He Thus Fails to**
                   **State a Claim Under the CLRA.**

23       Even if the CLRA applied to the intangible "financial products" Jabbari references in his

24  complaint, Jabbari's claim founders on another threshold requirement under the statute: a CLRA

25

26      [3] Jabbari's CLRA claim fails for the additional reason that the complaint does not plausibly allege
    that he or any consumer "purchased or leased" anything from Wells Fargo. *See Berry,* 147 Cal.

27  App. 4th at 229 n.2 (although plaintiff "paid an annual fee in connection with the credit issued,"
    "concluding [plaintiff] purchased or leased the card would strain the meaning of those terms well

28  beyond customary use").

DEFENDANTS' MOTION TO DISMISS AND STAY
CASE NO. 3:15-CV-02159-VC

1   action may be brought only by a consumer "who suffers any damage *as a result of* the use or

2   employment by any person of a method, act, or practice declared to be unlawful by Section

3   1770." Cal. Civ. Code § 1780(a) (emphasis added).  In other words, "[u]nder the CLRA,

4   plaintiffs must show *actual reliance* on the misrepresentation *and harm*."  *Nelson v. Pearson*

5   *Ford Co*., 186 Cal. App. 4th 983, 1022 (2010) (emphases added); *see also Mass. Mutual Life Ins.*

6   *Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002) ("[P]laintiffs in a CLRA action [must]

7   show not only that a defendant's conduct was deceptive but that the deception caused them

8   harm.").

9          The complaint asserts that Wells Fargo's allegedly "false, misleading, deceptive and/or

10   unlawful statements about its products . . . caused consumers to believe, falsely, that, *inter alia*,

11   they needed to purchase more Wells Fargo products in order to receive specific benefits of other

12   products."  (Compl. ¶ 74.)  Jabbari, however, does not allege that he relied on any

13   misrepresentation when he "first opened an account with Wells Fargo in 2011"; he states simply

14   that he "wanted two accounts: checking and savings."  (*Id.* ¶ 47.)  Jabbari does not allege that he

15   later signed up for any other accounts or financial products, much less that he relied on a

16   misrepresentation about "specific benefits" of those other products in doing so.  On the contrary,

17   Jabbari complains of *unauthorized* accounts that he did not choose to open.  Jabbari's conclusory

18   assertion that he "was exposed to and/or relied upon Wells Fargo's unfair, deceptive, and/or

19   unlawful marketing practices" (*id.* ¶ 75), cannot establish a plausible basis for his claim:

20   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

21   statements, do not suffice" and "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*,

22   556 U.S. 662, 678-79 (2009).  Jabbari's complaint lacks well-pleaded factual allegations that he

23   relied on any misrepresentation by Wells Fargo, and his CLRA claim must be dismissed for that

24   reason.  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (dismissing CLRA

25   claim where plaintiff did not allege that he relied on any representation by defendant, despite

26   allegation of suffering damage as a "proximate result" of defendant's "deception").

27

28

DEFENDANTS' MOTION TO DISMISS AND STAY
CASE NO. 3:15-CV-02159-VC

1

2

2.     **Plaintiff Does Not Allege Wells Fargo Accessed His Credit Report—Improperly or Otherwise—and Thus Fails to State a Claim Under the FCRA.**

3

4

5

6

7

8

9

10

11

12

Jabbari's claim under the FCRA is premised on his allegation that "[e]ach time that Wells Fargo opens a new *credit card* account, it obtains, reviews, and uses a consumer credit report about the consumer," and that Wells Fargo regularly does so without consumers' "knowledge or consent . . . in violation of the FCRA."  (Compl. ¶¶ 87, 91 (emphasis added)); *see* 15 U.S.C. § 1681b.  But Jabbari does not allege that Wells Fargo ever opened a credit card account in his name, or that it accessed his credit report, with or without his consent.  According to the complaint, Wells Fargo opened checking and savings accounts in Jabbari's name and issued him *debit* cards, not credit cards.  (*See* Compl. ¶ 53; *id.* ¶ 52 ("Mr. Jabbari received three *debit* cards in the mail from Wells Fargo that he did not request.") (emphasis added).)  Jabbari simply does not allege facts showing that Wells Fargo ever violated his rights under the FCRA.

