BART H. WILLIAMS (State Bar No. 134009)
bart.williams@mto.com
MANUEL F. CACHÁN (State Bar No. 216987)
manuel.cachan@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

DAVID H. FRY (State Bar No. 189276)
david.fry@mto.com
JESLYN A. MILLER (State Bar No. 274701)
jeslyn.miller@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for Defendants,
WELLS FARGO & COMPANY and
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No. 15-cv-02159-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF KAYLEE HEFFELFINGER'S CLAIMS**<br><br>[Declaration of Connie Kotzman and Proposed Order filed concurrently herewith]<br><br>[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]<br><br>Judge:   Hon. Vince Chhabria<br>Ctrm.:   4<br>Date:    September 10, 2015<br>Time:   10:00 a.m. |

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELIEF SOUGHT .................................................................................................. 1

ISSUE TO BE DECIDED ..................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 1

I.  INTRODUCTION ..................................................................................................................... 1

II. BACKGROUND ....................................................................................................................... 2

    A.  Heffelfinger's January 2012 Accounts ........................................................................ 2

    B.  Heffelfinger's March 2012 Accounts .......................................................................... 2

    C.  Heffelfinger's October 2012 Accounts and March 2013 Savings Account ............. 4

    D.  Heffelfinger's Online Banking .................................................................................... 5

III. ARGUMENT ............................................................................................................................ 6

    A.  Heffelfinger Agreed to Arbitration With Wells Fargo. ............................................. 6

    B.  The Dispute is Arbitrable, But the Court Should Not Reach that Question. .............. 7

        1. Interpretation of the Arbitration Agreement Has Been Clearly and Unmistakably Assigned to the Arbitrator. ....................................................... 7

        2. If the Court Were To Reach the Question of Arbitrability, Heffelfinger's Claims Should Be Arbitrated. ................................................. 8

    C.  Heffelfinger Should Be Compelled to Arbitrate on an Individual Basis ................. 10

    D.  The Case Should Dismissed or Stayed Pending the Outcome of The Arbitration ................................................................................................................. 10

IV. CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ackerberg v. Citicorp USA, Inc.*,
  898 F. Supp. 2d 1172 (N.D. Cal. 2012) .................................................................................... 7

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ............................................................................................................ 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ......................................................................................................... 6, 8, 9

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .................................................................................................................. 6

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .................................................................................................. 7

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) .................................................................................................. 8

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) .................................................................................................... 6

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) .................................................................................................................... 8

*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988) .................................................................................................. 10

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ...................................................................................... 7

*Tuminello v. Richards*,
  504 F. App'x 557 (9th Cir. 2013) .............................................................................................. 8

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) .................................................................................................................. 9

*World Grp. Secs., Inc. v. Allen*,
  No. CV 07-1657-PHX-JAT, 2007 WL 4168572 (D. Ariz. Nov. 20, 2007) .............................. 9

**STATE CASES**

*Carroll v. Lee*,
  148 Ariz. 10 (1986) ................................................................................................................... 6

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) .................................................................................................. 6

*Scott Patrick, Inc. v. McMurdie*,
    No. 1 CA-SA 07-0118, 2007 WL 5517488 (Ariz. Ct. App. Aug. 30, 2007) ............................ 8

*Sovereign Camp, W.O.W. v. Daniel*,
    48 Ariz. 479 (1936) ................................................................................................ 6, 7

**FEDERAL STATUTES**

9 U.S.C. § 1 ................................................................................................................ 2, 4

9 U.S.C. § 3 ................................................................................................................. 10

**OTHER AUTHORITIES**

9A Ariz. Prac., Business Law Deskbook §35:77 (2014-2015 ed.) ........................................... 7

RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. a (1981) ............................................... 6

AAA Commercial Arbitration Rules, Rule 7(a) .................................................................. 8

1   **PLEASE TAKE NOTICE THAT** at 10:00 am on September 10, 2015, or as soon thereafter as the parties may be heard, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Wells Fargo & Company and Wells Fargo Bank, N.A., will and hereby do move the Court for an order compelling Plaintiff Kaylee Heffelfinger to submit her claims in this action to binding individual arbitration.

## STATEMENT OF RELIEF SOUGHT

Wells Fargo seeks an order compelling Heffelfinger to arbitrate her claims on an individual basis, consistent with the terms of her arbitration agreement with Wells Fargo Bank, N.A.

