Derek Loeser, *admitted pro hac vice*
Gretchen Freeman Cappio, *admitted pro hac vice*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900; Fax: (206) 623-3384
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com

Jeffrey Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900; Fax: (510) 463-3901
jlewis@kellerrohrback.com

**Attorneys for Plaintiffs**

David H. Fry (Bar No. 189276)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
(415) 512-4000; Fax: (415) 512-4077
david.fry@mto.com

Erin J. Cox (Bar No. 267954)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-1560
(213) 683-9100; Fax: (213) 687-3702
erin.cox@mto.com

**Attorneys for Defendants Wells Fargo & Co. and
Wells Fargo Bank, N.A.**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No. 3:15-cv-02159-VC<br><br>**STIPULATION AND AGREEMENT OF CLASS ACTION SETTLEMENT AND RELEASE** |

Subject to the approval of the Court, this Stipulation and Agreement of Class Action Settlement and Release (the "Stipulation" or the "Settlement") is entered in the above-captioned putative class action (the "Action") between and among the Plaintiffs Shahriar Jabbari and Kaylee Heffelfinger and additional proposed settlement class representatives Jose Rodriguez and Antonette Brooks (collectively, "Named Plaintiffs"), on behalf of themselves and the Settlement Class (as hereinafter defined), and Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo" or "Defendants").  The Settlement is intended to fully, finally and forever resolve, discharge and settle the Released Claims (defined below) on the terms set forth herein.

## 1.     RECITALS

1.1.     All terms with initial capitalization shall have the meanings ascribed to them in paragraph 2 below.

1.2.     On May 15, 2015, Plaintiff Jabbari filed a putative class action complaint captioned *Jabbari v. Wells Fargo & Co., et al.,* Case No. 3:15-cv-02159-VC (N.D. Cal.), asserting various statutory claims, including claims for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), consumer fraud, and unjust enrichment against Wells Fargo.

1.3.     On June 24, 2015, Plaintiff Heffelfinger filed a putative class action complaint captioned *Heffelfinger* v. *Wells Fargo & Co., et al*., Case No. 3:15-cv-02942 (N.D. Cal.), also asserting various statutory claims, including claims for violation of FCRA, consumer fraud, and unjust enrichment.

1.4.     On July 9, 2015, Wells Fargo filed a motion to compel the arbitration of Plaintiff Jabbari's claims, a motion to dismiss the majority of Plaintiff Jabbari's claims and to stay the case, and a motion to transfer Plaintiff Jabbari's claims to the United States District Court for the Northern District of California, San Jose Division.

1.5.     On July 30, 2015, Plaintiff Heffelfinger voluntarily dismissed *Heffelfinger v. Wells Fargo & Co., et al.*, Case No. 3:15-cv-02942.  The same day, Plaintiffs Jabbari and Heffelfinger consolidated

2

their claims against Wells Fargo and, on behalf of themselves and all others similarly situated, filed a Consolidated Amended Class Action Complaint ("Consolidated Complaint") captioned *Jabbari, et al. v. Wells Fargo & Co. et al.*, 3:15-cv-02159-VC (N.D. Cal.).

1.6.    On August 11, 2015, Plaintiffs filed their response in opposition to Wells Fargo's Motion for Transfer. Also on August 11, 2015, the Court held a case management conference, and verbally denied as moot Wells Fargo's motion to dismiss Plaintiff Jabbari's Complaint.

1.7.    On August 13, 2015, Wells Fargo filed a motion to compel the arbitration of Plaintiff Heffelfinger's claims asserted in the Consolidated Complaint.

1.8.    On August 20, 2015, Plaintiff Heffelfinger filed her opposition to Wells Fargo's motion to compel arbitration of her claims.

1.9.    On August 27, 2015, Wells Fargo filed a reply to Plaintiffs' opposition to its motion to transfer.

1.10.    On September 2, 2015, Wells Fargo filed a reply to Named Plaintiffs' opposition to Wells Fargo's motions to compel arbitration.

1.11.    On September 8, 2015, Wells Fargo filed a motion to dismiss certain of Named Plaintiffs' claims asserted in the Consolidated Complaint and to stay the case.

1.12.    On September 10, 2015, the Court held a hearing regarding Wells Fargo's motions to compel arbitration and to transfer. The Court verbally denied Wells Fargo's motion to transfer, and took the motions to compel arbitration under submission.

1.13.    On September 23, 2015, the Court granted Wells Fargo's motions to compel arbitration and dismissed the Consolidated Complaint.

1.14.    On October 20, 2015, Named Plaintiffs filed a Notice of Appeal, noting their intention to appeal the Court's order compelling arbitration to the Ninth Circuit Court of Appeals.

1.15.    While the appeal was pending, the Parties commenced settlement discussions.  Under the direction of Ninth Circuit mediator Ann Julius, the Parties exchanged extensive mediation briefing, and met directly with Ms. Julius.  Thereafter, the Parties retained the Honorable Layn Phillips (Ret.) to engage in further mediation.  On September 6, 2016, the Parties reached an agreement in principle.

1.16.    On September 8, 2016, Wells Fargo announced that it had reached settlements with the Consumer Financial Protection Bureau ("CFPB"), the Office of the Comptroller of the Currency ("OCC"), and the Los Angeles City Attorney.

1.17.    Pursuant to the September 8, 2016 Consent Order issued by the CFPB ("CFPB Consent Order"), Wells Fargo was required to set aside $5 million for refunding fees paid by customers who had accounts opened or were enrolled in services without authorization.  Pursuant to the September 13, 2016 Stipulated Judgment in *People of the State of California v. Wells Fargo & Co.*, Case No. BC580778 (Los Angeles County Superior Court) ("Stipulated Judgment"), Wells Fargo was required to reimburse certain fees to customers identified by a third-party consultant ("Consultant") retained by Wells Fargo as having potentially unauthorized accounts opened between May 2011 and July 2015 (or September 2015, in the case of credit cards).  The September 6, 2016 Consent Order issued by the OCC ("OCC Consent Order"), also required Wells Fargo to create a plan for submission to the OCC to identify potentially harmed customers and calculate an amount of reimbursement to be paid to each customer.  Under the terms of the CFPB Consent Order, the OCC Consent Order, and the Stipulated Judgment, Wells Fargo was required to pay $100 million to the CFPB's Civil Penalty Fund, pay a $35 million civil penalty to the OCC, and a $50 million civil penalty to the City and County of Los Angeles.

1.18.    Pursuant to the CFPB Consent order, the scope of the analysis conducted by the Consultant to identify customers having potentially unauthorized accounts was expanded to cover accounts opened between January 1, 2011 and September 8, 2016.  Wells Fargo committed to expand the scope of the Consultant's analysis further, to cover accounts opened between January 1, 2009 and

September 30, 2016 ("Consultant Analysis").  Persons who were or will be identified through the Consultant Analysis are referred to herein as "Consultant-Identified Persons."  Wells Fargo issued payments to reimburse Consultant-Identified Persons for certain fees associated with the potentially unauthorized accounts, including payment of monthly or annual fees, payment of overdraft fees due to the potentially unauthorized movement of funds, foregone interest payments on checking and savings accounts, and interest charges on credit card accounts.  As of April 14, 2017, Wells Fargo had issued $3.26 million in remediation payments to Consultant-Identified Persons with potentially unauthorized checking or savings accounts, unsecured credit cards, or unsecured lines of credit.

1.19.    On September 13, 2016, the U.S. Court of Appeals for the Ninth Circuit granted the Parties' stipulated motion to dismiss the appeal without prejudice so that the Parties could seek approval of the class action settlement in this Court.

1.20.    The Parties continued to negotiate the terms of their settlement with the assistance of the Honorable Layn Phillips (Ret.) for several months before reaching agreement on the terms and conditions set forth in this Stipulation. Negotiations were extensive and conducted at arm's length. The Parties met directly with Judge Phillips, and engaged in numerous telephone conferences with Judge Phillips and his colleague, Michelle Yoshida, and directly with each other.  Despite their efforts to come to terms, the Parties were not able to agree on the amount of the settlement.  Judge Phillips ultimately provided a mediator recommendation of $110 million that was accepted by the parties on March 25, 2017.

1.21.    Following confirmatory discovery and the release of the Independent Directors of the Board of Wells Fargo & Company, Sales Practices Investigation Report (Apr. 10, 2017), the parties resumed negotiations, to expand the Class Period back to 2002. With the assistance of the mediator and after additional negotiations, the Parties agreed to extend the Class Period back to May 1, 2002, and to increase the Settlement Amount Fund by $32 million, to $142 million.

