1  William M. Audet (SBN 117456)
   S. Clinton Woods (SBN 246054)
2  Ling Y. Kuang (SBN 296873)
   waudet@audetlaw.com
3  cwoods@audetlaw.com
   lkuang@audetlaw.com
4  AUDET & PARTNERS, LLP
   711 Van Ness Avenue, Suite 500
5  San Francisco, CA 94102-3275
   Telephone:      (415) 568-2555
6  Facsimile:      (415) 568-2556

7  *Counsel for Movants Alex Chernavsky and William Castro, on behalf of*
   *themselves and all others similarly situated*

8

9                 UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  SHAHRIAR JABBARI and KAYLEE              Case No: 3:15-cv-02159-VC
    HEFFELFINGER, on behalf of themselves
13  and all others similarly situated,      **ALEX CHERNAVSKY AND WILLIAM**
                                            **CASTRO'S RESPONSE IN OPPOSITION**
14                                          **TO PLAINTIFFS' MOTION FOR**
                      Plaintiffs,           **PRELIMINARY APPROVAL OF CLASS**
15                                          **ACTION SETTLEMENT AND FOR**
           v.                               **CERTIFICATION OF A SETTLEMENT**
16                                          **CLASS; AND RENEWED MOTION TO**
                                            **INTERVENE ON BEHALF OF PRIVACY**
17  WELLS FARGO & COMPANY and               **CLASS**
    WELLS FARGO, N.A.,
18                                          **Date:**     May 18, 2017
                      Defendants.           **Time:**     10:00 a.m.
19                                          **Place:**    Courtroom 4 – 17th Floor
                                            **Judge:**    Hon. Vince Chhabria
20

21

22

23

24

25

26

27

28

*Chernavsky* Plaintiffs Response to Plaintiffs' Motion for Preliminary Approval of Settlement

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

RELEVANT FACTS ..................................................................................................... 2

LEGAL STANDARD.................................................................................................... 4

DISCUSSION ................................................................................................................ 6

I.  The Settlement Presented to This Court Falls Below the Ninth Circuit Standard for
Preliminary Approval ........................................................................................... 6

  A.  Notice and Procedural Issues ...................................................................... 6

  B.  Overbroad Release ....................................................................................... 8

  C.  Settlement Amount and Distribution ........................................................... 9

  D.  Conflicts of Interest................................................................................... 11

    i.   The settlement's inclusion of privacy and other subclasses, without separate
counsel with separate interests, created a conflict. ...................................... 11

II.  Despite Repeated Requests by *Chernavsky* Counsel, Plaintiffs Failed to Provide Basic
Information Regarding the Settlement and Other Critical Details; and Now Preliminary
Approval Must be Postponed ............................................................................... 13

III. *Chernavsky* Plaintiffs Renew Their Motion to Intervene On Behalf of the Privacy Class...... 13

  A.  Chernavsky Plaintiffs Have the Right to Intervene under Fed. R. Civ. P. Rule 24(a)(2) . 13

  B.  This Motion is Timely ................................................................................ 15

  C.  *Cheranvsky* Plaintiffs Have an Interest in These Proceedings........................ 15

  D.  The Interests of *Chernavsky* Plaintiffs and Members of the Proposed Class Are Not
Adequately Represented At This Point....................................................... 16

  E.  Alternatively, Permissive Intervention Should be Granted  Under Rule 24(b) ............... 16

IV. At Minimum, the Court Should Withhold Preliminary Approval Until the Core Problems
With The Proposed Settlement Are Corrected By the Parties................................. 17

CONCLUSION............................................................................................................. 18

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

**T**ABLE OF **A**UTHORITIES

**Cases**                                                                                                              **Page (s)**

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)........................................................ 5

*Development Fin. Corp. v. Alpha Hous. & Health Care*, 54 F.3d 156 (3d Cir. 1995)...................... 15

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) .................................................................. 14, 15

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. And Markets*,

    847 F.2d 1038 (2d Cir. 1988)........................................................................................................ 14

*Fraser v. ASUS Computer Int'l*, 2012 U.S. Dist. LEXIS 181315 (N.D. Cal. 2012) ......................... 11

*Green v. United States*, 996, F.2d 973 (9th Cir. 1993) ...................................................................... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................. 4, 5

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ............................................................................ 9

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)...................... 4

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2nd Cir. 2011).......... 11, 12

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)..................................................... 5, 9

*In re Tableware*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................. 11

*Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. 2007)........................... 7, 8, 9, 10

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995)...................................................................... 1

*Lane v. Facebook, Inc.*, 696 F.3d 811, 2012 U.S.App. LEXIS 19767 (9th Cir. 2012) ....................... 5

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*,

    834 F.2d 677 (7th Cir. 1987) ........................................................................................................ 4

*Meek v. Metro. Dade County*, 985 F.2d 1471 (11th Cir. 1993) ........................................................ 15

*N.Y. Reg'l Interconnect, Inc. v. Pataki*,

    2007 U.S. Dist. LEXIS 36039 (N.D.N.Y. May 15, 2007) ........................................................... 15

*NAACP v. New York*, 413 U.S. 345 (1973)........................................................................................ 15

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009).............................................................. 1

*Sierra Club v. Robertson*, 960 F.2d 83 (8th Cir. 1992) ..................................................................... 14

*Staton v. Boeing Co.*, 327 F3d 938 (9th Cir. 2003) ........................................................................... 10

*Tatum v. Cardillo*, 11 F.R.D. 585 (S.D.N.Y. 1951)........................................................................... 14

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................................... 5

