Steven Christensen
Zane Christensen
Christensen Young & Associates, PLLC
9980 South 300 West, Suite 200
Sandy, UT 84070
866-861-3333, Fax 888-569-2786
steven@christensenyounglaw.com
zane@christensenyounglaw.com
Attorneys for Mitchell Plaintiffs

*Attorneys for Mitchell Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO, N.A.,<br><br>Defendants. | Case No: 3:15-cv-02159-VC<br><br>**MITCHELL PLAINTIFFS' OBJECTION TO PROPOSED SETTLEMENT AGREEMENT AND MOTION FOR PRELIMINARY APPROVAL**<br><br>Date:     May 18, 2017<br>Time:    10:00 a.m.<br>Place:    Courtroom 4 – 17th Floor<br>Judge:   Hon. Vince Chhabria |

Mitchell Plaintiffs, by and through their attorneys, Christensen Young & Associates do hereby respectfully submit this Objection to the Proposed Settlement and the Motion for Preliminary Approval, and do hereby state:.

The definition and interest of the "class," as contained in the proposed settlement agreement, is convoluted and fails to adequately address the individuals, and various classes, and subclasses of individuals who have been damaged by Wells Fargo's unlawful and fraudulent conduct.  Jabbari Plaintiffs have lumped all class members into an amorphous group without adequately identifying the victims of Wells Fargo's fraudulent account openings, credit damage, out of pocket expenses and other damages (many damages, Wells Fargo's own CEO has expressed, they do not even know how to calculate or determine).   As the Independent Directors of Wells Fargo (IDWF) concluded in their investigation into the sales practice violations and abuses engaged in by Wells Fargo, the types of abuse varied as much as the type of victims and business practice. (Exhibit A).

The settlement may have been arrived at after many hours of negotiation, with Judge Phillips making a settlement recommendation, which Plaintiffs accepted (Loeser Affidavit, ¶ 15), but it is inadequate, and fails basic litigation requirements.  The parties to the settlement agree, in documents filed with the Court, regarding missed deadlines for submitting a proposed settlement agreement, that the Plaintiffs and Wells Fargo were not engaging in discovery.  According to Jabbari counsel, they engaged in conversations with 250 current and former Wells Fargo customers and 20 current and former Wells Fargo employees (Loeser Affidavit, ¶5), which statistically is inadequate, when Wells Fargo notes that one in three households in the United States have accounts with Wells Fargo.  Furthermore, as evidence of the ill-advised settlement, and lack of discovery or identification of class members and subclasses, Mr. Loeser notes in his Affidavit that it was not until *after reviewing "public information," produced by the Wells Fargo Independent Board Investigation,* that they discovered additional information about victims of Wells Fargo's fraudulent actions, that were not thereto before known to them.

According to the IDWF report, over 35 million pages of discoverable material was provided to Sherman and Sterling, who conducted the review.  There is nothing contained in the settlement

documents which even portends to evidence of engagement in discovery, or determination of subclasses by Jabbari**.**

The proposed single global settlement class has multiple fatal flaws, including, *inter alia*, there are dozens of different types of causes of actions, many of which have never been addressed, and which are demonstrative of Wells Fargo's continual pattern of fraudulent activity, sufficient to prove a RICO claim. Likewise, repeated violations of laws, for which Wells Fargo gets a slap on the hand, are not adequately addressed. However, the settlement classifications allow only limited notice and if a class member does not waive all of their rights in this settlement in exchange for nothing more than an opt out would receive.  Class members with potential future claims and class members with statutory claims do not have the separate legal representation that Rule 23(a)(4) and the Constitution require.

Plaintiffs, who previously failed to meet numerous deadlines, and who have failed to engage in any quantifiable discovery to determine class members and the nature and extent of fraudulent activity, now ask the Court to compound their ineptitude by certifying a class without sufficient definition, and without adequate compensation for the victims of the conduct engaged in by Defendants. Moreover, Plaintiffs attempt to foist their decision on this Court by failing to provide any analysis of the intraclass conflicts. Rather than analyzing the various legal claims at issue and the varying interests of the class members, Plaintiffs simply foist their conclusion that their class definition is sufficient and no conflict or subclasses are involved. This *ipse dixit* is insufficient when they fail to meet their burden for preliminary approval. The proposed settlement has been deliberately structured to favor one set of victim/claimants over another.