13

3.     **Plaintiff Cannot Assert Class Claims That He Individually Lacks Standing to Assert.**

14

15

16

17

18

19

20

21

22

23

24

25

26

Jabbari cannot assert on behalf of putative class members a claim that he does not even possess himself.  "[E]ven named plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class . . . ."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (emphasis added; internal quotations, citations, and alterations omitted); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (noting "[i]t is not enough that the conduct of which the plaintiff complains will injure *someone*").  This is not a matter of a named plaintiff presenting claims on behalf of others who have suffered similar, but not identical, injuries—the typicality inquiry at the class certification stage follows only "*once the named plaintiff demonstrates her individual standing* to bring a [given] claim."  *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (quoting Newberg on Class Actions § 2.6) (emphasis added).  "*Standing* is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate," *id.* at 1261, a requirement Jabbari cannot satisfy with respect to his CLRA and FCRA claims.

27

28

Lacking a named plaintiff with standing to assert them, the CLRA and FCRA claims must

-8-

1   be dismissed.  *See In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal.

2   2007) (dismissing, for lack of standing by a named plaintiff, class claims based on the antitrust

3   laws of 24 states); *Lyons v. Bank of Am., N.A.*, 2011 WL 3607608, at *12 (N.D. Cal. Aug. 15,

4   2011) (dismissing claim under Fair Debt Collection Practices Act for lack of standing by named

5   plaintiffs "because they do not allege that any such false or deceptive affidavits were filed in

6   conjunction with their foreclosure").

7   **C.**     **Plaintiff Fails to State a Claim Under California's Customer Records Act.**

8           Jabbari alleges that Wells Fargo violated California's CRA by "failing to ensure that its

9   employees did not misuse customers' personal information" (Compl. ¶ 103, citing Cal. Civ. Code

10  § 1798.81.5(b)) and by "failing to immediately notify all affected Wells Fargo customers that

11  their personal information had been misused by unauthorized persons to open unauthorized

12  accounts" (*id.* ¶ 104, citing Cal. Civ. Code § 1798.82.  But Wells Fargo, as a financial institution

13  subject to the industry-specific privacy standards in California's Financial Information Privacy

14  Act, is expressly exempted from Section 1798.81.5 of the CRA.  And Jabbari lacks standing to

15  pursue a claim under Section 1798.82, as he fails to allege injury flowing from any purported

16  delay in notice by Wells Fargo.

17          **1.**     **California Civil Code § 1798.81.5 Does Not Apply to "Financial
                Institutions," Such as Wells Fargo, That Are Already Subject to
18              California's Financial Privacy Information Act.**

19          Section 1798.81.5 of the CRA requires certain businesses to "implement and maintain

20  reasonable security procedures and practices" to protect the personal information of California

21  residents.  Financial institutions, health care providers, and certain other entities that were already

22  required to safeguard such information under industry-specific privacy statutes were exempted

23  from the reach of the CRA, however.  The legislature intended to "create[] a privacy standard for

24  non-medical and non-financial entities that have personal information about their customers,"

25  knowing that "[u]nder current law, there are privacy protections for personal information in the

26  possession of financial institutions and covered entities under HIPAA."  Cal. Bill Analysis, A.B.