## ISSUE TO BE DECIDED

Should Heffelfinger be compelled to resolve her dispute with Wells Fargo Bank in individual arbitration, pursuant to the terms of the arbitration agreement that governed her relationship with the bank?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Kaylee Heffelfinger's claims must be submitted to binding arbitration. When Heffelfinger opened her Wells Fargo bank accounts in March 2012, she signed an account application form certifying that she would arbitrate all disputes with the bank—including the claims she makes in this lawsuit. At that time, Heffelfinger also received a Consumer Account Agreement ("CAA"), which provided in its first substantive provision that "you and the Bank agree, at your or the Bank's request, to submit to binding arbitration all claims, disputes, and controversies between or among you and the Bank." Heffelfinger was again informed of her agreement to arbitrate all disputes with Wells Fargo in August 2012, when she enrolled in online banking, and then again in March 2013, when she opened a new savings account. In addition, Heffelfinger's use of Wells Fargo's banking services after being informed of the arbitration agreement constitutes her acceptance, by conduct, of the terms of the agreement.

-1-

1   The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, requires enforcing Heffelfinger's
2   agreement to arbitrate her disputes with Wells Fargo.
3   II.   **BACKGROUND**
4      A.   <u>Heffelfinger's January 2012 Accounts</u>
5      Checking ▮▮▮▮ and savings ▮▮▮▮ accounts were opened for Heffelfinger on January 21,
6   2012.[1]  Declaration of Connie Kotzman ("Kotzman Decl.") ¶ 13, Ex. 3. ▮▮▮▮
7   ▮▮▮▮
8   ▮▮▮▮ Heffelfinger asserts that the signature on the application
9   for these accounts was forged. Consolidated Amended Complaint ("CAC") ¶ 65.[2] ▮▮▮▮
10  ▮▮▮▮
11     B.   <u>Heffelfinger's March 2012 Accounts</u>
12     On March 16, 2012, Heffelfinger opened two accounts with Wells Fargo Bank, a checking
13  account ▮▮▮▮ and a savings account ▮▮▮▮. CAC ¶ 64; Kotzman Decl. ¶ 16, Ex. 4. ▮▮▮▮
14  ▮▮▮▮
15  ▮▮▮▮
16  ▮▮▮▮
17  ▮▮▮▮
18  ▮▮▮▮
19  ▮▮▮▮
20  ▮▮▮▮
21
22  ▮▮▮▮
23  _____
24  [1] Heffelfinger's Wells Fargo accounts are referred to here by their last four digits.
25  [2] Wells Fargo has submitted the applications for Heffelfinger's various personal accounts together
    with this motion. Although these are true and correct copies of its business records, Wells Fargo
26  is not by submitting them making any representation as to the genuineness of Heffelfinger's
    signatures, which she disputes. None of Wells Fargo's arguments is premised on the assertion that
27  Heffelfinger signed the ▮▮▮▮ account application. Wells Fargo *does* assert that
    Heffelfinger signed the account applications for account numbers ▮▮▮▮.
28

███████████████████████████████████████
███████████████████████████
████████████████████

Each time a Wells Fargo customer opens a new account, he or she receives a CAA, which provides the terms that govern the account. Kotzman Decl. ¶ 8. The CAA that Heffelfinger received when she opened her March 2012 accounts was dated effective October 15, 2011. *Id.* ¶ 9, Ex. 1. It was part of a shrink-wrapped package of information that she was given, called a "New Account Kit." *Id.* ¶ 8.

Prominently featured in the CAA is an arbitration provision entitled, "Dispute resolution program: arbitration agreement." *Id.* Ex. 1 at 4. It states that "[i]f you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that upon demand by either you or the Bank, the dispute will be resolved through the arbitration process as set forth in this part." *Id.* "Dispute" is defined as follows:

> [A]ny unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to services, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access your account(s). It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable claims.

*Id.* "Dispute" also includes any "disagreements about the meaning, application or enforceability of this arbitration agreement." *Id.*; *see also id.* (providing that "[t]he arbitrator shall decide any dispute regarding the enforceability of this arbitration agreement").