1.22.    The Settlement provides for three forms of compensation to Settlement Class Members, as more fully explained below: (1) reimbursement for fees incurred by certain Settlement Class Members; (2) compensation for damage to Settlement Class Members' credit caused by the opening of unauthorized accounts at Wells Fargo; and (3) additional compensation paid from the Net Settlement Fund, following allocation of Settlement Class Members' total Fee Damages and Credit Impact Damages.

1.23.    After investigating the facts and carefully considering applicable law, the Named Plaintiffs and Class Counsel have concluded that it would be in the best interests of the Settlement Class to enter into this Stipulation in order to avoid the uncertainties of litigation, and to ensure meaningful benefits to the Settlement Class, and that the terms and conditions of this Stipulation and the settlement contemplated hereby are fair, reasonable, and adequate and in the best interests of all members of the Settlement Class.

## 2.    DEFINITIONS

2.1.    "Action" means the instant action, *Jabbari, et al. v. Wells Fargo & Co., et al.*, Case No. 3:15-cv-02159-VC (N.D. Cal.).

2.2.    "Authorized Claimant" means a Settlement Class Member who is approved for payment from the Net Settlement Fund, either through submission of a timely and valid Claim to the Settlement Administrator (in accordance with the requirements established by the Court), or by virtue of being an Automatically-Enrolled Claimant.

2.3.    "Automatically-Enrolled Claimant" means a member of the Settlement Class who has been either (a) identified through the Customer Complaint Review Process within sixty  (60) days of the date of entry of the Preliminary Approval Order, or (b) subsequently identified through the Customer Complaint Review Process at least forty-five (45) days before the deadline for Claim Forms to be submitted as set by the Court in the Preliminary Approval Order, or a later deadline if extended by order

of the Court.  The Settlement Administrator shall mail the Postcard Notice to Automatically-Enrolled Claimants beginning within sixty (60) days of the date of entry of the Preliminary Approval Order, and no later than at least thirty (30) days before the deadline for Claim Forms to be submitted as set by the Court in the Preliminary Approval Order, or a later deadline if extended by order of the Court. Automatically-Enrolled Claimants are automatically entitled to a Non-Compensatory Damages Payment from the Net Settlement Fund without submission of a Claim, and will become Settlement Class Members unless they timely and properly opt-out of the Settlement Class pursuant to the procedures set out in Paragraph 12 of this Stipulation.  If an Automatically-Enrolled Claimant seeks a Compensatory Damages Payment from the Net Settlement Fund, or seeks a Non-Compensatory Damages Payment on the basis of more than one (1) account, product, or service, the Automatically-Enrolled Claimant must submit a Claim.

2.4.     "Claim" means a completed and signed Claim Form submitted to the Settlement Administrator in accordance with the instructions on the Claim Form.

2.5.     "Claim Form" means the Proof of Claim Form and Release that a Settlement Class Member (other than an Automatically-Enrolled Claimant) must complete and submit (in accordance with the requirements established by the Court) if that Settlement Class Member seeks to be eligible for payment from the Net Settlement Fund, substantially in the form attached hereto as Exhibit A-4 to Exhibit A.

2.6.      "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

2.7.     "Class Counsel" means Derek W. Loeser, Gretchen Freeman Cappio, Jeffrey Lewis, Daniel Mensher, and Matthew J. Preusch of Keller Rohrback L.L.P.

2.8.     "Class Period" is the period from May 1, 2002 through April 20, 2017, inclusive.

2.9.    "Compensatory Damages Payment" means the payment made to an Authorized Claimant from the Net Settlement Fund to compensate for out-of-pocket losses, as determined by the Settlement Administrator, in accordance with Paragraph 9.

2.10.    "Complaint" means the Consolidated Amended Class Action Complaint filed by Named Plaintiffs in the Action on July 30, 2015.

2.11.    "Consultant Analysis" means the analysis conducted by the third-party consultant and referenced at Paragraph 16 of the September 13, 2016 Stipulated Judgment in *People of the State of California v. Wells Fargo & Co.*, Case No. BC580778 (Los Angeles County Superior Court), but expanded in scope to encompass accounts opened between January 1, 2009 and September 30, 2016.

2.12.    "Consultant-Identified Persons" means Persons identified through the Consultant Analysis.  The Settlement Administrator shall mail the Postcard Notice to Consultant-Identified Persons beginning within sixty (60) days of the date of entry of the Preliminary Approval Order, and no later than at least thirty (30) days before the deadline for Claim Forms to be submitted as set by the Court in the Preliminary Approval Order, or a later deadline if extended by order of the Court.

2.13.    "Court" means the United States District Court for the Northern District of California, the Honorable Vince Chhabria, presiding.

2.14.    "Credit Impact Damages" are a component of Compensatory Damages Payments, and compensate Authorized Claimants for increased borrowing cost due to credit score impact as a result of an unauthorized credit card, line of credit, or small business deposit account, or an unauthorized application for a credit card, line of credit, or small business deposit account which did not result in the extension of credit or opening of an account.  Wells Fargo shall pay the cost of engaging the consumer reporting agencies to conduct the analysis of Credit Impact Damages and up to $1 million in fees and costs incurred by Class Counsel's independent expert on Credit Impact Damages, in addition to its payment of the Settlement Fund.  Any additional amount of the cost of calculating and administering

Credit Impact Damages (other than the cost of engaging the consumer reporting agencies and up to $1 million in fees incurred by Class Counsel's independent expert on Credit Impact Damages) shall be paid out of the Settlement Fund.

2.15.   "Customer Complaint Review Process" means the process by which customer complaints submitted to Wells Fargo, the CFPB, or the OCC are reviewed to identify members of the Settlement Class.

2.16.   "Defendants" or "Wells Fargo" means and includes Wells Fargo & Company and Wells Fargo Bank, N.A.

2.17.   "Defendants' Counsel" means David H. Fry and Erin J. Cox of Munger, Tolles & Olson LLP.

2.18.   "Effective Date" means the date on which all of the following shall have occurred:  (i) the Court has entered the Preliminary Approval Order; (ii) the Court has approved the Settlement, following dissemination of Notice and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (iii) the Court has entered the Judgment, substantially in the form annexed hereto as Exhibit B, or the Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and neither Named Plaintiffs nor Defendants elects to terminate this Settlement; and (v) the Judgment or Alternative Judgment has become Final (as defined in Paragraph 2.24 below).

2.19.   "Escrow Account" means an interest-bearing escrow account maintained at the Escrow Agent, which account shall be under the exclusive control of Class Counsel.

2.20.   "Escrow Agent" means a financial services company designated by Class Counsel.

2.21.   "Escrow Agreement" means the agreement between Class Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

2.22.   "Fee and Expense Award" means such funds as may be awarded by the Court to Class Counsel to compensate Class Counsel for their attorneys' fees and expenses in connection with the Action and the Settlement.

2.23.   "Fee Damages" are a component of Compensatory Damages Payments, compensating Authorized Claimants for fees assessed by Wells Fargo in connection with certain credit card, line of credit, and deposit accounts claimed to be unauthorized.

2.24.   "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when:  (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in all material respects and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.  Any appeal or other proceeding pertaining solely to an order solely adopting or approving a Plan of Allocation or solely to any order issued with respect to an application for attorneys' fees and expenses shall not in any way delay or preclude the Judgment from becoming Final.

2.25.   "Final Approval Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

2.26.   "Identity Theft Protection Services" means products or services designed to monitor and alert enrolled customers when specific information is reported to credit bureaus.

2.27.    "Judgment" means an order of judgment and dismissal approving the Settlement to be rendered by the Court substantially in the form attached hereto as Exhibit B.

2.28.   "Long-Form Notice" means the Court-approved notice to be referenced in other forms of notice and posted on the Settlement Website, made available via email (insofar as email addresses are available) to Consultant-Identified Persons and mailed to any Person who requests it, substantially in the form attached hereto as Exhibit A-2 to Exhibit A.

2.29.   "Named Plaintiffs" means the Named Plaintiffs in the Action, Shahriar Jabbari and Kaylee Heffelfinger, and additional proposed settlement class representatives Jose Rodriguez and Antonette Brooks.

2.30.   "Named Plaintiff Service Award" means the award, subject to Court approval, to be paid to each Named Plaintiff as compensation for their services in the Action.