*Trobovich v. United Mine Workers*, 404 U.S. 528 (1972) ..................................................... 16

*United States v. Alcan Aluminum*, 25 F.3d 1174 (3d Cir. 1994) .......................................... 15

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ................................... 14

*United States v. City of New York*, 198 F.3d 360 (2d Cir. 1999) ........................................ 14

*United States v. Yonkers Bd. of Educ.*, 801 F.2d 593 (2d Cir. 1986) ................................... 15

*Wash. Elec. Coop., Inc. v. Mass. Municipal Wholesale Elec. Co.*, 922 F.2d 92 (2d Cir. 1990) ......... 15

*Willner v. Manpower, Inc.*, 2014 U.S. Dist. LEXIS 123450 (N.D. Cal. Sept. 3, 2014) ...................... 9

**Statutes**

18 U.S.C. § 2727 ..................................................................................................... 11

Cal. Civil Code § 1542 ......................................................................................... 8, 9

**Rules**

Fed. R. Civ. P. 24 ................................................................................ 13, 14, 15, 16

**Treatises**

4 Herbert Newberg et al., NEWBERG ON CLASS ACTIONS at 316 (5th ed. 2014) ................................. 5

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.03 (2010) ...................... 5

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* 25 (3d ed. 2010) ................................................................................................. 5

*Manual for Complex Litig.* § 21.612 (4th ed. 2004) .......................................................... 5

A&P AUDET & PARTNERS LLP

### INTRODUCTION

*Jabbari* Plaintiffs' and Wells Fargo's ("Settlement Parties") pursuit of a settlement, while understandable on some level, has unfortunately resulted in a proposed settlement fraught with procedural and substantive problems and tainted by potential conflicts of interest. Unfortunately, the current Motion for Preliminary Approval urges this Court to rubber stamp a settlement that falls well below the basic standards as set forth by Ninth Circuit over the years. *See*, *e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009). Furthermore, Settlement Parties have not presented sufficient factual or legal support for the notion that the many errors in the settlement should be 'overlooked' and are 'minor' in character.    Plaintiffs Alex Chernavsky and William Castro ("*Chernavsky* Plaintiffs") urge the court to deny the motion for preliminary approval and order the parties, with appropriate and informed subclass counsel, back to the negotiating table.

*Chernavsky* Plaintiffs have for months repeatedly requested that the Settlement Parties provide them with basic information as to the nature of the settlement, the negotiations, and documents used in drafting the settlement. Settlement Parties refused to do so, substantively ignoring *Chernavsky* Plaintiffs' repeated requests. After the March 30, 2017 MDL hearing wherein counsel for *Jabbari* Plaintiffs appeared to consent to intervention by other parties, *Chernavsky* Plaintiffs attempted to once again informally discover basic information about the proposed settlement. *Chernavsky* Plaintiffs were told, essentially, wait until the Motion for Preliminary Approval is filed. Once the instant Motion was filed, *Chernavsky* Plaintiffs sent a lengthy letter to *Jabbari* Parties identifying several concerns with the settlement and requesting information. *Jabbari* Parties gave no substantive response.

Despite these and other issues of great significance, the *Jabbari* parties *refused* to provide clarification and answer to *Chernavsky* Plaintiffs after multiple requests were made. As the Ninth Circuit has repeatedly counseled over the last 20 years, "[t]he responsibility of class counsel to absent class members whose control over their attorneys is limited *does not permit even the appearance* of divided loyalties of counsel." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)) (emphasis added).

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

1   The settlement should not be preliminarily approved and instead continued until *Chernavsky*

2   Plaintiffs and others have had sufficient time and access to relevant documents to evaluate the

3   settlement's fairness, reasonableness, and adequacy.

4   **RELEVANT FACTS**

5   The *Jabbari* Complaint was filed on May 13, 2015, broadly alleging class claims

6   stemming from Wells Fargo's practice of opening unauthorized accounts for its retail customers.

7   (*Jabbari* Dkt. No. 1.) The putative class definition in *Jabbari* did not differentiate between those

8   customers who had internal accounts opened without authorization (*e.g.* checking, savings, etc.),

9   and those who had external accounts opened without authorization (*e.g.* credit card accounts.)

10  (*Id*.) Wells Fargo moved to compel arbitration. (*Jabbari* Dkt. No. 29.) The Court eventually

11  granted that motion on September 23, 2015. (*Jabbari* Dkt. No. 69.) The *Jabbari* Plaintiffs

12  appealed. (*Jabbari* Dkt. No. 70.) On September 13, 2016, the *Jabbari* Plaintiffs and Wells Fargo

13  stipulated to dismiss the appeal due to an apparent settlement before the Circuit Mediator.

14  (*Jabbari* Dkt. No. 72.)

15  On November 2, 2016, *Chernavsky* Plaintiffs filed their complaint and an administrative

16  motion to relate its case with the *Jabbari* matter, which was granted by the Court on November 9,

17  2016. (*Chernavsky* Dkt. 1; *Jabbari* Dkt. Nos. 76, 79.) On November 14, 2016, the *Chernavsky*

18  Plaintiffs amended their complaint, specifically alleging a Privacy Subclass defined as members

19  of the putative class who had external accounts opened without authorization, and including

20  certain causes of action which did not appear in the *Jabbari* Complaint. (*Chernavsky* Dkt. No. 11.)