The affidavits submitted amply demonstrate that Plaintiffs proposed settlement shows that the proposed class representatives have failed to protect the rights of identified class members. In fact, they show that the proposed class representatives did not even protect their own rights. The only proper inference is that the proposed class representatives utterly abdicated their role in the case.

The certification fails because of the lack of separate representation for un-subclassed set of class members. As presently proposed class certification is impossible because of the fatal conflicts

of interest precluding satisfaction of Rule 23(a)(4)'s requirements. Plaintiffs' have failed to adequately protect the interests of the victims of the fraudulent, illegal conduct of Defendants. Defendants have not been held accountable for their actions. The proposed settlement constitutes less than 1% of the profits for one quarter in 2016. Defendants will continue their illegal conduct until they are held accountable, or they actually lose money, for their repeated conduct. Any common interest in injunctive relief does not eliminate other interclass deficiencies, nor should this court accept the facially bogus argument that Rule 23(b)(3) opt out rights make conflicts of interest irrelevant.

An intraclass conflict exists because class members who cannot claim money from a settlement funds are represented by attorneys furthering only the interests of class members who can. This conflict the proposed class representatives from fairly and adequately protecting the interests of all the class members. The conflict is fundamental and requires certification of one or more subclasses with independent representation. This proposed settlement class cannot be certified.

A class action cannot be certified unless the court determines that the class representatives "will fairly and adequately protect the interests of the class." *Fed. R. Civ. P.* 23(a)(4). Likewise, a proposed settlement which has been entered into without discovery, without knowing the totality of the damages, or even the types of damages to the class members cannot withstand dismissal. It is fundamental in order to meet the Rule 23(a)(4) adequate representation prerequisite that at the time the class is certified a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members. *Bishop v. Comm. on Prof'l Ethics and Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1289 (8th Cir. 1982).

"[T]he adequacy of the representation issue is now of critical importance in all class actions and the court is under an obligation to pay careful attention to the Rule 23(a)(4) prerequisite in every case." *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713, 719 (8th Cir. 1978) (quoting *C. Wright & A. Miller, Federal Practice and Procedure* § 1765, at 616-17 (1972)). The Rule 23(a)(4) adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, Rule 23(a)(4) adequacy fails because there are intraclass conflicts between class members who are eligible for compensation and class members who are part of an unrepresented, uncertified subclass that receive nothing. Nor can be represented and continue as incomplete as evidenced by having so few representatives for a national settlement to cover all individuals.

Aside from the fact that there is no evidence that any of the two (2) Jabbari named representatives were similarly situated (nearly all of them allege present damages in the complaint), and the fact that there is no evidence that any of these representatives did anything to promote the interests of the absent class members, there is still a single settlement class represented by a single class counsel whose "conflicting interests," and refusal to include other plaintiffs' counsel, preclude certification without separate counsel representing the disfavored class members.

It is the separate counsel that is the critical missing component, along with someone who is willing to conduct discovery and obtain even one tenth or even a one hundredth of the 34 million documents which Wells Fargo has already produced as part of the IDWF investigation. The proposed settlement fails to take into consideration the numerous claims, many of which contain treble damages. The proposed class members are entitled to both unconflicted named representatives and unconflicted proposed class attorneys.

Only the creation of subclasses and adequate discovery and damages which punish Defendants for their repeated wrongful conduct and the advocacy of an attorney representing each subclass can ensure that the interests of that particular subgroup are in fact adequately represented. *In re Literary Works*, 654 F.3d 242, 252 (2d Cir. 2011)

"The only way to ensure that each group of [plaintiffs] is adequately represented is to create two subclasses with separate counsel appointed to represent the interests of each class; otherwise, the factors of typicality and representativeness under Rule 23(a) will not be satisfied." Divergent interests require separate counsel when it impacts the essential allocation decision ns of plaintiffs" compensation and defendants liability." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*. 827 F.3d 223, 233-234 (2d Cir.2016)