27  1950 Assembly Fl. (2003-2004 Reg. Sess.) Mar. 18, 2004 (*available on Westlaw as* "CA B. An.,

28  A.B. 1950 Assem., 3/18/2004").  Thus, by its express terms, the CRA's provisions "do not apply"

DEFENDANTS' MOTION TO DISMISS AND STAY
                                                CASE NO. 3:15-CV-02159-VC

1    to a "financial institution as defined in Section 4052 of the Financial Code and subject to the

2    California Financial Information Privacy Act."  Cal. Civ. Code § 1798.81.5(e)(2).  The cited

3    provision of the California Financial Information Privacy Act defines a "financial institution" by

4    reference to the financial activities listed in the Bank Holding Company Act at 12 U.S.C.

5    § 1843(k), including "[l]ending, exchanging, transferring, investing for others, or safeguarding

6    money or securities."  12 U.S.C. § 1843(k)(4)(A).

7            The allegations of Jabbari's complaint, taken as true, establish Wells Fargo's status as a

8    "financial institution":  Jabbari alleges that "Wells Fargo & Company is a financial services

9    company" that "provides banking, insurance, investments, mortgage, and consumer and

10   commercial finance" (Compl. ¶ 17), and that Wells Fargo & Company's "principal subsidiary" is

11   Wells Fargo Bank, N.A., which provides its "personal and commercial banking services,"

12   including "most of the banking products and services that are the subject of this action" (*id.* ¶¶ 5,

13   18.)  The complaint's allegations place the Wells Fargo defendants squarely within the definition

14   of "financial institutions" subject to the California Financial Information Privacy Act, meaning

15   that Section 1798.81.5 of the CRA is inapplicable here and Jabbari's claim under this section

16   must be dismissed.

17                            **2.     Plaintiff Fails to Allege Any Injury Resulting From a Delay in
                                       Notification of a Security Breach Under California Civil Code
18                                     § 1798.82.**

19           Section 1798.82 of the CRA requires businesses that own computerized data to provide

20   notice of "a breach of the security of the system" to California residents "whose unencrypted

21   personal information was, or is reasonably believed to have been, acquired by an unauthorized

22   person."  Cal. Civ. Code § 1798.82(a) (emphasis added).  Notice must be provided "in the most

23   expedient time possible and without unreasonable delay, consistent with . . . any measures

24   necessary to determine the scope of the breach and restore the reasonable integrity of the data

25   system."  *Id.*  Jabbari alleges that Wells Fargo violated this provision by failing to immediately

26   notify customers that its employees had misused their personal information.  He seeks "all

27

28

DEFENDANTS' MOTION TO DISMISS AND STAY
                                                     CASE NO. 3:15-CV-02159-VC

1    remedies available under Civil Code section 1798.84, including actual and statutory damages,

2    equitable relief, and reasonable attorneys' fees."  (Compl. ¶ 105.)[4]

3            While Section 1798.84(b) permits a customer to institute a civil action if he was "injured

4    by a violation of this title," courts have recognized that it "expressly requires an injury *resulting*

5    *from a violation*," meaning that "a violation of the statute, without more, is insufficient" to

6    maintain a cause of action.  *Boorstein v. Men's Journal LLC*, 2012 WL 2152815, at *3 (C.D. Cal.

7    June 14, 2012) (emphasis added).  In other words, "where a plaintiff fails to allege a cognizable

8    injury, the plaintiff 'lacks statutory standing' to bring a claim under Section 1798.84, 'regardless

9    of whether [the] allegations are sufficient to state a violation of the [statute].'"  *In re Adobe Sys.,*

10   *Inc. Privacy Litig.*, -- F. Supp. 3d --, 2014 WL 4379916, at *10 (N.D. Cal. Sept. 4, 2014) (quoting

11   *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 467 (2013)).  Jabbari has failed to

12   allege any cognizable injury from Wells Fargo's alleged violation of Section 1798.82; that is,

13   injury caused by an alleged delay in the provision of notice.