The CAA's arbitration provision states in bold-faced, capital letters that **"YOU AGREE THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT."** The provision emphasizes the following provision:

> **NEITHER YOU NOR THE BANK SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS.**

*Id.*

1  Finally, the CAA's arbitration provision states that arbitrations "shall be administered by
2  the American Arbitration Association (AAA) . . . according to the Commercial Arbitration Rules
3  and the Supplemental Procedures for Consumer Related Disputes" and that the agreement is
4  "governed by the provisions of the Federal Arbitration Act." *Id.*

5    C.    **Heffelfinger's October 2012 Accounts and March 2013 Savings Account**
6  On October 4, 2012, two additional accounts were opened for Heffelfinger—a checking
7  account ▮ and a savings account ▮
8  ▮
9  ▮
10 ▮
11 ▮
12 ▮
13 ▮
14 ▮
15 ▮
16 ▮
17 ▮
18 ▮
19 ▮
20 ▮

21  On March 6, 2013, an additional savings account ▮ was opened for Heffelfinger. *Id.*
22 ¶ 20, Ex. 6-7. ▮
23 ▮
24 ▮
25 ▮
26 ▮
27 ▮
28

-4-

1 ██████████████████████████████████████████
2 ██████████████████████████████████████████
3 ██████████████████████████████████████████
4 ██████████████████████████████████████████
5 ██████████████████████████████████████████
6 ████████████████████████████████████████
7 ██████████████████████████████████████████
8 ██████████████████████████████████████████
9 ██████████████████████████████████████████
10 ██████████████████████████████████████████
11 ████████████████████████████████████
12 ██████████████████████████████████████████
13 ██████████████████████████████████████████
14 ██████████████████████████████████████████
15 ██████████████████████████████████████████
16 ████████████████████████████████████
17 ██████████████████████████████

**D.   Heffelfinger's Online Banking**

████████████████████████████████████████
████████████████████████████████████████
████████████████████████   The OAA in effect when Heffelfinger enrolled in online banking provided:

> By clicking "I Agree" below or using the Service, you are agreeing to the terms of this Agreement. This Agreement includes, among other things . . . your agreement with us to use binding arbitration for most disputes arising under this Agreement or concerning the Service and to waive the right to a trial by jury; your waiver of class-action rights . . .

*Id.* Ex. 2 at 1.

1  The OAA's arbitration provision requires arbitration of any dispute concerning Wells Fargo's online services and the "interpretation of this Agreement (including the meaning of this arbitration agreement and whether a disagreement is a 'dispute' subject to binding arbitration as provided for in this arbitration agreement)." *Id*. Ex. 2 at 32. The OAA explains that "[d]isputes arising under any separate agreement governing your other Eligible Accounts will be governed by the dispute resolution and governing law provisions of that agreement, which also take precedence over this section." *Id.*

## III.   ARGUMENT

### A.   Heffelfinger Agreed to Arbitration With Wells Fargo.

The FAA "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The threshold question for the court to decide is whether the parties entered into an agreement to arbitrate. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

A person who signs a contract is bound by its provisions, whether or not he reads them. *See Sovereign Camp, W.O.W. v. Daniel*, 48 Ariz. 479, 487 (1936).[3] A person may also assent to a contract through action or inaction. *See, e.g.*, *Carroll v. Lee*, 148 Ariz. 10, 13-14 (1986); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. a (1981) ("Just as assent may be manifested by words or other conduct, sometimes including silence, so intention to make a promise may be

---

[3] The 2011 CAA contains a contractual choice-of-law provision stating: "Your account is governed by the laws and regulations of the United States and, to the extent applicable, the laws of the state in which the office of the Bank that maintains your account is located . . . without regard to conflicts of laws principles." Kotzman Decl. ¶ 9, Ex. 1 at 40. Under this provision, Arizona substantive law applies because Heffelfinger's accounts were opened and maintained by offices in Phoenix, Arizona. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (under California choice-of-law analysis, a choice-of-law clause is binding on the parties to a contract unless "(1) the chosen state does not have a substantial relationship to either the parties or the transaction; or (2) application of the chosen state's law would be contrary to a fundamental policy of a state with a materially greater interest in the particular issue.") (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992)).

-6-

1  manifested in language or by implication from other circumstances, including course of dealing or
2  usage of trade or course of performance.").