2.31.   "Net Settlement Fund" means the Settlement Fund less: (i) any attorneys' fees and costs awarded by the Court; (ii) the Named Plaintiff Service Awards; (iii) any Notice and Administration Costs (other than as set forth above regarding Credit Impact Damages),; and (iv) other costs, expenses, or amounts as may be approved by the Court.

2.32.   "Net Settlement Pool 1" is that portion of the Net Settlement Fund out of which damages related to accounts, products, or services opened between January 1, 2009 and April 20, 2017, inclusive, and claimed to be unauthorized, shall be paid. Net Settlement Pool 1 is equal to the Net Settlement Fund multiplied by the fraction 110/142 (that is, 77.46%).

2.33.   "Net Settlement Pool 2" is that portion of the Net Settlement Fund out of which damages related to accounts, products, or services opened between May 1, 2002 and December 31, 2008, inclusive, and claimed to be unauthorized, shall be paid. Net Settlement Pool 2 is equal to the Net Settlement Fund multiplied by the fraction 32/142 (that is, 22.54%).

2.34.   "Non-Compensatory Damages Payment" means the payment made to an Authorized Claimant from the Net Settlement Fund, following allocation of Compensatory Damages Payments to Authorized Claimants, in accordance with Paragraph 9.7.2.

2.35.   "Notice" means, collectively, the Postcard Notice, Long-Form Notice, and Summary Notice provided to the Settlement Class as provided herein and directed by the Court.

2.36.   "Notice and Administration Costs" means (i) the costs, fees and expenses that are incurred in connection with providing Notice to the Settlement Class; (ii) any costs, fees and expenses that are incurred by the Escrow Agent; and (iii) the costs, fees and expenses that are incurred in connection with administering the Claims process (with the exception of the cost of engaging the consumer reporting agencies to conduct the analysis of Credit Impact Damages and up to $1 million in fees incurred by Class Counsel's independent expert on Credit Impact Damages, which Wells Fargo shall pay in addition to its payment of the Settlement Fund).

2.37.   "Notice Plan" means the proposed plan of disseminating the Postcard Notice and Summary Notice as provided in Paragraph 8 of this Stipulation, and making the Long-Form Notice available on the Settlement Website.

2.38.   "Parties" means the Named Plaintiffs, the Settlement Class, and Defendants, collectively.

2.39.   "Person" shall include, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity and their spouses, heirs, predecessors, successors, representatives, and assigns.

2.40.   "Personal Identification" shall mean Social Security Number, Driver's License or State-Issued ID number, Passport number, Foreign Issued ID number, Armed Forces ID number, Resident Alien Card number, Matricula Consular Card number, or Permanent Resident Card number.

2.41.   "Postcard Notice" means the Court-approved short-form notice to be directly mailed to Automatically-Enrolled Claimants and Consultant-Identified Persons substantially in the form attached hereto as Exhibit A-1 to Exhibit A.

2.42. "Post-Stipulation Complainants" means Persons who submit a complaint to Wells Fargo, the CFPB, or the OCC on or after April 20, 2017 and before 30 days prior to the Final Approval Hearing concerning an unauthorized account, product, or service opened in their name without consent.

2.43. "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in Paragraph 9, or such other plan of allocation as the Court shall approve.

2.44. "Preliminary Approval Order" means the order (substantially in the form attached hereto as Exhibit A) to be entered by the Court.

2.45. "Publication Notice" or "Summary Notice" means the notice, substantially in the form attached hereto as Exhibit A-3 to Exhibit A, to be published as set forth in the Preliminary Approval Order attached as Exhibit A.

2.46. "Related Actions" means *Mitchell v. Wells Fargo Bank, N.A.*, No. 2:16-cv-00966 (D. Utah); *Friedman* v. *Wells Fargo Bank, N.A.*, No. 2:16-cv-07405 (C.D. Cal.); *Blanchard v. Wells Fargo Bank, N.A.*, No. 1:16-cv-07509 (D.N.J.); *Chernavsky v. Wells Fargo Bank, N.A.*, No. 3:16-cv-06326-VC (N.D. Cal.); *Cason v. Wells Fargo Bank, N.A.*, No. 3:16-cv-07040 (N.D. Cal.); *Lessa v. Wells Fargo & Co.*, No. 16-cvs-011955 (Wake Cty. Super. Ct.); *Hodge v. Campbell,* No. SU16-cv-0771 (Clarke Cty. Super. Ct.); *Stanton v. Wells Fargo & Co.*, No. 16-cv-03318-CEH-JSS (M.D. Fla.); *Jeffries v. Wells Fargo & Co.*, No. 2:16-cv-1987 (N.D. Ala.); *Allen v. Wells Fargo & Co.,* No. 3:17-cv-00333 (S.D. Cal.); and *Morales v. Wells Fargo & Co.*, No. BC657880 (Los Angeles Cty. Super. Ct.).

2.47. "Released Claims" means, to the fullest extent permitted by law or equity, any and all claims and causes of action of every nature and description, whether known or Unknown, whether arising under federal, state, common or foreign law, or any other law, rule, or regulation, that were asserted, could have been asserted, or that arise out of the same transactions or occurrences as the claims that were asserted, in the Action, commensurate with the res judicata effect at the conclusion of the litigation. For the avoidance of doubt, the Released Claims encompass claims and causes of action of

1  every nature and description arising from the authorized or unauthorized enrollment in Identity Theft

2  Protection services by members of the Settlement Class.

3      2.48.   "Released Parties" means Defendants and Defendants' respective successors, and

4  assigns; and their past, present, and future, direct or indirect, parents, subsidiaries, affiliates, principals,

5  officers, directors, employees, agents, attorneys, advisors, representatives, heirs, and administrators.

6      2.49.   "Stipulation" or the "Settlement" means this Stipulation and Agreement of Class Action

7  Settlement and Release, including its exhibits.

8      2.50.   "Settlement Administrator" means the administrator selected by Class Counsel that

9  provides notice to the Settlement Class in accordance with the Notice Plan and that administers the

10  Claims process.  The Settlement Administrator alone is responsible for administering the Settlement

11  terms for which it has duties described herein.  The Settlement Administrator will have discretion to

12  reasonably approve and deny claims in accordance with the terms of the Settlement.  The Settlement

13  Administrator will work with independent consultants as necessary to fulfill the terms of the Settlement.

14      2.51.   "Settlement Class" means all Persons for whom Wells Fargo or Wells Fargo's current or

15  former subsidiaries, affiliates, principals, officers, directors, or employees opened an account in their

16  name without consent, enrolled them in a product or service without consent, or submitted an

17  application for a product or service in their name without consent during the period from May 1, 2002 to

18  April 20, 2017, inclusive, with the exception of (i) Defendants' officers, directors and employees; (ii)

19  the judicial officers and associated court staff assigned to this case, and the immediate family members

20  of such officers and staff; and (iii) Persons who timely and properly opt-out of the Settlement Class

21  pursuant to the procedures set out in Paragraph 12 of this Stipulation.

22      2.52.   "Settlement Class Member" means all Persons who are members of the Settlement Class

23  and who do not timely and properly opt-out of the Settlement Class pursuant to the procedures set out in

24  Paragraph 12 of this Stipulation.

2.53. "Settlement Fund" means the sum of $142 million in United States dollars, which Wells Fargo shall cause to be deposited into the Escrow Account within ten (10) business days of entry of the Preliminary Approval Order.

2.54. "Settlement Website" means a website, www.WFSettlement.com, that will be referenced in all forms of Notice, that will contain detailed information about the Settlement for the benefit of the Settlement Class, and that—beginning within ninety (90) days of the date of entry of the Preliminary Approval Order—will enable Settlement Class Members to complete and submit electronic Claim Forms for payment from the Settlement Fund.

2.55. "Unknown Claims" means any and all Settled Claims that any Named Plaintiff and/or Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to object to this Settlement or not exclude himself, herself or itself from the Settlement Class.  With respect to any and all Released Claims, the parties stipulate and agree that, upon the Effective Date, Named Plaintiffs shall expressly waive, and each Settlement Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by Cal. Civ. Code § 1542, and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

> **A general release does not extend to claims, which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Named Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but each Named Plaintiff shall expressly – and each Settlement Class

Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have – fully, finally and forever settled and released any and all Released Claims, known or Unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Named Plaintiffs and Defendants acknowledge, and Settlement Class Members by law and operation of the Judgment shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims separately bargained for and was a material element of the Settlement.