21  On November 15, 2016, a case management conference was held where the Court set a

22  deadline of December 9, 2016 for *Jabbari* Plaintiffs to file their motion for preliminary approval

23  of the settlement. (*Jabbari* Dkt. No. 81.) On December 8, 2016, one day before the deadline to file

24  the motion for preliminary approval, *Jabbari* Plaintiffs and Wells Fargo stipulated to extend the

25  deadline for filing the motion for preliminary approval to December 30, 2016. (*Jabbari* Dkt. Nos.

26  83, 84, 85.) On December 28, 2016, two days before the deadline to file the motion for

27  preliminary approval, *Jabbari* Plaintiffs and Wells Fargo once again filed a stipulation to extend

28  the deadline to file the motion for preliminary approval to January 30, 2017. (*Jabbari* Dkt. Nos.

A&P | AUDET & PARTNERS LLP

2

Case No: 3:15-cv-02159-VC

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

86, 88.)  On January 10, 2017, a second case management conference was held where the *Jabbari* Plaintiffs represented that they intended to file a motion for preliminary approval by the new January 30, 2017 deadline. (Woods Decl. at ¶ 4.) No motion for preliminary approval was filed by that deadline. On February 14, 2017, a third case management conference was held where the *Jabbari* Parties indicated that they were still working towards a settlement. (*Jabbari* Dkt. No. 94.) On March 28, 2017, the *Jabbari* Parties filed a notice of settlement containing no terms other than the overall amount of the settlement and that it would dispose of all claims, presumably including the Privacy Class Claims. (*Jabbari* Dkt. No. 96.)

On December 28, 2016, parties in another case venued in the District of Utah filed a motion to consolidate all pending cases relating to the Wells Fargo account-opening fraud with the Judicial Panel for Multidistrict Litigation. (MDL No. 2766, Dkt. No. 1.) On March 28, 2017, two days before the panel hearing, Wells Fargo filed a notice of Settlement with the JPML, indicating that they had come to a settlement and again giving no material terms. (MDL No. 2766, Dkt. No. 51.) At the hearing before the MDL Panel, counsel for *Jabbari* Plaintiffs argued against transfer and consolidation on the grounds that they had reach a settlement in principle, though the form of the settlement agreement had not been reached. (Woods Decl. at Exh. 1, MDL Trans. at 15:16-18:20.). Counsel declined to give many specifics regarding the settlement, but when asked by the Panel whether they would consent to intervention in the *Jabbari* matter, Counsel for *Jabbari* indicated that they would consent. (*Id.*)

At all relevant times herein, Counsel for *Chernavsky* Plaintiffs have sent repeated letters, emails, and communications to both Wells Fargo and the *Jabbari* Plaintiffs requesting information regarding settlement and advocating for separate counsel to represent the Privacy Class. (Woods Decl. at ¶¶ 5-7, Exhs. 2-7.) Counsel for both Wells Fargo and the *Jabbari* Plaintiffs have unilaterally refused to allow counsel for the *Chernavsky* Plaintiffs to participate in those discussions on behalf of the Privacy Class. (*Id.*) Immediately after the JPML hearing, counsel for *Chernavsky* Plaintiffs attempted to informally inquire about the settlement's terms and receive a copy of any documents or discovery which was shared between Wells Fargo and the *Jabbari*

Plaintiffs. (Woods Decl. at Exh. 2.) Counsel for the *Jabbari* Plaintiffs refused. (Woods Decl. at Exhs. 3, 4.)

Settlement Parties filed the instant motion for preliminary approval on April 20, 2017. (*Jabbari* Dkt. No. 100.) The Settlement extended the class period back to 2002 (thereby adding several hundred thousand class members) and increased the recovery amount from the previously-reported $110 million figure to $142 million. (*See, generally*, *Jabbari* Dkt. No. 100.) Additionally, the Settlement creates two separate classes of recovery, Net Settlement Pool 1 and Net Settlement Pool 2, as defined in Paragraphs 2.31 and 2.32 of the Settlement. These classes receive a different allocation of the settlement fund, per the Plan of Allocation. (Settlement at ¶ 9, *et seq.*) Despite this, the same firm seeks to represent both subclasses. Furthermore, the Settlement's Notice Plan suggests that Class Members will have between 20-60 days *at most* to make a determination to opt-out or object, and they must do so without any substantive information from either of the Settlement Parties as to the strength of their individual claims. (Settlement at p. 11; Settlement at ¶¶ 2.11-2.22.)

After the Settlement Parties filed the instant motion, *Chernavsky* Planitiffs once again reached out to *Jabbari* Plaintiffs to ask for documents and information about the Settlement, and request clarification on a number of points raised in the Settlement. (Woods Decl. at Exh. 5.) Once again, *Jabbari* Plaintiffs refused to answer substantively. (Woods Decl. at Exhs. 6, 7.)

## LEGAL STANDARD

Courts demand a higher standard of fairness when, as here, settlement takes place prior to formal class certification. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Accordingly, such agreements must withstand an elevated level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *Hanlon*, 150 F.3d at 1026; *accord In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified"); *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) (Posner, J.) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is

AUDET & PARTNERS, LLP
A&P

required."); *see also Manual for Complex Litig.* § 21.612 (4th ed. 2004). The district court's approval order must show not only that "it has explored [the *Churchill*, *infra*] factors comprehensively," but also that the settlement is "not[ ] the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). The level of scrutiny required will "vary depending on the circumstances that gave rise to the proposed settlement." 4 Herbert Newberg et al., NEWBERG ON CLASS ACTIONS at 316 (5th ed. 2014).