Rule 23(a)(4) is vital to ensure that absent class members can "fairly be bound by the decisions of the class representatives" including the release and settlement of their claim.  *Amchem*,

521 U.S. at 621.  Class representatives must have the ability and the incentive to represent the claims of the class vigorously. *In re Community Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010). This inquiry is vital, as class members with divergent or conflicting interests from the named plaintiffs and class counsel cannot be adequately represented." *Id.*

Many of the subclass members may not even be aware if their accounts were affected. Many of the subclass members may not have been informed that their credit was compromised and informed on the method to ameliorate the damages (which parenthetically, CEO Sloan said they didn't know how to go about repairing or determining those damages).  The ascertainment of the potential class membership is left to a consultant that was used for a more limited purpose, in a totally different case, *People of the State of California v. Wells Fargo*, BC580228 (2016).

The individuals and businesses covered by the proposed class are given no differentiation. The only qualifying elements are if the individual is qualified by a consultant and then given a claim form.  Damages recoverable include "certain fees," and only "certain individuals."  The credit damage and repair is so nebulous that it cannot be determined who is even eligible for benefits.

*In Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999), the Supreme Court reversed the Fifth Circuit's approval of a class settlement that failed to satisfy Rule 23(a)(4).  The Court held that it is obvious after Amchem that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimant's not yet born) requires division into homogeneous subclasses under what is Rule 23(c)(5)], with separate representation to eliminate conflicting interests of counsel." *Id*. at 856.  As the Supreme Court noted, class members with present claims want "generous immediate payments" for those present injuries compared to class members with future claims that want funds for potential future injuries. *Id.*

As in *Ortiz* and *Amchem*, this case also involves an obvious conflict between class members with present claims and those with uncertain future claims. This is not a hypothetical case. There are individuals who have suffered out of pocket damages who want to be paid now.  There are individuals who actually fall within at least 2 separate class actions regarding Wells Fargo, who had mortgages, or life insurance, or debit postings which were all the subject of Wells Fargo's unethical, unlawful business *modus operandi*. The cost of doing business, or being considered as "too big to

fail," has proven to be a cost effective way of business for Wells Fargo.  When a business can earn billions of dollars by engaging in repeated unethical and illegal activities, and compel victims to go through ineffective arbitration, and in the end, pay less than 1% of their profits, what motivation does Wells Fargo have to be law abiding?  The fraudulent sales practices is but one of many repeated actions engaged in by Wells Fargo and the proposed settlement falls square in line with prior "penalties," stipulated judgments and consent orders which are not enough to dissuade Wells Fargo from its money making ways.

In *In re Literary Works,* 654  F.3d  242 the Court found in that case, class counsel  attempted to negotiate compensation from Google for three separate "categories" of class   members (labeled A, B, and C) in a single settlement class. *Id*. at 246.  Each category had  a  different statutory claim and each received a different damages formula.  *Id*.  There was no   dispute that each category had differently valued claims, nor that the compensation for the  categories was unfair.  Instead, the problem was that the class representatives were generally   representing all subgroups—class representatives had claims in categories A, B, and C—but   were incentivized to favor their more lucrative category A and B claims.  *Id*. at 251, 252  (citing *Amchem*, 521 U.S. at 627).  The Second Circuit explained: We agree with objectors that the interests of class members who hold only Category C claims fundamentally conflict with those of class members who hold Category A and B claims.   Although all class members share an interest in maximizing the collective recovery, their interests diverge as to the distribution of that recovery because each category of claim is of different strength and therefore commands a different settlement value.  *Id.* at 254 (emphasis  added).  The Second Circuit struck the settlement on  Rule  23(a)(4) grounds:  the class representatives "cannot have had an interest in maximizing compensation for every category." *Id*. at 252 (emphasis in original); see generally  *Ortiz*, 527  U.S.  815.