14           In the context of Section 1798.82's disclosure requirements, to establish standing a

15   plaintiff must allege actual damages resulting from the *delay* in notification, not from the data

16   breach alone.  *See In re Adobe Sys.,* 2014 WL 4379916, at *10 ("Plaintiffs must separately

17   establish Article III standing under Section 1798.82.  However, by failing to allege any injury

18   resulting from a failure to provide reasonable notification of the 2013 data breach, Plaintiffs have

19   not plausibly alleged that they have standing to pursue a Section 1798.82 claim."); *In re Sony*

20   *Gaming Networks & Customer Data Security Breach Litig.*, 996 F. Supp. 2d 942, 1010 (S.D. Cal.

21   2014) ("Although case law interpreting Section 1798.84(b) is limited, unreported California cases

22   and courts in other jurisdictions analyzing statutes mirroring the DBA have held that a plaintiff

23

24   _____

25   [4] Jabbari seeks a civil penalty of  $3,000 for each violation of the CRA, as provided for under
     Section 1798.84.  (Compl. ¶ 105.)  However, that section allows for civil penalties of up to
26   $3,000 only in the event of "a willful, intentional, or reckless violation *of Section 1798.83*."  Cal.
     Civ. Code § 1798.84(c) (emphasis added).  Section 1798.83 concerns the disclosure of a
27   customer's personal information to a third party for direct marketing purposes.  Jabbari does not
     allege a violation of this section, and he thus has no basis for his request for civil penalties under
28   Section 1798.84.

                                              -11-        DEFENDANTS' MOTION TO DISMISS AND STAY
                                                          CASE NO. 3:15-CV-02159-VC

1    must allege actual damages flowing from the unreasonable delay (and not just the intrusion itself)

2    in order to recover actual damages.").

3         Jabbari alleges that the delay in notification "caused class members to suffer damages by,

4    for example, forcing them to pay unauthorized fees or respond to collection agents." (Compl.

5    ¶ 104.)  But that confuses injury caused by the alleged misuse of customers' personal information

6    with injury resulting from an alleged delay in notification by Wells Fargo.  Jabbari's failure to

7    plausibly allege actual injury resulting from any purported *delay* in providing notice deprives him

8    of standing to seek relief for a violation of Section 1798.82, whether for himself or the

9    putative class.

10        **D.      Plaintiff's Unjust Enrichment Claim Is Tantamount to a Request for
                    Restitution and Must Be Dismissed as Duplicative of His UCL Claim.**

11        Jabbari's fourth cause of action alleges unjust enrichment and relies upon the same factual

12   predicates as his UCL claim; namely, Wells Fargo's alleged "illegal, deceptive, and/or unfair

13   practices to induce or force customers to open, purchase, and/or maintain . . . banking services,

14   accounts, and products." (Compl. ¶ 95; *cf. id.* ¶ 84 ("Plaintiffs. . . were unfairly, unlawfully,

15   and/or fraudulently misled into purchasing and/or maintaining more Wells Fargo products than

16   they would otherwise have purchased and/or maintained.").)  "[T]here is no cause of action in

17   California for unjust enrichment," however.  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th

18   779, 793 (2003).  Rather, "[u]nder the law of restitution, an individual may be required to make

19   restitution if he is unjustly enriched at the expense of another." *Ghirado v. Antonioli*, 14 Cal. 4th

20   39, 51 (1996).  In support of his unjust enrichment claim, Jabbari alleges that "it would be unjust

21   and inequitable for Defendants to retain the benefit *without restitution* to the Plaintiffs and the

22   Class for the monies paid to Defendants as a result of the unfair, deceptive, and/or illegal

23   practices." (Compl. ¶ 95 (emphasis added).)   Jabbari's own requested remedy confirms that his

24   claim for unjust enrichment "is synonymous with restitution." *Melchior*, 106 Cal. App. 4th at

25   793.  But restitution "is an available remedy under the UCL," meaning that Jabbari's "claim for

26   unjust enrichment—to the extent such a claim exists—is superfluous" and must be dismissed.

27   *Barocio v. Bank of America, N.A.*, 2012 WL 3945535, at *4 (N.D. Cal. Sept. 10, 2012).