3       Heffelfinger assented to the arbitration provision contained in the CAA when she opened
4  and used her accounts. She admits that she opened two accounts with Wells Fargo in 2012, *see*
5  CAC ¶ 64, at which time she signed an account application stating that she had received a copy of
6  the CAA and agreeing to be bound by its terms, including "the terms of the dispute resolution
7  program described in the account agreement." Kotzman Decl. Ex. 4 at 2. Heffelfinger also
8  received a copy of the CAA that included an arbitration clause. *Id*. ¶¶ 8-9, Ex. 1. The CAA in
9  turn provides that "[b]y signing the Bank's signature card for your account or using your account
10 or service, you will be considered to have received and agreed to this Agreement." *Id.* Ex. 1 at 1.

11      Thus, Heffelfinger had both actual and constructive notice of the CAA. She agreed to the
12 arbitration provision it contained by signing the consumer account applications and using the
13 accounts. *See Sovereign Camp*, 48 Ariz. at 487; *Ackerberg*, 898 F. Supp. 2d at 1176.

14      Heffelfinger was further informed of her agreement to arbitrate all disputes with the bank
15 in ▇▇▇▇▇▇▇, when she enrolled in online banking,[4] and in March 2013, when she signed an
16 additional account application certifying that she agreed to arbitrate disputes with the bank. *See*
17 Kotzman Decl. ¶¶ 10-12, 20, Ex. 2, 6.

18     **B.**     **The Dispute is Arbitrable, But the Court Should Not Reach that Question.**

19          **1.**     **Interpretation of the Arbitration Agreement Has Been Clearly and Unmistakably Assigned to the Arbitrator.**
20

21      The "arbitrability" question—*i.e.*, whether a particular dispute is subject to an agreement to
22 arbitrate—may be decided by either the court or the arbitrator, depending on the parties'

---

23 [4] The OAA is a type of "clickwrap" agreement. "Clickwrap" agreements "have been routinely upheld by circuit and district courts" as enforceable contracts because they put users on notice of
24 the terms to which they are assenting. *See, e.g.*, *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175-76 (9th Cir. 2014); *Swift v. Zynga Game Network, Inc*., 805 F. Supp. 2d 904 (N.D. Cal.
25 2011); 9A Ariz. Prac., Business Law Deskbook § 35:77 (2014-2015 ed.) (noting that "clickwrap agreements have been held to be generally valid and enforceable contracts"). Under the OAA,
26 Heffelfinger consented to arbitrating all disputes concerning Wells Fargo's online services and
27 was expressly informed that her personal accounts were governed by the dispute resolution provision of the CAA. Kotzman Decl. Ex. 1 at 32-33.
28

-7-

1  agreement.  *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  If the agreement
2  "clearly and unmistakably" provides that the arbitrator should decide questions of arbitrability,
3  then the court must honor that agreement.  *AT&T Tech.*, 475 U.S. at 649.
4        The arbitration agreement here clearly and unmistakably assigns those questions to the
5  arbitrator.  The agreement provides that "disputes" will be arbitrated and states that disputes
6  "include disagreements about the meaning, application or enforceability of this arbitration
7  agreement."  Kotzman Decl. Ex. 1 at 4.  It further states that "[a] dispute also includes any
8  disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a
9  'dispute' subject to binding arbitration as provided for in this Arbitration Agreement."  *Id.*  The
10 agreement also makes clear that "[t]he arbitrator shall decide any dispute regarding the
11 enforceability of this arbitration agreement."  *Id.*
12       That language could not be more clear.  *See Tuminello v. Richards*, 504 F. App'x 557, 558
13 (9th Cir. 2013) (holding that a contract providing that "the arbitrator shall decide 'any and all
14 controversies . . . concerning any account(s), transaction, dispute or the construction, performance,
15 or breach of this or any other Agreement' . . . provides clear and unmistakable evidence that the
16 parties intended the question of arbitrability to be decided in arbitration").  Even without it,
17 however, the issue of arbitrability would still be one for the arbitrator because the agreement
18 incorporates the AAA Commercial Arbitration Rules, Rule 7(a) of which provides that the
19 arbitrator shall decide the validity of the arbitration agreement and the arbitrability of any claim.
20 Kotzman Decl. Ex. 1 at 4.  *See, e.g.*, *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074
21 (9th Cir. 2013); *see also Scott Patrick, Inc. v. McMurdie*, No. 1 CA-SA 07-0118, 2007 WL
22 5517488, at *5 (Ariz. Ct. App. Aug. 30, 2007) (same).  The Court should therefore compel
23 arbitration, leaving for the arbitrator to decide (to the extent the matter is disputed) whether
24 Heffelfinger's claims are within the scope of the agreement.