### 3.        STIPULATION OF CLASS CERTIFICATION

3.1.    The Parties hereto stipulate to the certification, for settlement purposes only, of a Settlement Class (as defined above), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The certification of the Settlement Class shall be binding only with respect to the Settlement of the Action and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

### 4.        MOTION FOR PRELIMINARY APPROVAL AND MOTION FOR ENTRY OF FINAL JUDGMENT

4.1.    Promptly after the execution of this Stipulation, Class Counsel shall submit this Stipulation together with its exhibits to the Court and shall move the Court for preliminary approval of the Settlement.  A copy of a proposed form of a Preliminary Approval Order, which Class Counsel shall submit to the Court for its approval in connection with a motion for preliminary approval of the Settlement, is attached hereto as Exhibit A.  Entry of a Preliminary Approval Order in substantially the form set forth in Exhibit A is a material term of this Settlement.  Among other things, the Preliminary Approval Order:

4.1.1.   certifies, for settlement purposes only, the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

4.1.2.   preliminarily approves the Settlement as being a fair, reasonable, and adequate settlement as to Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure;

4.1.3.   determines that Class Counsel have and had the authority to execute this Settlement on behalf of the Named Plaintiffs and the Settlement Class, appoints Class Counsel as counsel for the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and authorizes Class Counsel to take approved steps to proceed with this Settlement on behalf of the Settlement Class;

4.1.4.   orders Wells Fargo to provide or cause to be provided to the Settlement Administrator and Class Counsel certain customer-identifying information, and imposes appropriate confidentiality requirements and restrictions on use of this information;

4.1.5.   directs notice to be disseminated as set forth in Paragraph 8 of this Stipulation, and determines that the Postcard Notice, Long-Form Notice, the Summary Notice, the Notice Plan, and the Plan of Allocation fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Postcard Notice, Long-Form Notice, the Summary Notice, and other exhibits to this Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy;

4.1.6.   subjects the Settlement Fund to the continuing jurisdiction of the Court; and

4.1.7.   stays further proceedings in the Related Actions until (i) the Judgment or Alternative Judgment becomes Final, or (ii) termination of this Settlement, whichever occurs earlier; and

4.1.8.   enjoins all members of the Settlement Class, unless and until (i) they have been excluded from the Settlement by action of the Court, or (ii) termination of this Settlement, whichever

occurs earlier, from filing, commencing, prosecuting, continuing to prosecute, supporting, intervening in, or participating as plaintiffs, claimants, or class members in the Related Actions or in any other lawsuit, or other proceeding in any jurisdiction based on, relating to, or arising out of the claims, or the facts and circumstances at issue, in this Action, the Related Actions, and/or the Released Claims.

4.2.    If the Court enters a Preliminary Approval Order and the Settlement has not otherwise been terminated, then, after the Notice Plan is implemented and after expiration of the time for members of the Settlement Class to timely and properly exclude themselves from the Settlement pursuant to Fed. R. Civ. P. 23(e), Class Counsel shall submit to the Court a motion for entry of final judgment.  Entry of a Judgment in substantially the form set forth in Exhibit B is a material term of this Settlement.  Among other things, the Judgment:

4.2.1.   determines that the Postcard Notice, Long-Form Notice, and Summary Notice were disseminated in compliance with the Court's Preliminary Approval Order, and in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedures and the requirements of due process;

4.2.2.   finally approves this Stipulation and the Settlement contemplated hereby as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directs its consummation pursuant to its terms and conditions;

4.2.3.   lists all Persons who have timely and properly opted out of the Settlement as permitted by the Court;

4.2.4.   dismisses the Complaint with prejudice and, except as expressly provided for in this Settlement Agreement, without costs, in favor of the Defendants and against all Settlement Class Members;

4.2.5.   declares that the Named Plaintiffs and each and every one of the Settlement Class Members unconditionally, fully, and finally releases and forever discharges each of the Released Parties

from the Released Claims, and expressly terminates any rights of Settlement Class Members to the protections afforded under Section 1542 of the California Civil Code, and/or any other similar, comparable, or equivalent laws; and

4.2.6.   reserves to the Court exclusive personal and subject matter jurisdiction with respect to the resolution of all matters relating to the implementation or enforcement of this Settlement and the Judgment.

## 5.      RELEASE OF CLAIMS

5.1.    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as against Defendants, and shall fully and finally release any and all Released Claims as against all Released Parties.

5.2.    Pursuant to the Judgment, upon the Effective Date, Named Plaintiffs and each of the Settlement Class Members, on behalf of themselves and any of their personal representatives, spouses, domestic partners, trustees, heirs, executors, administrators, predecessors, successors or assigns shall be deemed by operation of law to have fully, finally and forever released, relinquished, waived, discharged and dismissed each and every Released Claim, and covenant not to pursue any or all Released Claims against any Released Party, whether directly or indirectly, whether on their own behalf or otherwise, and regardless of whether or not such Settlement Class Member executes and delivers a Claim Form (except that the foregoing provision shall not apply to any such representative, spouse, domestic partner, trustee, heir, executor, administrator, successor or assign who independently would be a Settlement Class Member and timely excludes himself, herself or itself).  By entering into this Settlement, Named Plaintiffs and Settlement Class Members represent and warrant that they have not assigned, hypothecated, conveyed, transferred or otherwise granted or given any interest in the Released Claims, or any of them, to any other Person.

5.3.     Pursuant to the Judgment, upon the Effective Date, Defendants and each of the other Released Parties shall be deemed by operation of law to have released, waived, discharged and dismissed each and every claim relating to the institution or prosecution of the Action.

**6.     ATTORNEYS' FEES AND COSTS AND NAMED PLAINTIFF SERVICE AWARDS**

6.1.1.   At the time set by the Court in the Preliminary Approval Order, Class Counsel may apply for approval by the Court of a Fee Expense Award to be paid from the Settlement Fund.  Any request by Class Counsel for a Named Plaintiff Service Award shall also be made at that time.

6.1.2.   Class Counsel intend to seek Court approval for fees not to exceed 25% of the Settlement Fund, and for reimbursement of their reasonable expenses of litigation.  Class Counsel also intend to seek a Named Plaintiff Service Award of up to $5,000 for each Named Plaintiff.

**7.     SETTLEMENT FUND**

7.1.     In consideration of the Settlement of the Released Claims against Defendants and the other Released Parties, Wells Fargo shall cause the Settlement Fund (the total sum of $142,000,000 United States dollars) to be deposited into the Escrow Account no later than ten (10) business days after entry of the Preliminary Approval Order.  Other than the obligation of Wells Fargo to cause to be paid this amount to the Escrow Agent, Wells Fargo shall not have any obligation to make any payment into the Escrow Account pursuant to this Stipulation.  The interest earned on the Settlement Fund shall be for the benefit of the Settlement Class if the Settlement becomes Final.  If the Settlement does not become Final and the Settlement is terminated, the interest earned on the Settlement Fund shall be for the benefit of Wells Fargo and Paragraph 14 below shall govern.  If the Settlement Fund is not deposited into the Escrow Account no later than ten (10) business days after entry of the Preliminary Approval Order, Named Plaintiffs reserve the right to either: (i) move to enforce the Settlement, including seeking interest on any unpaid amount; or (ii) terminate the Settlement, in which case Paragraph 14 below shall govern.

7.2.     The Settlement Fund shall be used to pay: (i) any attorneys' fees and costs awarded by the Court; (ii) the Named Plaintiff Service Awards; (iii) any Notice and Administration Costs; and (iv) other costs, expenses, or amounts as may be approved by the Court.  The balance remaining in the Settlement Fund (the Net Settlement Fund) shall be distributed to Authorized Claimants as provided in Paragraph 9 below.  Defendants shall have no responsibility or liability for the maintenance, preservation, investment, or distribution of any amount of the Settlement Fund or the Net Settlement Fund.

7.3.     Class Counsel may pay from the Escrow Account, without further order of the Court, all reasonable Notice and Administration Costs (with the exception of the cost of engaging the consumer reporting agencies to conduct the analysis of Credit Impact Damages and up to $1 million in fees incurred by Class Counsel's independent expert on Credit Impact Damages, which Wells Fargo shall pay in addition to its payment of the Settlement Fund).  Such costs and expenses shall include, without limitation, the actual costs of publication of the Summary Notice, printing and mailing the Postcard Notice to Automatically-Enrolled Claimants and Consultant-Identified Persons, and printing and mailing the Long-Form Notice and Claim Form to Persons who submit written requests for the same, the administrative expenses actually incurred and fees reasonably charged by the Settlement Administrator in connection with providing Notice and processing the submitted Claims, and the reasonable fees of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid to Defendants.