Aligning the interests of judicial efficacy with an even closer examination of preliminary approval, the Federal Judicial Center encourages judges to "[b]ring an inquiring mind to the preliminary review" in determining whether a "settlement is fair, reasonable, and adequate." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* 25 (3d ed. 2010); *see also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.03 cmt. a (2010) (favoring an active judicial role early in the proposed settlement process). More importantly, and as is true here, a heightened level of scrutiny protects a "class [that] typically lacks the motivation, knowledge, and resources to protect its own interests" against the "settling counsel for both plaintiff and defendant [who] have ***little or no incentive to offer information adverse to the settlement***." Federal Judicial Center, *supra* at 12 (emphasis added).

Courts considers several factors when determining whether a proposed settlement is "fair, adequate and reasonable" under Rule 23(e). Such factors may include: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 2012 U.S.App. LEXIS 19767, at *10 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). "This list is not exhaustive, and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A&P — AUDET & PARTNERS LLP

**DISCUSSION**

**I.  The Settlement Presented to This Court Falls Below the Ninth Circuit**

**Standard for Preliminary Approval**

   **A.  Notice and Procedural Issues**

Despite the fact that Defendant undoubtedly possesses most if not all information necessary to identify all members of the Settlement Class who may have valid claims, the Settlement requires people who may be affected to 1) receive notice, 2) fill out a claim form, 3) mail it in within 20-60 days (depending on when they receive the "rolling" notice), and 4) await determination by the Settlement Administrator. (See Dkt. 100-2 ("Claim Form"), generally; and Dkt. 100-1 ("Proposed Order") at 11.) This places an extra and unnecessary burden upon unnamed class members to respond in order to recover what is rightfully theirs. Furthermore, class members expected to recall information from as far back as 2002, as required by the claim process, despite the fact that the class has no discovery information to assist with their recollection and at most are provided account numbers to choose from if they are a "Consultant-Identified Person" as defined in the settlement. (See Settlement at ¶ 8.1.) For those members of the class who are not "Consultant-Identified" they must recall account information on their own. In addition, despite the extended time period of the release, the Settlement limits the "Consultant-Identified" information gathering period to little more than 7 years (Settlement at ¶ 1.18). These issues add up to significant additional burdens on unnamed class members, and will provide unnecessary barriers to recovery.

Assuming the unnamed class members receive the settlement notice and review the materials, the Settlement presents several untenable obstacles and unnecessary choices for unnamed class members. First, the information gathered by the Consultant to determine potential victims of Wells Fargo's illegal behavior (Settlement at ¶¶ 2.11-2.22), is not disclosed to potential class members in order to assist them in determining if they have a viable claim before the class member has to decide whether to object or opt-out. In other words, a potential class member knows only that they are a *potential* class member prior to making a determination as to whether or not they should object or opt-out. The claimant may be a member of the class or they may not be, but due process

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

1 and simple fairness demand that the claimant be told which category they belong to prior to

2 submitting to the jurisdiction of the court and waiving unknown and (potentially) unlimited claims.

3        This situation is exacerbated by the fact that the Settlement invests the Settlement

4 Administrator with "final" approval of whether or not a class member has a valid claim, and that

5 determination "shall not be subject to any review or appeal." (Settlement at ¶ 9.5.)  From there, the

6 Court is directed to enter judgment on that potential claim based solely on the Settlement

7 Administrator's lone determination. (Settlement at ¶ 9.12.) While Class Counsel is directed to

8 "supervis[e]" the Settlement Administrator in this process, the Settlement does require Class

9 Counsel to advocate for claimants in any way.

10        Thus, a person with a very real claim against Wells Fargo could 1) make a timely claim

11 through the notice process, 2) have that claim denied by the Settlement Administrator, 3) have no

12 right to appeal that denial, and 4) subsequently have judgment entered against him, her, or it, and

13 release all known and unknown claims. This cannot comport with due process.

14        Moreover, the 20-60 day deadline to object or opt out of the settlement class is illusory and

15 far too short given the facts as described *supra*, and it is conceivable that the deadline could expire

16 prior to notification. As this District previously held in *Kakani v. Oracle Corp.*, 2007 U.S. Dist.

17 LEXIS 47515 *15 (N.D. Cal. 2007), "[w]ithout doubt, the main losers under this proposal would be

18 those absent class members who wind up not submitting a timely claims and/or who never receive a

19 notice letter in the first place. All of their rights to [prosecute their claims] individually (or through

20 representative actions in other states) would be erased totally." This proposed settlement cannot

21 represent a fair, reasonable and adequate settlement.

22        Additionally, there is a Court seal on the claim form, which may have the effect of scaring

23 off potential claimants who are unfamiliar with legal documents. Additionally, an Automatically-

24 Enrolled Claimant still must submit a claim form in specific situations (Settlement at ¶ 2.3), which

25 is unnecessary especially when multiple fraudulent accounts, products, or services may have been

26 created or opened for a single claimant. Furthermore, the settlement website does not provide

27 information on objections or a link to see currently filed objections, which would assist potential

28 claimants in determining whether or not to make a claim.  Finally, any settlement website should

AUDET & PARTNERS
LLP
A&P

1   link to or otherwise provide access to an objection website and note as much in the short form

2   notice.

3       **B.  Overbroad Release**

4           *Chernavsky* Plaintiffs allege some of the same claims as alleged by *Jabbari* Plaintiffs on

5   behalf of the same putative class of massage therapists, but also alleges *additional* claims not

6   alleged by Plaintiff in this action. Moreover, the *Chernavsky* additional claims have significant

7   value, as demonstrated *infra*. However, instead of limiting the settlement release to just "any and all

8   claims asserted in the *Jabbari* action," the *Jabbari* Plaintiffs and Defendants have drafted a release

9   so vague and overbroad, that it could only be interpreted to extinguish all of the claims brought on

10  behalf of class members in not only the *Chernavsky* matter, but other related actions as well.