As noted in Al Bingham's Affidavit, (Exhibit B) Jabbari Plaintiffs' expert has not even scratched the surface as far as ascertainment of damages is concerned.  This is one of the most glaring reasons the proposed settlement is insufficient.  How can a "fair, reasonable and adequate" when it fails to address the damages and lack of representation and fails to address critical components of damages suffered by customers and victims. "Without a full understanding of the

first issue of the full impact to a consumer's FICO credit scores, there cannot be any sound analysis of the financial impact to consumers." (Al Bingham Affidavit, p. 5)

Likewise, as set forth in Paul Debow's Affidavit, (Exhibit C) contrary to this Court's prior ruling that the parties were bound by the arbitration clause, with the admission of fraudulent conduct by Wells Fargo executives, numerous consent decrees, and the Independent Directors of Wells Fargo's internal investigation, the argument that the proposed settlement removes the risk of arbitration in litigation is substantially diminished. No Court in the country could hold the arbitration clauses viable, when Wells Fargo has admitted to selling identity protection products to its customers, while simultaneously stealing their identities!  Public policy precludes any order which would compel victims of fraud to be required to go into mandatory arbitration.  Further, the fact that Wells Fargo admissions constitute a finding that the arbitration clauses would be *void ab initio* due to the breach of contract, failure to disclose material facts to its customers (Wells Fargo was stealing identities for its own use, and documented instances of selling the identities to third parties for further identity theft)

The fact that none of these issues are covered in the proposed settlement, constitutes further evidence for the need of discovery and to uncover all of the illegal activities engaged in by Wells Fargo.  Additionally, the amount of the proposed settlement is wholly insufficient for the number of victims, as well as the "cost of doing business" factor allowing Wells Fargo to engage in repeated fraudulent, illegal, unethical conduct, and make money during the process.  The proposed settlement is actually costing Wells Fargo "nothing."  And, actually when you take into consideration the clawbacks from its executives, Wells Fargo is coming out on top with the settlement.  There is no criminal in the world who would be dissuaded from continuing in criminal activity if every time he engaged in criminal conduct he was forced to repay even fifty-percent (50%) of the ill gotten gain.  Here Wells Fargo is being required to pay less than one percent (1%) of profits for one year.  Again without discovery, and insurance coverage Wells Fargo maintains the number could be significantly less, thereby further incentivizing them to "treat the operation as if it were their own."

Given the totality of claims alleged against Wells Fargo, by the other non-Jabbari Plaintiffs, it is clear that the majority of statutory claims, (FDCPA, Graham Leech-Biley, Anti-tying, RICO,

state specific deceptive advertising, etc.) are not even considered, but would require all individuals to give up those claims to have a consultant make a decision which is unappealable as to their claim. The proposed settlement completely disregards the numerous violations of statutory claims, and proposes settlement on the most meager of terms.  As noted previously the proposed settlement is for the entire United States.  The California settlement, referenced in the proposed settlement documents, is for one state, and is approximately one-third of the entire proposed settlement.

Furthermore, Section 4.1.7 of the Proposed Settlement Agreement requests that this Court to enjoin all other cases from moving forward, without a class certification having been reached. This is another blatant example of the complete disregard the parties have for the judicial process or the judges themselves. In a status conference hearing before Judge Waddoups in the Mitchell matter, Judge Waddoups made it perfectly clear to counsel for Wells Fargo that it would be necessary for Plaintiffs to know if they would be facing arbitration or not in determining if they desired to opt out. Judge Waddoups then lifted the stay, set a hearing on the issue of the Motion to Compel Arbitration for June 7th. Counsel for Wells Fargo is now trying to circuitously avoid this by having this Court enjoin any other matters from going forward.

Mitchell Plaintiffs therefore respectfully request that this Court Deny the Motion for Preliminary Approval and deny the Proposed Settlement Agreement.

Respectfully submitted this 4th day of May 2017.

    /s/  Zane L. Christensen

Zane L. Christensen
Steven A. Christensen
CHRISTENSEN YOUNG & ASSOCIATES

*Attorneys for Mitchell Plaintiffs*

**ATTESTATION PURSUANT TO LOCAL RULE 5.1**

I, S. Clinton Woods, am the ECF User whose ID and password are being used to file this document.  In compliance with Local Rule 5.1(i)(3), I hereby attest that the signatory to this document, Zane L. Christensen, has concurred in this filing.

DATED  May 4, 2017

       /s/ S. Clinton Woods

S. Clinton Woods
AUDET & PARTNERS, LLP