28

1  Because Jabbari's request for restitution by way of an unjust enrichment claim is wholly

2  duplicative of his UCL claim, his fourth cause of action must be dismissed.[5]

3      **E.**    **Plaintiff's Remaining Claim, Under the UCL, Should Be Stayed.**

4  Jabbari's sole remaining claim, brought under the UCL, is predicated on the same conduct

5  underlying the City Attorney's UCL claims.  It also seeks the same relief on behalf of the same

6  group of people.  Indeed, the most salient difference between the two actions is that Jabbari's

7  complaint was filed one week later.  Staying Jabbari's duplicative UCL claim pending resolution

8  of the earlier-filed City Attorney Action serves the interests of comity, efficiency, and judicial

9  economy.

10  The "first-to-file" rule gives district courts discretion to "transfer, stay, or dismiss" the

11  more recently filed of two substantially similar actions pending in two different districts.  *See*

12  *Cedars–Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).  Courts evaluate three

13  factors in applying the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of

14  the parties; and (3) the similarity of the issues.  *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218

15  F.R.D. 663, 665 (N.D. Cal. 2003).  Each of these factors favors applying the first-to-file rule here.

16  *Chronology:* Where, as here, "one of the federal cases has been removed from state court,

17  courts look to the date on which it was filed in state court."  *Fakespace Labs v. Robinson,* 2000

18  WL 1721061, at *2 (N.D. Cal. Nov. 6, 2000).  The City Attorney Action was initiated in Los

19  Angeles Superior Court a week before this case was filed, and "the date of removal is immaterial

20  to the first-to-file analysis."  *Motiv Power Sys., Inc. v. Livernois Vehicle Dev., LLC,* 20147 WL

21  94370, at *2 (N.D. Cal. Jan. 9, 2014).

22  *Similarity of Parties and Issues:* "[T]he first-to-file rule does not require identical parties

---

[5] *See Pratt v. Whole Foods Market Cal., Inc.*, 2014 WL 1324288, at *9 (N.D. Cal. Mar. 31, 2014) (unjust enrichment claim dismissed with prejudice where "the relief sought is duplicative of Plaintiff's statutory claims under the UCL and CLRA."); *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (holding that "plaintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims," including under the UCL and CLRA); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011) ("Because we have found that plaintiffs' remedies at law are adequate (counts alleged under the CLRA, the UCL, and common law fraud), a claim for restitution, alleging that eMachines has been unjustly enriched by its fraud, is unnecessary.").

-13-      DEFENDANTS' MOTION TO DISMISS AND STAY
CASE NO. 3:15-CV-02159-VC

1   *or* issues, so long as the actions are substantially similar or involve substantial overlap." *PETA,*

2   *Inc. v. Beyond the Frame, Ltd*., 2011 WL 686158, at *2 (C.D. Cal. Nov. 16, 2011).[6]  That

3   standard is unquestionably satisfied here.  The City Attorney Action and Jabbari's complaint are

4   brought against the same two Wells Fargo entities.  They rely on the same UCL provisions.  They

5   are based on the same alleged conduct.  They seek restitution for the same class of persons.[7]  "In

6   a suit brought on behalf of the general public under section 17200, a court can make such orders

7   or judgments as may be necessary to prevent the use or employment of an unfair business

8   practice, without certifying a class."  *Reese v. Wal–Mart Stores, Inc*., 73 Cal. App. 4th 1225, 1239

9   (1999) (internal quotation marks and citations omitted).

10          The identity of the named plaintiff is irrelevant to the first-to-file rule; instead, the putative

11   class members whom Jabbari seeks to represent must be compared to the individuals whose

12   interests are represented in the City Attorney Action.  *See Ross v. U.S. Bank Nat'l Ass'n,* 542 F.