25       **2.  If the Court Were To Reach the Question of Arbitrability, Heffelfinger's Claims Should Be Arbitrated.**
26
27       If the Court were to reach the question whether Heffelfinger's claims fall within the
  arbitration agreement, the answer would be that they do.
28

-8-

1       "An order to arbitrate the particular grievance should not be denied unless it may be said
2 with positive assurance that the arbitration clause is not susceptible of an interpretation that covers
3 the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (1986) (quoting *United Steelworkers v.*
4 *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  And where the arbitration clause is
5 sufficiently broad, as is the case here, there is a heightened presumption of arbitrability such that
6 "[i]n the absence of any express provision excluding a particular grievance from arbitration, we
7 think only the most forceful evidence of a purpose to exclude the claim from arbitration can
8 prevail." *Id.*; *see also World Grp. Secs., Inc. v. Allen*, No. CV 07-1657-PHX-JAT, 2007 WL
9 4168572, at *5 (D. Ariz. Nov. 20, 2007) (applying Arizona contract law to find that successor-
10 liability claims fell within the parties' agreement to arbitrate all disputes concerning the accounts).

11       The CAA states that "[i]f you have a dispute with the Bank, and you are not able to resolve
12 the dispute informally, you and the Bank agree that upon demand by either you or the Bank, the
13 dispute will be resolved through the arbitration process as set forth in this part." Kotzman Decl.
14 Ex. 1 at 4.  It then defines "dispute" as broadly as possible to include any disagreement between
15 the customer and the bank:  "A 'dispute' is any unresolved disagreement between you and the
16 Bank." *Id.*  The agreement provides examples of things that would come within that expansive
17 scope:  "It includes any disagreement relating in any way to services, accounts or matters; to your
18 use of any of the Bank's banking locations or facilities; or to any means you may use to access
19 your account(s).  It includes claims based on broken promises or contracts, torts, or other wrongful
20 actions.  It also includes statutory, common law, and equitable claims." *Id.*

21       Heffelfinger's claims are, obviously, a disagreement with the bank.  Moreover, they
22 concern her accounts.  She alleges that Wells Fargo used her personal information to open
23 unauthorized accounts in her name, CAC ¶ 64-66, and persuaded her to open accounts she did not
24 want by representing that she needed two accounts to receive a debit card, CAC ¶ 64.  If
25 Heffelfinger is complaining about fees charged to her account, or about her accounts being sent to
26 collections, that is obviously a dispute related to her account.  The Amended Complaint
27 specifically seeks restitution on behalf of Heffelfinger. *Id.* at 31.  Any amount that Wells Fargo
28

-9-

might have received from Heffelfinger that could possibly be owed in restitution would have come from money Heffelfinger deposited in her accounts.  Heffelfinger also complains of Wells Fargo's business model "built in part on signing its customers up for multiple accounts," *id.* ¶ 25, and alleges that Wells Fargo's bankers use inaccurate or misleading information to induce customers to open additional accounts, *id.* ¶¶ 32, 86(C), bundle services so that unauthorized accounts are opened at the same time as authorized accounts, *id.* ¶ 36, and do not close preexisting accounts in order to get credit for a new "sale," *id.* ¶ 41.  On their face, these claims relate to Heffelfinger's accounts.

### C. Heffelfinger Should Be Compelled to Arbitrate on an Individual Basis

The CAA's arbitration provision prohibits class arbitration, Kotzman Decl. Ex. 1 at 4, and must be enforced.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-53 (2011).

### D. The Case Should Dismissed or Stayed Pending the Outcome of The Arbitration

The Court may dismiss the Amended Complaint without prejudice.  *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).  Alternatively, the Court may stay this pending action, including all discovery, until the conclusion of the arbitration.  9 U.S.C. § 3.

## IV. CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Court grant this motion to compel arbitration and dismiss this action or stay it pending completion of the arbitration.

DATED:  August 13, 2015            MUNGER, TOLLES & OLSON LLP

                                    By:     */s/ David H. Fry*
                                            DAVID H. FRY
                                    Attorneys for Defendants,
                                    WELLS FARGO & COMPANY and
                                    WELLS FARGO BANK, N.A.

-10-