7.4.     Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation

and/or further order of the Court.  The Net Settlement Fund prior to the Effective Date shall be invested

solely in obligations of, or obligations guaranteed by, the United States of America or any of its

departments or agencies or in money market funds invested solely in obligations of, or obligations

guaranteed by, the United States of America or any of its departments or agencies. All risks related to

the investment of the Settlement Fund shall be borne by the Settlement Fund.

## 8.    NOTICE PLAN

8.1.    For the purpose of identifying and providing notice to potential Settlement Class

Members, the Preliminary Approval Order shall order Wells Fargo to provide or cause to be provided to

the Settlement Administrator within sixty (60) days of the date of entry of the Preliminary Approval

Order the names, Personal Identification, last known addresses, and, if known, email addresses, of the

Automatically-Enrolled Claimants and Consultant-Identified Persons to the extent such information is

available at that time, and for each Consultant-Identified Person, information on the type of account and

account number which was identified through the Consultant Analysis for purposes of including such

information in the electronic Claim Form made available on the Settlement Website to each such

Consultant-Identified Person.  If additional Automatically-Enrolled Claimants or Consultant-Identified

Persons are subsequently identified, Wells Fargo shall promptly provide or cause to be provided the

names, Personal Identification, last known addresses and, if known, email addresses of those Persons to

the Settlement Administrator, and for each Consultant-Identified Person, information on the type of

account and account number which was identified through the Consultant Analysis.  The Preliminary

Approval Order shall impose appropriate confidentiality requirements and restrictions on use of this

customer-identifying information, including that the Settlement Administrator shall not provide this

information to any Person other than Class Counsel, that Class Counsel shall keep such information

confidential and will use the information only in connection with the administration of the Settlement,

1    and that both the Settlement Administrator and Class Counsel shall adopt data security measures

2    reasonably calculated to protect the information from unauthorized disclosure.

3        8.2.    The Settlement Administrator shall mail the Postcard Notice (substantially in the form

4    attached hereto as Exhibit A-1 to Exhibit A) and a Claim Form (substantially in the form attached hereto

5    as Exhibit A-4 to Exhibit A) to the Automatically-Enrolled Claimants and Consultant-Identified Persons

6    on a rolling basis and as soon as practicable but no later than forty (40) days  after the Settlement

7    Administrator receives the names, Personal Identification, and last known addresses of the

8    Automatically-Enrolled Claimants from Wells Fargo in the case of Automatically-Enrolled Claimants

9    and Consultant-Identified Persons identified within sixty (60) days of entry of the Preliminary Approval

10   Order, and, for subsequently identified Automatically-Enrolled Claimants and Consultant-Identified

11   Persons, no later than thirty (30) days before the deadline for Claim Forms to be submitted as set by the

12   Court in the Preliminary Approval Order, or a later deadline if extended by order of the Court.  The

13   Claim Form sent to each Consultant-Identified Person shall include information on each account which

14   was identified through the Consultant Analysis, including the account number.

15       8.3.    Class Counsel shall instruct the Settlement Administrator to cause to be published the

16   Summary Notice substantially in the form attached hereto as Exhibit A-3 to Exhibit A in *Time* magazine

17   as well as select national and regional newspapers, and through digital media outreach, as further

18   described in the Declaration of Shannon Wheatman, filed herewith, or by whatever other manner might

19   be ordered by the Court.

20       8.4.    By no later than forty (40) days after the Settlement Administrator receives the names,

21   Personal Identification, and last known addresses of the Automatically-Enrolled Claimants and

22   Consultant-Identified Persons, Class Counsel shall instruct the Settlement Administrator to establish a

23   website making available the Long-Form Notice both as .html websites and through a .pdf download

24   prior to causing the publication of the Summary Notice, and creating an interactive, online Claim Form

that can be filled out electronically by Settlement Class Members.  In addition, Class Counsel shall instruct the Settlement Administrator to maintain a mailing address and email address to which Persons may write to submit a request for a hardcopy of the Long-Form Notice and Claim Form.  Class Counsel shall further instruct the Settlement Administrator to mail, within five (5) days of receipt of the request, the Long-Form Notice and Claim Form to all Persons who submit a timely request.

### 9.    PLAN OF ALLOCATION

9.1.    The Net Settlement Fund shall be distributed to Authorized Claimants as provided herein.

9.2.    The Settlement Administrator shall administer the process of receiving, reviewing and approving or denying Claims, and shall discharge its duties under Class Counsel's supervision and subject to the jurisdiction of the Court.

9.3.    A valid Claim shall authorize Defendants to make available to the Settlement Administrator records related to the account(s), product(s), or service(s) opened, enrolled, or applied for without consent according to the Claim, or the Claimant's authorized identity theft protection service, for purposes of the Settlement Administrator evaluating the validity and amount of the Claimant's Claim.  Aside from making available to the Settlement Administrator the information specified in this Settlement for purposes of the Settlement Administrator evaluating the validity and amount of the Claimant's Claim, Defendants shall have no responsibility whatsoever for the administration of the Settlement or the claims process.  Furthermore, Defendants shall have no liability whatsoever to any Person, including, but not limited to, the Settlement Class Members, in connection with any such administration or distribution of the Net Settlement Fund, or any dispute by any Settlement Class member concerning the handling or resolution of his, her, or its claim.  Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

9.4.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, including, but not limited to, the releases provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  There shall be no discovery on the merits of this Action or this Settlement in connection with the processing of Claim Forms.

9.5.     Class Counsel shall instruct the Settlement Administrator to review each Claim Form timely submitted, and the records made available by Defendants and any other data provided by independent consultants relating to the account(s), product(s), or service(s) identified on the Claim Form, to determine whether the Claimant is an Authorized Claimant.  The Settlement Administrator's good faith determination of whether a Claimant is an Authorized Claimant shall be final and shall not be subject to any review or appeal.  The Settlement Administrator, under the supervision of Class Counsel, shall administer and calculate the claims submitted by Claimants and, after final approval and entry by the Court of an order approving disbursement of the Net Settlement Fund to Authorized Claimants, shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

9.6.     Pursuant to the CFPB Consent Order, Wells Fargo was required to set aside $5 million for refunding fees paid by customers who have had accounts opened or been enrolled in services without authorization.  Wells Fargo's obligations to refund fees paid by customers under the CFPB Consent Order will not be diminished by this Settlement.  Pursuant to the September 13, 2016 Stipulated Judgment in *People of the State of California v. Wells Fargo & Co.*, Case No. BC580778 (Los Angeles County Superior Court), Wells Fargo was required to reimburse certain fees to customers identified by the Consultant as having potentially unauthorized accounts.  None of Wells Fargo's obligations under the Stipulated Judgment will be diminished by this Settlement.  The Preliminary Approval Order shall direct Wells Fargo to disclose to the Settlement Administrator information sufficient to identify

Automatically-Enrolled Claimants and Consultant-Identified Persons who have previously received payments as compensation for potentially unauthorized accounts, products, or services, and the total amount of reimbursement.  The Preliminary Approval Order shall also direct Wells Fargo to disclose to the Settlement Administrator information sufficient to identify Post-Stipulation Complainants who received payments as compensation for potentially unauthorized accounts, products, or services, and the total amount of reimbursement.  The Preliminary Approval Order shall also direct Wells Fargo to disclose to the Settlement Administrator information regarding Settlement Class Members claiming to have an unauthorized Wells Fargo credit card, line of credit, or small business deposit account opened during the Class Period or applied for without their consent during the Class Period, including an indication of whether that product was activated or used by the Settlement Class Members, the date of the hard credit inquiry associated with that product, and the relevant consumer reporting agency for the hard credit inquiry.  The Preliminary Approval Order shall also direct Wells Fargo to disclose to the Settlement Administrator or an independent consultant account transaction records for the purpose of calculating Fee Damages, as described in Paragraph 9.7.1.

9.7.    The aggregate amount of a Compensatory Damages Payment and Non-Compensatory Damages Payment to a particular Automatically-Enrolled Claimant or Post-Stipulation Complainant who has previously received payment as compensation for potentially unauthorized accounts, products, or services, will be reduced by the amount of that previous reimbursement.