11  Notwithstanding this fact, the proposed release would also release any and all claims of consumers

12  whether or not they receive actual notice and whether or not they submit claims, a characteristic

13  previously disfavored by this District. *Kakani*, 2007 U.S. Dist. LEXIS 47515 *9. Furthermore, the

14  proposed settlement release also includes a classwide waiver of California Civil Code § 1542 of all

15  settled claims, which is not adequately disclosed in any class notice sought to be approved. (*See*

16  Dkt. No. 100-3 at p. 15.)

17          The release included in the Settlement includes all known and unknown claims from

18  unnamed class members, including those that have not been pled in the complaint. (See Settlement

19  at 2.47, 2.48, 2.55.) Indeed, the Settlement explicitly encompasses claims which are "known and

20  Unknown,… that were asserted, could have been asserted, or arise out of the same transactions or

21  series of transactions or occurrences as the claims that were asserted…" (Settlement at ¶ 2.47.)

22  Furthermore, "Unknown Claims" is defined as any claims in addition to the Released Claims

23  "which if known by him, her or it **might have affected** his, her or its settlement with and release of

24  the Released Parties…" (Settlement at ¶ 2.55.) (emphasis added.) That section goes on to expressly

25  waive the provisions of Cal. Civ. Code § 1542 and any other similar law in any other jurisdiction.

26  (*Id*.)

27          Simply put: there is no practical limitation to a release which waives all unknown claims

28  which, if known, "might have affected" the decision to settle the case, because literally any claim

A&P | AUDET & PARTNERS LLP

1    "might have affected" that decision whether that claim was related to the underlying litigation or

2    not. Broad language with the identical effect has been expressly disapproved of in the Ninth Circuit

3    and the Northern District. *See*, *e.g. Hesse v. Sprint Corp.*, 598 F.3d 581, 590-92 (9th Cir. 2010)

4    (disapproving of a release which waived claims unrelated to the underlying litigation); and *Willner*

5    *v. Manpower, Inc.*, 2014 U.S. Dist. LEXIS 123450 *22 (N.D. Cal. Sept. 3, 2014) (denying

6    preliminary approval when the release included claims "related in any way" and thus likely to

7    release claims beyond the scope of the allegations in the operative complaint.) As Courts in this

8    District have previously recognized and held in review of other proposed class action settlements,

9    (that unlike here *did not contain* Cal. Civil Code § 1542 class action waivers):

10          "What "could have been asserted" is a question of interpretation. In settlement
            practice, however, the "could have been" language is used to obtain the broadest
11          release possible. In its broadest reach, [Defendant's] gloss is plausible, i.e., all
            further state laws would be extinguished as they "could have been" asserted by way
12          of amendment."

13   *Kakani*, 2007 U.S. Dist. LEXIS 47515 *10. The parties should clarify and limit the release to

14   comport with controlling law in this circuit.

15                    **C.  Settlement Amount and Distribution**

16          To evaluate its adequacy, several questions exist with how the amount was arrived upon and

17   how the fund is distributed. To assess whether the amount offered is fair, the courts compare the

18   settlement amount to the parties' estimates of the maximum amount of damages recoverable in a

19   successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. As courts in this district

20   have previously held, such a comparison should be done at the preliminary approval stage:

21          "[W]e must compare that amount against the possible recoveries at trial. No
            evidence whatsoever was submitted with the motion to explain the extent of possible
22          recoveries. The Court then requested a copy of the plaintiffs' expert damages report.
            What was submitted was not a sworn expert report but unsworn spreadsheets
23          prepared by counsel. … In essence, the reason given for this steep discount is that
            counsel feel it is "imminently reasonable…" Perhaps this is so. Perhaps not. While
24          this Court would defer to the judgment of counsel in balancing the risks versus
            rewards of litigation, more must be explained than so far has been to justify the steep
25          discount. This is curable but the record must support the steep discount. In doing so,
            what matters are the challenges and likelihoods of success on the merits of the
26          substantive statutes at issue, not the odds that a class would be certified."

27   *Kakani*, 2007 U.S. Dist. LEXIS 47515 *19-20.

28

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

1    First, the settlement appears to provide Wells Fargo with credit for already required

2 obligations because of its fraudulent account-opening activity. *Chernavsky* Plaintiffs requested

3 clarification as to whether any of the payments already due to the various federal, state or city

4 entities reduce, by any amount, the overall settlement for the class in this case, and received no

5 substantive response. The Settlement Parties should provide such a response.

6    *Chernavsky* Plaintiffs also requested that the Settlement Parties define exactly what a

7 "product or service" is, as described in the Settlement at ¶ 2.51. The Settlement Parties declined to

8 do so. The resultant ambiguity again makes it difficult to evaluate or anticipate exactly which

9 claims are being released and which are not. *Chernavsky* Parties similarly asked the Settlement

10 Parties to define or at least estimate the class size in order to evaluate the settlement. The Settlement

11 Parties declined to do so. *Chernavsky* Parties requested the Settlement Parties provide additional

12 justification for the *pro-rata* distribution of settlement funds as sufficient in order to evaluate the

13 settlement. The Settlement Parties declined to do so. *Chernavsky* Parties furthermore requested the

14 Settlement Parties provide legal basis for the statement in Paragraph 9.9 that the Plan of Allocation

15 is "a matter separate and apart from the proposed Settlement" and "not a necessary term of the

16 proposed Settlement. The Settlement Parties declined to do so. Chernavsky Parties requested the

17 Settlement Parties explain the basis for the allocation between Net Settlement Pool 1 and Net

18 Settlement Pool 2, as defined in Paragraphs 2.31 and 2.32 of the Settlement. The Settlement Parties

19 Declined to do so.

20    While class action settlements need not treat all class members equally, the burden is on the

21 proponent of the settlement to justify any disparate treatment. *Kakani*, 2007 U.S. Dist. LEXIS

22 47515 *17-18 ("As to those who do submit claims, the record does not justify the disparity non-

23 California workers would have to accept on their claims.") Courts are vigilant to guard against

24 collusion (e.g., where lead plaintiff gets larger share than other class members). *Id.*; *Staton v.