13   Supp. 2d 1014, 1020 (N.D. Cal. 2008) (citing Cal. Jur. 3d Actions § 284) ("In a class action, the

14   classes, and not the class representatives, are compared."); *Adoma v. Univ. of Phoenix, Inc*., 711

15   F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) ("the proposed classes for the collective actions are

16   substantially similar in that both classes seek to represent at least some of the same individuals.").

17   "So long as California consumers are represented in both actions, the risk of inconsistent

18   judgments remains."  *Tompkins v. Basic Research LL*, 2008 WL 1808316, at *6 (E.D. Cal. Apr.

19

20   [6] The outcome of the City Attorney's pending motion to remand does not change the result of the
21   stay analysis. On grounds of "[w]ise judicial administration," federal courts may stay a case in
     favor of a concurrent state proceeding.  *Colorado River Water Conservation Dist. v. United*
22   *States*, 424 U.S. 800, 818 (1976).  Exact parallelism between the claims is not required for
     application of the *Colorado River* doctrine, "[i]t is enough if the two proceedings are
23   'substantially similar.'"  *Nakash v. Marciano*, 882 F.2d 1411, 1416-17 (9th Cir. 1989).  *See*
     *Daugherty v. Oppenheimer & Co., Inc.*, 2007 WL 1994187, at *5-6 (N.D. Cal. July 5, 2007)
24   (staying claims under the UCL, among others, under the *Colorado River* doctrine and noting that
     "*Colorado River* applies even where a state court action will not resolve all the claims in the
25   federal action").

26   [7] *See* City Attorney Action Compl. (RJN Ex. A) at ¶ 2 ("The People seek, *inter alia*: (1) to enjoin
     [Wells Fargo] from engaging in unlawful, unfair, and fraudulent business acts and practices; (b)
27   an order to restore to all persons in interest any money or property [Wells Fargo] acquired by
     means of those unfair, deceptive, and fraudulent business acts and practices, pursuant to Business
28   and Professions Code sections 17203 and 17204 . . . .").

DEFENDANTS' MOTION TO DISMISS AND STAY
     CASE NO. 3:15-CV-02159-VC

22, 2008) (finding substantial similarity of parties between two actions asserting UCL claims, and "transferring th[e] action rather than dismissing it altogether (both of which are permissible under the first-to-file rule)" given the presence of an additional CLRA claim not present in the first-filed action). Because of this, courts routinely apply the first-to-file rule to representative UCL claims.[8]

Given that the first-filed City Attorney Action has the potential to fully resolve Jabbari's UCL claim, allowing both cases to proceed on parallel tracks runs contrary to the interests of justice.[9] A stay of Jabbari's remaining UCL claim simply relieves the judiciary, the parties, and potential witnesses of the wasteful costs of duplicative litigation. Under such circumstances, a stay of Jabbari's UCL claim is warranted.

## V.     **CONCLUSION**

For the foregoing reasons, Wells Fargo respectfully requests that the Court grant its motion to dismiss Jabbari's first, third, fourth, and fifth causes of action, and stay the case with respect to Jabbari's remaining UCL claim pending resolution of the City Attorney Action.

DATED: July 9, 2015

MUNGER, TOLLES & OLSON LLP

By:    */s/ David H. Fry*
       David H. Fry

Attorneys for Defendants,
WELLS FARGO BANK, N.A. and WELLS
FARGO & COMPANY

---

[8] *See, e.g., Taylor v. AlliedBarton Sec. Servs. LP,* 2014 WL 1329415, at *7 (E.D. Cal. Apr. 1, 2014) (partially staying case as to "meal and rest break, accurate wage statement, and UCL claims [that] relate to whether [defendant] required security officers to miss legally required meal and rest breaks without compensation"); *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1297-98 (N.D. Cal. 2013) (transferring entirety of later-filed case asserting UCL and CLRA claims).

[9] None of the noted exceptions to the first-to-file rule, such as bad faith, anticipatory suit, or forum shopping, apply here. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).