9.7.1.    *Compensatory Damages Payment:* Authorized Claimants shall first be reimbursed from the Net Settlement Amount for out-of-pocket losses stemming from the product, service or application that the Authorized Claimant contends lacked consent.  Such out-of-pocket losses shall consist of two components: (1) Credit Impact Damages; and (2) Fee Damages.   If an Automatically-Enrolled Claimant seeks a Compensatory Damages Payment from the Net Settlement

Fund (either in the form of Credit Impact Damages or Fee Damages), the Automatically-Enrolled Claimant must submit a Claim.

9.7.1.1. ***Credit Impact Damages:*** An Authorized Claimant may be eligible to receive Credit Impact Damages if the Authorized Claimant submits a Claim: (a) attesting that an unauthorized credit card, line of credit, or small business deposit account was opened in their name without consent during the Class Period, or an unauthorized application for a credit card, line of credit, or small business deposit account which did not result in the extension of credit or opening of an account was submitted in their name without consent during the Class Period; and (b) identifying the approximate calendar year of the claimed unauthorized product opening or application; and/or (c) identifying the approximate calendar year that the Authorized Claimant opened a valid credit tradeline during the Class Period ("Credit Tradeline").  In calculating Credit Impact Damages, the Settlement Administrator shall account for only those claimed unauthorized product openings or applications that occurred during, or within one calendar year of, the calendar year identified by the Authorized Claimant in their Claim for Credit Impact Damages. For purposes of enabling the Settlement Administrator to calculate the amount of Credit Impact Damages payable to the Authorized Claimant, if any, the Authorized Claimant must provide consent to allow the Settlement Administrator to obtain the Authorized Claimant's credit information from consumer reporting agencies in a manner that will not affect the Authorized Claimant's credit score.  The calculation of Credit Impact Damages shall be determined by experts retained by Class Counsel in connection with the Settlement.  The experts retained by Class Counsel in connection with the Settlement will analyze: (1) the credit score impact of the unauthorized product opening or application determined by the "but-for" analysis conducted by a third-party vendor or consumer reporting agency; (2) the type of subsequent Credit Tradeline(s) (*e.g.*, mortgage, new or used auto loan, line of credit such as home improvement, or other); (3) the amount of the subsequent Credit Tradeline(s) in dollars; (4) the date of the opening of the subsequent Credit

Tradeline(s); and (5) a unique identifier for the Authorized Claimant that will be used for confirmation purposes.  As necessary in light of data constraints or limitations, the experts may adjust or modify the evaluation criteria in consultation with Class Counsel in connection with the Settlement. Information obtained from consumer reporting agencies may be used to verify information submitted by the Authorized Claimant and may also be used as part of the process of approximating increased borrowing costs.  Authorized Claimants who activated or used a credit card, line of credit, or small business deposit account claimed to be unauthorized are not eligible to receive Credit Impact Damages in connection with that product; however, they remain entitled to receive a Non-Compensatory Payment in connection with the product.  Consultant-Identified Persons are eligible to receive Credit Impact Damages in connection with a credit card, line of credit, or small business deposit account claimed to be unauthorized, regardless of whether the product was identified through the Consultant Analysis.  Credit Impact Damages related to accounts, products, or services claimed to be unauthorized and opened between January 1, 2009 and April 20, 2017, inclusive, shall be paid from Net Settlement Pool 1 ("2009-2017 Credit Impact Damages"). Credit Impact Damages related to accounts, products, or services claimed to be unauthorized and opened between January 1, 2002 and December 31, 2008, inclusive, shall be paid from Net Settlement Pool 2 ("2002-2008 Credit Impact Damages"). If either Net Settlement Pool 1 or Net Settlement Pool 2 is insufficient to pay Credit Impact Damages as calculated pursuant to the foregoing, Plaintiffs shall move the Court to approve an alternative method of calculation that is fair, adequate, and reasonable.

        9.7.1.2.  ***Fee Damages:***  Consultant-Identified Persons are not eligible to receive Fee Damages in connection with the account, product, or service identified through the Consultant Analysis, as any fees assessed by Wells Fargo in connection with such account, product, or service have been or will be reimbursed through a separate process.  Consultant-Identified Persons remain eligible to receive Fee Damages only in connection with any accounts, products, or services

claimed to be unauthorized which were not identified through the Consultant Analysis. Each Authorized Claimant claiming out-of-pocket losses as a result of fees assessed by Wells Fargo in connection with a credit card, line of credit, or deposit account claimed to be unauthorized which was opened between January 1, 2009 and April 20, 2017 and was not used or activated (other than accounts identified through the Consultant Analysis) will receive payment for fees paid in that account as determined by the Settlement Administrator or independent consultant ("2009-2017 Fee Damages Payment"). All 2009-2017 Fee Damages Payments shall be paid out of Net Settlement Pool 1. Each Authorized Claimant claiming out-of-pocket losses as a result of fees assessed by Wells Fargo in connection with a credit card, line of credit, or deposit account claimed to be unauthorized which was opened between May 1, 2002 and December 31, 2008 will receive for that account a payment equivalent to the average 2009-2017 Fee Damages Payment (calculated by dividing the total 2009-2017 Fee Damages Payments by the total number of Claimants claiming out of pocket fees for an account opened between January 1, 2009 and April 20, 2017) ("2002-2008 Fee Damages Payment"). All 2002-2008 Fee Damages Payments shall be paid out of Net Settlement Pool 2.

9.7.2. ***Non-Compensatory Damages Payments:*** After Compensatory Damages Payments are allocated to Authorized Claimants from Net Settlement Pool 1 and Net Settlement Pool 2, the balance of the Net Settlement Amount will be allocated as described in this paragraph on a *pro rata* basis defined by reference to the number of claimed unauthorized account(s), product(s), or service(s) opened, enrolled, or applied for or, for Automatically-Enrolled Claimants who do not separately submit a Claim, on the basis of one (1) account. Solely for purposes of Non-Compensatory Damages Payments, authorized enrollment in Identity Theft Protection Services by a Person who claims to have had one or more accounts, products, or services opened, enrolled, or applied for without consent shall be treated as if one (1) additional account were claimed to have been opened in the Person's name without consent.

9.7.2.1.      After 2009-2017 Credit Impact Damages and 2009-2017 Fee Damages are allocated from Net Settlement Pool 1, the balance of Net Settlement Pool 1 shall be allocated on a *pro rata* basis defined by reference to the total number of claimed unauthorized account(s), product(s), or service(s) opened, enrolled, or applied for from January 1, 2009 to April 20, 2017, inclusive ("2009-2017 Non-Compensatory Allocation").  The amount allocated from Net Settlement Pool 2 for a Non-Compensatory Damages Payment for each claimed unauthorized account, product, or service opened, enrolled, or applied for from May 1, 2002 to December 31, 2008 (after 2002-2008 Credit Impact Damages and 2002-2008 Fee Damages are allocated from Net Settlement Pool 2) shall be equal to 2009-2017 Non-Compensatory Allocation if there are sufficient funds to do so.  If funds still remain in Net Settlement Pool 2 after distribution is made pursuant to the preceding sentence, the balance of Net Settlement Pool 2 shall be allocated on a *pro rata* basis, by reference to the total number of claimed unauthorized accounts, products, or services opened during the Class Period.

9.7.2.2.      If there are not sufficient funds in Net Settlement Pool 2 to allocate the equivalent of the 2009-2017 Non-Compensatory Allocation on the same *pro rata* basis, then Net Settlement Pool 2 (after 2002-2008 Credit Impact Damages and 2002-2008 Fee Damages are allocated from Net Settlement Pool 2) shall be allocated on a *pro rata* basis, by reference to the total number of claimed unauthorized accounts, products, or services opened from May 1, 2002 to December 31, 2008. The Settlement Administrator retains the authority to deny claims determined to be fraudulent or to reduce the number of accounts supplying the basis for a Settlement Class Member's *pro rata* payment.

9.7.2.3.      If, after Compensatory Damages Payments are allocated to Authorized Claimants, the amount of remaining funds would make allocation of Non-Compensatory Damages Payments uneconomical in the judgment of the Settlement Administrator, the Parties shall apply to the Court for guidance on how to allocate the remaining funds.