25 Boeing Co.*, 327 F3d 938, 976- 977 (9th Cir. 2003). Here, the net settlement fund is divided

26 unequally among class members given the disparate claims and without sufficient justification or

27 explanation offered by the *Jabbari* parties. As recognized by the *Chernavsky* Plaintiffs and further

28 discussed below (*see* Conflicts section *infra*), class members face the prospect of a one-size fits all

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

1   recovery (via *pro-rata*) and the *Jabbari* parties have not adequately supported such a distribution.

2   This unjustified, unequal treatment of class members also fails to support preliminary approval of

3   the settlement. See, *Kakani* 2007 U.S. Dist. LEXIS 47515 *17-18.

4           It is also unclear why and how the Settlement Parties arrived at an additional $42 million in

5   compensation for the class in exchange for extending the settlement period backwards to 2002.

6   Given the dearth of information available to evaluate the nature of the settlement, and the

7   unsuccessful and diligent efforts undertaken to obtain that information, *Chernavsky* Parties urge the

8   Court to postpone preliminary approval, order the Settlement Parties to provide the requested

9   information so that the settlement may be properly evaluated.

10          **D.  Conflicts of Interest**

11              i.   *The settlement's inclusion of privacy and other subclasses, without separate*

12                   *counsel with separate interests, created a conflict.*

13          Preliminary approval requires that settlements be the product of serious, informed, non-

14  collusive negotiations without obvious deficiencies. *In re Tableware*, 484 F. Supp. 2d 1078, 1079

15  (N.D. Cal. 2007) (citations omitted). Even the presence of mediation is non-dispositive towards the

16  adequacy of settlement negotiations. *See Fraser v. ASUS Computer Int'l*, 2012 U.S. Dist. LEXIS

17  181315 (N.D. Cal. 2012) (denying preliminary approval despite a several-months long mediation

18  process preceding the proposed settlement). The apparent creation of 'new' subclasses by the broad

19  extension of the period release, coupled with the inclusion of class members with separate and

20  distinct claims (privacy subclass), highlights the need for heightened scrutiny. *See In re Literary*

21  *Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2nd Cir. 2011) (holding the court

22  may examine the settlement's substance for evidence of prejudice to the interests of a subset of

23  plaintiffs).

24          Here, as has been presented in previous papers before the court, *Chernavsky* Plaintiffs seek

25  to represent a Privacy Subclass. There exists a clear factual and legal difference between those class

26  members who had unauthorized internal accounts opened by Wells Fargo (i.e. checking, savings,

27  etc.) ("Account Class"), and those class members who had unauthorized external accounts opened

28  by Wells Fargo (credit cards) ("Privacy Subclass"). Unlike the Account Class, in order to open

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

those credit cards, Wells Fargo necessarily had to transmit customers' private data to those third party credit card processors, in violation of several statutory privacy laws. *See*, *e.g.*, 18 U.S.C. § 2727 (Stored Communications Act, or "SCA"). Those statutory privacy laws include, but are not necessarily limited to, the SCA, which provides for a floor of $1000 per violation plus disgorgement of profits and any actual damages a plaintiff may have. *See* 18 U.S.C. § 2727(c). These members of the Privacy Subclass therefore have factual and legal claims separate and distinct from the members of the Account Class, with a potential value that *exceeds* those of other class members. Nevertheless, the Settlement treats all accounts equally. Furthermore, *Chernavsky* Plaintiffs repeatedly inquired to the Settlement Parties as to whether and how Privacy Subclass claims were accounted for, calculated, or valued. The Settlement Parties refused to respond substantively and the silence is telling. *Chernavsky* Plaintiffs repeatedly requested that they be allowed to participate in settlement discussions regarding these specific claims with elevated value. The Settlement Parties refused.

Again, given the refusal to share information held by the Settlement Parties, it is impossible to say whether the claims of the Privacy Subclass are properly valued or even valued at all. However, there is no question that the different factual and legal circumstances relevant to the Privacy Subclass warrant much closer scrutiny. As one Circuit court put it simply: "How can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case?" *In re Literary Works*, 654 F.3d. at 253. The Court should protect the interest of all class members and deny preliminary approval without prejudice, and appoint separate counsel as subclass counsel for not only the Privacy Subclass, but also the subclass created by the larger release period.

The time period was unjustifiably broadened by the revise settlement. Potential conflicts between subclasses also exist for the subclasses created by the Settlement's division between Net Settlement Pool 1 and Net Settlement Pool 2, as defined in Paragraphs 2.31 and 2.32 of the Settlement. These are separate and distinct subclasses as created by the Settlement and should be afforded separate subclass counsel to ensure that their respective interests are protected.