9.8.    This is a common fund settlement; there will be no reversion of the Settlement Fund to Defendants upon the occurrence of the Effective Date irrespective of the number of Claims paid, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

9.9.    The Plan of Allocation described in this Paragraph 9 is a matter separate and apart from the proposed Settlement between Defendants and Named Plaintiffs, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Plan of Allocation proposed in this Paragraph 9 is not a necessary term of this Stipulation, and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court.  Any order relating solely to the allocation of the Net Settlement Fund among the Authorized Claimants, or any request for further judicial review from any order relating solely thereto or reversal or modification thereof, shall not operate to terminate the Settlement.

9.10.    Other than Automatically-Enrolled Claimants, any Settlement Class Member who does not timely submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund but will nevertheless be bound by all of the terms of the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim.

9.11.    All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by order of the Court.  Any Settlement Class Member, who is not an Automatically-Enrolled Claimant, and who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and the releases provided for herein, and will be

permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim. A Claim Form shall be deemed to be submitted when either (a) the Class Member completes and submits an online claim form, or (b) the Claim Form is posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.

9.12.   Class Counsel will apply to the Court, with reasonable advance notice to Defendants, for a Class Distribution Order: (i) approving the Settlement Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

9.13.   Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Settlement Class Members. All Settlement Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any and all Released Parties concerning any and all of the Settled Claims.

9.14.   All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

**10.   CONFIRMATORY DISCOVERY**

10.1.   The Parties agree that confidential information made available to them solely through the settlement process was made available on the condition that it not be disclosed to third parties (other

than experts or consultants retained by the Parties in connection with the Action). Nevertheless, nothing contained herein shall prohibit Class Counsel from seeking certain confidential information pertinent to this Settlement Agreement through informal confirmatory discovery, even if not previously requested through formal discovery.

**11.    MEASURES TAKEN BY WELLS FARGO**

11.1.    Wells Fargo has entered into agreements with the CFPB and the OCC in which it has agreed to implement measures for the benefit of its customers that are designed to prevent a recurrence of the conduct that gave rise to this lawsuit. These measures include, but are not limited to, the following:

11.1.1. As required by the CFPB Consent Order, Wells Fargo has retained an independent consultant with specialized experience in consumer-finance-compliance issues to conduct an independent review of Wells Fargo's sales practices, and in consultation with the independent consultant will develop a plan to correct any deficiencies identified through the independent consultant's review ("Compliance Plan").  This Compliance Plan will be submitted to the CFPB for a determination of non-objection or direction to make revisions.  Pursuant to the CFPB Consent Order, Wells Fargo will submit, on at least a semi-annual basis, a compliance progress report.

11.1.2. As required by the OCC Consent Order, Wells Fargo has retained an independent consultant to review Wells Fargo's enterprise-wide governance and risk management of sales practices and will address the findings as part of the comprehensive action plan to comply with the OCC Consent Order.  The OCC Consent Order also requires Wells Fargo to develop a sales practices risk management and oversight program, complaints management policy, and customer reimbursement plan, and to submit these written plan to the OCC for a determination of non-objection or direction to make revisions.

11.2.    Wells Fargo has also voluntarily expanded its commitment to implement such measures beyond the requirements in the agreements with the CFPB and the OCC.  These measures include, but are not limited to, the following:

11.2.1. Following the opening of a checking, savings, or credit card account, in most cases a retail consumer or business consumer will receive an email or, if no email is available, mailed a notification to the primary owner, that confirms the intended opening of the account.

11.2.2. Sending a customer a decision status letter after submission of an application for a new credit card.

11.2.3. When certain criteria are met, closing active-status retail consumer checking and savings accounts and non-analyzed small business checking and savings accounts with $0 balance and no customer-initiated activity in the last 62 days.

11.2.4. Ensuring all consumer and non-analyzed small business accounts have no monthly service fee assessed within the first 64 days of the account open date.

11.2.5. Establishing a dedicated 24/7 toll-free number for any customer with a sales practices concern.

11.2.6. Eliminating all product sales goals for retail banking team members, including those in branches and retail banking call centers, effective October 1, 2016, and replacing them, as of January 1, 2017, with a compensation plan that puts the priority on the customer experience, oversight and controls, and team goals versus personal goals.

11.2.7. Revising procedures for credit cards to require each applicant's documented consent before a credit report is pulled.  Consent is manifested by a physical signature or, if the applicant is unable to sign on the PIN pad, by a dual attestation of the banker and the manager or branch designee.

11.2.8. Attempting to contact all customers with open inactive credit cards to confirm whether the customer authorized the account, and closing accounts that were not authorized, and suppressing any unauthorized bureau inquiry.

11.2.9. Engaging external consultants to review sales practices across Wells Fargo.

11.2.10.        Expanding the "Raise Your Hand" initiative encouraging team members to speak up when they see something unethical, or if they have an idea to help reduce risk.

11.2.11.        Establishing a Sales Practices Oversight Office within Wells Fargo's corporate structure to strengthen enterprise oversight of sales conduct risk.

11.2.12.        Creating an enhanced branch compliance program that will be dedicated to monitoring for sales practice violations by conducting data analytics and frequent branch visits, the results of which will be reported to the Sales Practices Oversight Office.

## 12.    REQUESTS FOR EXCLUSION

12.1.    As permitted by Fed. R. Civ. P. 23(c)(2)(B)(v) and (e), members of the Settlement Class may exclude themselves ("opt out") from the Settlement, as provided in the Summary Notice, Long-Form Notice, Postcard Notice, or as otherwise approved by the Court.  To be effective, the opt out request must be mailed to the Settlement Administrator and must be received on or before the last day for mailing opt-out requests specified in the Summary Notice, Long-Form Notice, and Postcard Notice.

12.2.    Nothing in this Settlement Agreement (including the fact of Settlement) constitutes or shall be construed as a waiver by Wells Fargo of whatever rights it may have under any arbitration agreement, including with respect to any claim, lawsuit, or judicial proceeding initiated by a member of the Settlement Class who has opted-out of the Settlement.

12.3.    To be valid, an opt-out request must: (i) state the name and case number of the Action (*Jabbari, et al. v. Wells Fargo & Company, et al.*, 15-cv-02159-VC (N.D. Cal.)); (ii) include the Person's full name and current address; (iii) include a statement to the effect that the Person wishes to

exclude himself or herself from the Settlement Class; and (iv) be signed by the Person requesting to opt out.

12.4.    No request for exclusion will be valid unless the information described above is included. If a timely and valid request for exclusion is made by a member of the Settlement Class, then that Person shall not be a Settlement Class Member, and this Settlement and any judgments or orders concerning it shall not bind the excluded Person.  Opting out and objecting to the Settlement are mutually exclusive options.  Any Person who timely and properly opts out and is therefore not a Settlement Class Member may not also object to the Settlement.

12.5.    Each member of the Settlement Class who does not submit a valid request to opt out shall be a Settlement Class Member and shall be bound by all terms of this Settlement and all judgments or orders concerning it.

12.6.    The Settlement Administrator shall scan and send electronically copies of all requests for exclusion in .pdf format (or such other format as shall be agreed) to Class Counsel and to Defendants' Counsel expeditiously (and not more than three (3) business days) after the Settlement Administrator receives such a request.  A list of the names of Persons who have timely and properly opted out under this Paragraph 12 shall be attached to the Judgment or otherwise recorded by the Court and provided to Defendants' Counsel.

## 13.    SETTLEMENT ADMINISTRATOR'S REPORTING OBLIGATIONS

13.1.    Class Counsel shall instruct the Settlement Administrator to compile records of Claims made by Settlement Class Members and to file with the Court no later than fifteen days before the deadline for the Named Plaintiffs to file their motion for final approval an affidavit (i) attesting that the Notice Plan was performed in a manner strictly consistent with the terms of this Stipulation and the Preliminary Approval Order, or as otherwise required by the Court; (ii) providing a list of the members

of the Settlement Class who validly excluded themselves from the Settlement as set forth in Paragraph 12; and (iii) the aggregate payments to be made from the Settlement Fund to Authorized Claimants.

13.2.   Class Counsel shall also instruct the Settlement Administrator to maintain reasonably detailed records of its activities under this Settlement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendants' Counsel upon request.  Should the Court request, Class Counsel, in conjunction with the Settlement Administrator shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator.

13.3.   Without limiting the foregoing, the Settlement Administrator shall:

13.3.1. Treat any and all documents, communications and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications or other information to any person or entity except as provided for in this Settlement Agreement or by court order;

13.3.2. Receive and maintain all correspondence and communications from any member of the Settlement Class regarding the Settlement.