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A&P | AUDET & PARTNERS LLP

## II.  Despite Repeated Requests by *Chernavsky* Counsel, Plaintiffs Failed to Provide Basic Information Regarding the Settlement and Other Critical Details; and Now Preliminary Approval Must be Postponed

Since the joint notice of settlement was initially filed (*see* Dkt. 96), *Chernavsky* Plaintiffs, and apparently plaintiffs in other actions, have repeatedly requested – to no avail – basic information regarding the settlement terms and settlement class. (Woods Decl. at ¶¶ 5-7, Exhs. 2-7.) Here, *Chernavsky* Plaintiffs were advised to "wait" until after the revised settlement was filed with the Court. (*See* Dkt. 101; Woods Decl. at Exh. 4.). *Chernavsky* Plaintiffs waited and afterwards requested, again, relevant information about the settlement in order to address concerns that affected *Chernavsky* Plaintiffs and other similarly situated members the class. (Woods Decl. at Exh. 5.) The concerns were provided in detail to *Jabbari* Counsel, and were neither burdensome nor difficult to answer. Yet, despite these overtures to better understand the settlement, *Jabbari* Counsel spurned *Chernavsky* Plaintiffs' efforts and summarily dismissed the request for additional information. (Woods Decl. at Exhs. 6, 7.)

*Chernavsky* Plaintiffs reasonably seeks to understand the terms of the revised settlement (Dkt. 101). The Court should order the *Jabbari* parties to provide the requested information/documents as detailed in the correspondences, and continue the preliminary approval hearing until such a time the various parties can fully assess the fairness, reasonableness and adequacy of the revised settlement agreement.

## III. *Chernavsky* Plaintiffs Renew Their Motion to Intervene On Behalf of the Privacy Class

### A.  Chernavsky Plaintiffs Have the Right to Intervene under Fed. R. Civ. P. Rule 24(a)(2)

Under Federal Rules of Civil Procedure Rule 24(a)(2) *Chernavsky* Plaintiffs have the right to intervene in this action in order to assert and protect his rights and interests as well as those of members of the class he seeks to represent.  Rule 24(a)(2) reads:

**Intervention of Right.**   Upon timely application anyone shall be permitted to intervene in an action:…(2) when the applicant claims an interest relating to the

property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Intervention must be granted whenever the following four "well-established" criteria are met: "[a]n applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *United States v. City of New York*, 198 F.3d 360, 364 (2d Cir. 1999). As discussed below, the Intervenor easily satisfy each of those four criteria.

"In applying the test, the court is guided by equitable considerations in making determinations on these factors and should 'generally interpret the requirements broadly in favor of intervention.'" *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.'" *Id.* (quoting *Green v. United States*, 996, F.2d 973, 980 (9th Cir. 1993)). These purposes are well-served by allowing Intervenor to intervene in order to properly assess the proposed settlement.

At the March 30, 2017 MDL hearing, counsel for *Jabbari* Plaintiffs consented to intervention. (Woods Decl. at Exh. 1, MDL Trans. at 15:16-18:20.) Thus, *Jabbari* Parties are estopped from arguing that intervention is improper. Nevertheless, any doubts regarding the propriety of permitting interventions must be resolved in favor of allowing intervention, as this serves the judicial systems interest in resolving all related controversies in a single action. *Sierra Club v. Robertson*, 960 F.2d 83, 85-86 (8th Cir. 1992). "It is established law that Rule 24 should be construed liberally." *Tatum v. Cardillo*, 11 F.R.D. 585, 587 (S.D.N.Y. 1951).

The facts set forth herein establish that *Chernavsky* Plaintiffs have a right to intervene in this action.

*Chernavsky* Plaintiffs' Response to Plaintiffs' Motion for Preliminary Approval of Settlement

### B.  This Motion is Timely

*Chernavsky* Plaintiffs in this case filed their motion as soon as practical.  "An application's timeliness must be evaluated against the totality of the circumstances before the court."  *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. And Markets*, 847 F.2d 1038, 1044 (2d Cir. 1988) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595 (2d Cir. 1986); "No ironclad rules govern this determination.  '[T]imeliness is not just a function of counting days; it is determined by the totality of the circumstances… [W]here a party takes reasonable steps to protect its interest, its application should not fail on timeliness grounds." *United States v. Alcan Aluminum*, 25 F.3d 1174, 1181-82 (3d Cir. 1994) (quoting *NAACP*, 413 U.S. at 366).

Denial of this motion to intervene will greatly prejudice *Chernavsky* Plaintiffs as the action has the possibility of foreclosing on any potential recovery from Wells Fargo.  In contrast, granting the motion to intervene will <u>not</u> result in any prejudice to existing parties as:

> The prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in this action.  Although it is sometimes suggested that any prejudice that would result by intervention is relevant, this is incorrect.

*Meek v. Metro. Dade County*, 985 F.2d 1471, 1479 (11th Cir. 1993).  Because *Chernavsky* Plaintiffs have not delayed in filing this motion to intervene, there can be no possible prejudice to the existing parties.  Accordingly, this motion to intervene is timely filed.

### C.  *Cheranvsky* Plaintiffs Have an Interest in These Proceedings

Rule 24(a)(2) "requires only that a proposed intervenor demonstrate that denial of intervention may as a practical matter affect the movant's ability to protect its interests."  *N.Y. Reg'l Interconnect, Inc. v. Pataki*, 2007 U.S. Dist. LEXIS 36039, at *12 (N.D.N.Y. May 15, 2007).  The interest the Chernavsky Plaintiffs maintain in this action is "direct, substantial, and legally protectable."  *Wash. Elec. Coop., Inc. v. Mass. Municipal Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  A party has a sufficient interest in the litigation to justify intervention whenever the intervenor has a legal interest that would be tangibly threatened by the litigation.  *Development Fin.*

1   *Corp. v. Alpha Hous. & Health Care*, 54 F.3d 156, 162 (3d Cir. 1995). This requirement is generally

2   satisfied "if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly v.*

3   *Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

4   Here, the resolution of the instant litigation by settlement will undoubtedly have an impact on

5   Intervenors' rights. *Chernavsky* Plaintiffs have numerous causes of action in their complaint not

6   included in the *Jabbari* action and not accounted for in the Settlement.