**14.   TERMINATION OF SETTLEMENT**

14.1.   Within thirty (30) days after the latest of:  (a) the Court's entry of an order expressly declining to enter the Preliminary Approval Order in any material respect without reasonable leave to amend; (b) the Court's refusal to approve this Stipulation or any material part of it without reasonable leave to amend; (c) the Court's declining to enter the Judgment in any material respect; or (d) the date upon which the Judgment is modified or reversed in any material respect and represents a Final decision on the matter, Wells Fargo and Named Plaintiffs each shall have the right to terminate the Settlement and this Stipulation, by providing written notice to the other of an election to do so.  However, any

decision with respect to an application for a Fee and Expense Award, or with respect to any plan of allocation, shall not be considered material to the Settlement and shall not be grounds for termination.

14.2.   Except as otherwise provided herein, in the event the Settlement is terminated, the Settlement termination shall be without prejudice, and none of the terms shall be effective or enforceable and the facts of the Settlement shall not be admissible for any purpose, and the Parties shall be deemed to have reverted to their respective status in this Action as of April 19, 2017, and, except as otherwise expressly provided, this Stipulation shall be null and void and shall have no further force or effect, the Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, and any portion of the Settlement consideration previously paid or caused to be paid by Wells Fargo, including, but not limited to, any funds disbursed in payment of attorneys' fees and expenses, together with any interest earned or appreciation thereon, and less Notice and Administration Costs incurred and paid or payable, shall be returned to Wells Fargo within ten (10) business days after written notification of such event by Class Counsel to the Escrow Agent, with a copy of such notice to Defendants' Counsel, pursuant to the terms of the Escrow Agreement.

## 15.   NO ADMISSION OF WRONGDOING

15.1.   Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Stipulation, including exhibits, all negotiations, discussions, drafts and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

15.1.1. shall not be offered or received against any of the Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Released Parties with respect to the truth of any fact alleged by Named Plaintiffs or the validity of any claim that was or could have been asserted against any of the Released Parties in this Action or in any litigation, in this or any other court, administrative agency, arbitration forum or other tribunal, or of any

liability, negligence, fault or other wrongdoing of any kind of any of the Released Parties to Named Plaintiffs, the Settlement Class or anyone else;

15.1.2. shall not be offered or received against any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Released Parties, or against the Released Parties, Named Plaintiffs or any Settlement Class Member(s) as evidence of any infirmity in the claims or defenses that have been or could have been asserted in the Action; and

15.1.3. shall not be offered or received against any of the Released Parties, or against the Named Plaintiffs or any other Settlement Class Member(s), as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason or purpose as against any of the Released Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, Wells Fargo or any other Released Party may file this Stipulation and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## 16.   MISCELLANEOUS PROVISIONS

16.1.   The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Stipulation and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to obtain approval of this Settlement and shall do nothing inconsistent therewith.  Class Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Settlement and entry of the Preliminary Approval Order, entry of Judgment, and

dismissal of the Action, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

16.2.    All of the following exhibits attached hereto are hereby incorporated by reference as though fully set forth herein: proposed Preliminary Approval Order (Ex. A), Postcard Notice (Ex. A-1 to Ex. A), Long-Form Notice (Ex. A-2 to Ex. A), Summary Notice (Ex. A-3 to Ex. A), Claim Form (Ex. A-4 to Ex. A), and proposed Judgment (Ex. B).

16.3.    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by the Named Plaintiffs and the Settlement Class, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Named Plaintiffs or Class Counsel or defended by Defendants or Defendants' Counsel in bad faith or without a reasonable basis.

16.4.    The Parties agree that the amount paid and the other terms of this Settlement were negotiated at arm's length and in good faith, including in connection with mediations conducted by professional mediators, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.  As all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one party than another.

16.5.    The Parties have relied upon the advice and representation of counsel selected by them, concerning their respective legal liability for the claims hereby released. The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

16.5.1. This Stipulation, including the exhibits to this Stipulation, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all signatories hereto or their successors-in-interest.  Any condition in this Stipulation may be waived by the party entitled to

enforce the condition in a writing signed by that party or its counsel.  The waiver by any party of any breach of this Stipulation by any other party shall not be deemed a waiver of the breach by any other party, or a waiver of any other prior or subsequent breach of this Stipulation by that party or any other party.  Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

16.5.2. Whether or not the Effective Date occurs or this Settlement is terminated, the Stipulation, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of, or an admission or concession of, the propriety of class certification for purposes of litigation.

16.6.    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

16.7.    Nothing in this Stipulation shall prevent Class benefits from being provided, upon appropriate proof, to, or for the benefit of, an otherwise eligible Settlement Class Member, or that Settlement Class Member's estate or legal representative, notwithstanding that Settlement Class Member's death, dissolution, or bankruptcy (whether discharged or ongoing), in accordance with applicable law.  The Settlement Administrator will determine the reasonable required documentation for non-standard Settlement Class Members, including, but not limited to, military personnel serving overseas, decedent estates, divorce, bankruptcy, and payment of child support and family or attorney liens.

16.8.    The administration and consummation of this Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of, *inter alia*, entering orders providing for the enforcement of the terms of this Stipulation, including, but not limited to, the releases provided for herein, and awards of attorneys' fees and expenses to Class Counsel.

16.9.    Named Plaintiffs and the Wells Fargo agree that, prior to final approval of the Settlement, the Hon. Layn R. Phillips (Ret.) will continue to serve as a mediator for any disputes between them arising out of the Settlement.  The Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

16.10.  This Stipulation and its exhibits constitute the entire agreement among the Parties concerning this Settlement, and no representations, warranties or inducements have been made by any Party concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.  This Stipulation and the Supplemental Agreement supersede any and all prior statements, representations, promises or other agreements, written or oral, with respect to the subject matter of this Stipulation.

16.11.  This Stipulation may be executed in one or more original, e-mailed and/or faxed counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

16.12.  This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

16.13.  Except as otherwise provided herein, each Party shall bear its own costs.

16.14.  Named Plaintiffs represent and warrant that they have not assigned, transferred, or otherwise disposed of any claim or right or interest therein as against the Released Parties to any other Person or Party and that they are fully entitled to release the same.

16.15.  Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

16.16.  The Parties agree to cooperate in good faith to ensure that any descriptions of this Settlement in the media or in any public forum are fair and accurate. None of the Parties will make any press communications announcing the settlement of the Action without consultation with the others.

16.17.  If any party is required to give notice to the other parties under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt by hand delivery, facsimile transmission or electronic mail.  Notice shall be provided to the counsel indicated on the signature block below.

IN WITNESS WHEREOF, the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys as of April 20, 2017.

| KELLER ROHRBACK L.L.P. | MUNGER, TOLLES & OLSON LLP |
|---|---|
| By  */s/ Derek W. Loeser*<br>Derek Loeser, *admitted pro hac vice*<br>Gretchen Freeman Cappio, *admitted pro hac vice*<br>Daniel P. Mensher, *admitted pro hac vice*<br>KELLER ROHRBACK L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101-3052<br>(206) 623-1900; Fax: (206) 623-3384<br>dloeser@kellerrohrback.com<br>gcappio@kellerrohrback.com<br>dmensher@kellerrohrback.com | By */s/ David H. Fry (w/email permission)*<br>David H. Fry (Bar No. 189276)<br>MUNGER, TOLLES & OLSON LLP<br>560 Mission Street, 27th Floor<br>San Francisco, California 94105-2907<br>(415) 512-4000; Fax: (415) 512-4077<br>david.fry@mto.com |
| Jeffrey Lewis (Bar No. 66587)<br>KELLER ROHRBACK L.L.P.<br>300 Lakeside Drive, Suite 1000<br>Oakland, CA 94612<br>(510) 463-3900; Fax: (510) 463-3901<br>jlewis@kellerrohrback.com<br><br>Matthew J. Preusch (Bar No. 298144)<br>1129 State Street, Suite 8<br>Santa Barbara, CA 93101<br>(805) 456-1496; Fax: (805) 456-1497<br>mpreusch@kellerrohrback.com<br><br>***Attorneys for Plaintiffs*** | Erin J. Cox (State Bar No. 267954)<br>MUNGER, TOLLES & OLSON LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, California 90071-1560<br>(213) 683-9100; Fax: (213) 687-3702<br>erin.cox@mto.com<br><br>***Attorneys for Defendants Wells Fargo &<br>Co. and Wells Fargo Bank, N.A.*** |