### D.  The Interests of *Chernavsky* Plaintiffs and Members of the Proposed

7

8   ### Class Are Not Adequately Represented At This Point

9   The requirement of inadequacy of representation is satisfied if the *Chernavsky* Plaintiffs

10  show that representation of their interests may be "inadequate" -- the burden of making a showing of

11  inadequacy is minimal. *Trobovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The

12  interests of all parties in this litigation and the interests of *Chernavsky* Plaintiffs are divergent --

13  *Chernavsky* Plaintiffs are seeking to represent the Privacy Class and to determine if the Settlement is

14  adequate. Given that all the current parties to this action support the Settlement, it cannot be argued

15  that the parties to this action will adequately represent *Chernavsky* Plaintiffs and seek to protect their

16  interests and rights. Indeed, the fact that none of the class representative declarations filed in support

17  of the settlement by *Jabbari* Plaintiffs mention any of the subclass interests is further evidence that

18  subclass counsel is necessary.

### E.  Alternatively, Permissive Intervention Should be Granted

19

20  ### Under Rule 24(b)

21  In the alternative, *Chernavsky* Plaintiffs should be allowed <u>permissive</u> intervention into this

22  action. Rule 24(b) states: "[o]n timely motion, the court may permit anyone to intervene who…has a

23  claim or defense that shares with the main action a common question of law or fact…. In exercising

24  its discretion, the court must consider whether the intervention will unduly delay or prejudice the

25  adjudication of the original parties' rights." Fed. R. Civ. P. Rule 24(b). Rule 24(b) grants the Court

26  broad discretion to allow intervention when the claims asserted by would-be *Chernavsky* Plaintiffs

27  share common questions of law or fact.

28

The claims asserted by *Chernavsky* Plaintiffs here share numerous common questions of law and fact with those asserted by Plaintiffs in this action.

As discussed above, the motion to intervene is timely and the current parties to this action are not capable of adequately representing the interests of *Chernavsky* Plaintiffs.  Accordingly, Intervenor should be permitted to intervene in this action.

**IV.** **At Minimum, the Court Should Withhold Preliminary Approval Until the Core Problems With The Proposed Settlement Are Corrected By the Parties**

As discussed above, significant problems plague the settlement now before this Court and cannot be pushed off and resolved by a 'deal with later' approach. This is particularly so in light of the expedited proposed schedule for final approval and its impact upon the settlement and settlement class. *Chernavsky* Parties and other objectors have had only two weeks to evaluate voluminous settlement filings and have received no substantive responses from *Jabbari* Plaintiffs to repeated inquiries. (Woods Decl. at ¶¶ 5-7, Exhs. 2-7.) For many class members, despite Wells Fargo likely possessing knowledge of who the class members are and how to contact them, it appears as if a large part if not all of the settlement class must complete a claim form. Without the advantage of accessing and reviewing information readily available to Wells Fargo, the increased burden upon the class cannot be ascertained. Indeed, the settlement as structured, demand that class members must decide whether to be involved in the settlement (and lose all rights associated with the broad release), *before* they have been told that they are in fact a settlement class member with a viable settlement claim. Such a dangerous outcome, along with the litany of issues identified *supra*, highlights why the settlement must be reworked.

Accordingly, the undersigned believes that significant time and resources will be saved by all parties involved, and the class members will face a fairer, more reasonable, and *better* resolution of their potential claims, if the following steps are undertaken *before* preliminary approval is granted:

1.      Improved Notice to the Class – additional information about the proposed individual recovery, the overall class payment and class recovery, information regarding the breadth of the waiver, as well as a determination prior to the opt-out date as to whether or not they are in the class.

1    2.    No opt out/objection deadlines until after all class members are identified by the

2    Consultant or Settlement Parties as a Claimant

3    3.    No less than 60 days before the last class member is identified as a Claimant and the

4    opt out/objection period

5    4.    Objectors and Intervenors are provided the limited discovery and access to the

6    data/information provided to *Jabbari* class counsel as part of the settlement agreement

7    5.    A claimant's right to appeal the determination of the Settlement Administrator.

8    6.    Appointed subclass counsel for the Privacy Subclass to protect the interests of those

9    parties.

10   **CONCLUSION**

11   For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval (Dkt. 101) should be

12   denied and the Court should direct the Settlement Parties to correct the identified deficiencies

13   alongside informed Subclass Counsel.

14

15   Dated May 4, 2017                                  Respectfully submitted,

16                                                By:  /s/  *S. Clinton Woods*

17                                                     S. Clinton Woods
18                                                     AUDET & PARTNERS, LLP
                                                       711 Van Ness Avenue, Suite 500
19                                                     San Francisco, CA 94102-3275
                                                       Telephone:   (415) 568-2555
20                                                     Facsimile:    (415) 568-2556
                                                       cwoods@audetlaw.com
21

22                                                     *Counsel for Alex Chernavsky and William Castro,*
                                                       *on behalf of themselves and all others similarly*
23                                                     *situated*

24

25

26

27

28