Steven Christensen
Zane Christensen
Christensen Young & Associates, PLLC
9980 South 300 West, Suite 200
Sandy, UT 84070
866-861-3333, Fax 888-569-2786
steven@christensenyounglaw.com
zane@christensenyounglaw.com
Attorneys for Mitchell Plaintiffs

*Attorneys for Mitchell Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO, N.A.,<br><br>Defendants. | Case No: 3:15-cv-02159-VC<br><br>**MITCHELL PLAINTIFFS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Date:     May 18, 2017<br>Time:    10:00 a.m.<br>Place:   Courtroom 4 – 17th Floor<br>Judge:  Hon. Vince Chhabria |

Plaintiffs-Intervenors – Lawrence Mitchell, et al., Utah,…("Mitchell Plaintiffs") respectfully move this Court pursuant to Federal Rules of Civil Procedure 24, to intervene as plaintiffs in this action. Intervention is warranted as of right because the Mitchell Plaintiffs have been injured by the actions of Defendants, and not all of the claims are represented by the Jabbari class definition and the Mitchell Plaintiffs interest will be impaired if Mitchell Plaintiffs are not permitted to intervene. See, Fed. R. Civ. P. 24(a)(2). In the alternative, Mitchell Plaintiffs should be granted leave to intervene because: (1) the Mitchell Plaintiffs' claims against Defendants share with this action common questions of law and fact; and (2) this action involves Wells Fargo's illegal, fraudulent use of customer's confidential and sensitive, private information from millions of customers, and selling, manipulating, using the information to open unauthorized accounts, engage in a pattern of RICO actions, *See* Fed. R. Civ. P. 24(b)(1), (2). Before filing this Motion, counsel for Mitchell Plaintiffs attempted to confer with counsel for all parties. Counsel for Jabbari plaintiffs refused to return calls or emails, counsel for Defendants responded that she would not discuss the proposed settlement; counsel for the other Plaintiffs have all expressed a willingness to cooperate, and provide whatever information they could in accordance with applicable rules of procedure and do not contest this Motion to Intervene. For the reasons discussed herein and in the accompanying Memorandum, the Mitchell Plaintiffs respectfully requests that the Court grant the Mitchell Plaintiffs' Motion to Intervene in this matter. The Mitchell Plaintiffs attach a proposed Complaint in Intervention and a proposed order.

## I. MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### A. Background

These actions all arise from Wells Fargo employees opening up accounts in customer names without their authorization. The "Jabbari" action was initiated in May 2015, after an article appeared in a local newspaper. This action was eventually sent to arbitration and dismissed. The Jabbari plaintiffs filed an appeal and later remanded due to the parties having "reached an agreement in principle" in September 2016. The date that the parties "reached an agreement in principle" is September 8, 2016, the exact same date that federal regulators and the Los Angeles City Attorney

announced their own settlements with Wells Fargo. (Jabbari Plaintiffs' Response in Opposition to Motion of Mitchell Plaintiffs for Transfer of Action to the District of Utah).

The Mitchell Plaintiffs were the first to file following the announcement of the settlements with federal regulators and the Los Angeles City Attorney. Despite announcing that a "settlement in principle" had been reached on September 8, 2016, Jabbari Plaintiffs did not file a Motion for Preliminary Approval, Notice of Settlement, or any other documents. Jabbari Plaintiffs, along with Wells Fargo missed multiple deadlines for filing a Motion for Preliminary Approval.

During this time, Mitchell Plaintiffs reached out to Jabbari Counsel to have some sort of informal coordination of discovery. Jabbari Counsel refused to discuss any matters with Mitchell Plaintiffs citing confidentiality, of a settlement in principle. Mitchell Plaintiffs pursued their action, and a hearing was set for March 16, 2018 to determine the issue of arbitration, which was later stayed pending resolution of the MDL Panel decision on transfer and centralization.

In fact, it was only until 2 days before the hearing set for the Judicial Panel on Multi-District Litigation that the parties finally announced the settlement. The only terms of the proposed settlement, after more than 6 months of having a "settlement in principle" that were disclosed to the MDL Panel, or anyone, is a $110 million dollar sum, class definition, and that attorney's fees would be coming out of the settlement amount. It begs the question of what the parties had back on September 8, 2016 for a "settlement in principle", if it took them more than 6 months to come forward with this information.

At the MDL Panel Hearing, Judge Vance questioned Mr. Loeser: "So would all these other parties be able to intervene in the Northern District of California to be heard on the settlement? Mr. Loeser: Absolutely, Your Honor. And consistent with the panel's past practice when there's been a settlement like this, all of the parties that subsequently filed cases can appear in those proceedings. They can make themselves heard. They can object or, frankly, then can support the settlement, but nothing's been denied to them".

Given the dubious timing of the announcement of the "settlement in principle" and the timing of the announcement of the Joint Notice of Settlement, filed just 2 days before the MDL Panel would

consider consolidation, it is hard not to be curious as to the reason for the timing of these actions from Jabbari counsel and Defendants and not question whether any collusion has occurred.

On April 10, 2017, the Independent Directors of the Board of Wells Fargo & Company released a Sales Practices Investigation Report, which indicated that there were confirmed cases of fraud as far back as 2002, and that in 2012, Michael Bacon, the head of Corporate Security noted "our data continues to highlight a concerning trend in the area of Sales Integrity- from the increase in EhticsLine reports, to the increase in executive complaint letters," and "increases in confirmed fraud, thus, we need to continue to escalate this issue with senior leadership". (See Board Report p. 50).

In total, over 34 million pages were provided to the investigators for Wells Fargo, and yet, in determining what a proper settlement amount would be, not a single page of discovery has been obtained. It is impossible for Jabbari and Wells Fargo to state in good faith that this $110 million dollar settlement will make class members whole. There is still no concrete number as to how many accounts have been opened up, much less how the opening of fraudulent accounts have impacted individuals credit scores (and thus forced individuals into paying higher interest rates). This last ditch effort by Jabbari and Wells Fargo to force a settlement through is done at the prejudice of all class members, to solely benefit Jabbari counsel and Wells Fargo.

## II. ARGUMENT

### A. Mitchell Plaintiffs Are Entitled to Intervene to Protect Their Interests

Individuals are entitled to intervene in litigation if they "claim an interest relating to the property or transaction which is the subject of the action and… are so situated that the disposition of the action may as a practical matter impair or impede ability to protect that interest." (Code Civ. Proc. §387(b); *Cal. Physicians' Service v. Superior Court of L.A. County* (1980) 102 Cal.App.4th 1150, 1153.) Mitchell Plaintiffs meet this standard and are, therefore, entitled to intervene as of right.

Mitchell plaintiffs have an interest in the outcome of this litigation. They have been victimized by Wells Fargo's fraudulent conduct and experienced serious ramifications, including damage to their credit scores. Mitchell Plaintiffs have been crucial in speaking with reporters and keeping Wells Fargo's conduct in the spotlight. Mitchell Plaintiffs have participated in

Congressional briefings, and the Mitchell case is cited in the Justice for Victims of Fraud Act 2017, which is being sponsored by Senator Sherrod Brown and Representative Brad Sherman.

The adequacy of representation is a crucial factor for Mitchell Plaintiffs. Counsel for Jabbari has not made any effort to conduct any discovery whatsoever. The parties have indicated to this Court in their case management notes that they do not intend to take discovery. Counsel for Jabbari has simply come to a guess as to what would make individuals whole. This guess taken by Counsel for Jabbari and Wells Fargo was announced only two days before a hearing to centralize. The timing of this announcement is reflective that this was a last ditch effort to stonewall other parties from participating. The effect of this last ditch effort is to provide Counsel for Jabbari with the entire attorneys fees, let Wells Fargo off the hook despite news coming out from its own Independent Board of Directors, and shortchange the class. There has been no discovery, no expert witness, no work whatsoever in determining damages to individuals. In the recent report from the Board Members, Counsel has since agreed to extend the time period back to 2002, and in exchange for release of claims for an additional 7 years, Counsel for Jabbari was able to obtain an additional 32 million dollars.

Finally, the request to intervene is timely. This case has promised a settlement and provided no details for months. This case is still in its early stages. No answer has been filed by Wells Fargo, in fact the only thing that has occurred (besides numerous missed deadlines), is Wells Fargo was successful in its Motion to Compel Arbitration. The parties have missed multiple deadlines and have brought serious concern and doubt to whether collusion has occurred between Counsel for Plaintiffs and Defendant (timing of joint notice of settlement two days before MDL Panel hearing, announcing settlement in principle and request to remand to district court on the exact same day Los Angeles Attorney and Federal Regulators announced settlement).

Intervention at this early of a stage will in no way prejudice the existing parties or slow the progress of the case. Rather, parties will be able to work together in a formal manner, and conduct discovery to determine the magnitude of the individuals affected and damages. Furthermore, Plaintiffs Counsel did not have any ground to bargain for any sort of deal with Wells Fargo, as Plaintiffs Counsel already lost on the issue of arbitration. Therefore, Counsel for Jabbari was at the

mercy of Wells Fargo to facilitate a deal. Without the threat of overcoming the arbitration issue (which is highly likely in the *Mitchell* case, given Judge Waddoups' commentary at the latest hearing) Plaintiffs Counsel had no bargaining power. Conversely, Mitchell Plaintiffs, given the hearing set on June 7th on the issue of arbitration, plan to have a significantly stronger position, and demand discovery to enable a proper settlement. It is without a doubt that Wells Fargo and Plaintiffs have not found the actual number of individuals harmed. Many individuals harmed, never even had an account at Wells Fargo, and Wells Fargo cannot find their information (*e.g.*, Tracy Kilgore, Mitchell Plaintiff who has been stayed and can not be compelled to arbitration as Wells Fargo cannot find any of her information, despite being provided with the decline letter from Wells Fargo).

### B. Alternative, the Court Should Permit Mitchell Plaintiffs to Intervene

If the Court does not grant intervention as of right, it should grant permissive intervention pursuant to Code Civ. Proc. §387(a). This provision is construed liberally in favor of intervention. (*See Lindelli v. Town of San Anselmo* (2006), 139 Cal.App.4th 1499, 1505; *Lincoln Nat. Life Insurance Co. v. STate Bd. of Equalization* (1994) 30 Cal.App.4th 1411, 1423; *Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1200.) Trial courts have discretion to allow a party to intervene under Code Civ. Proc. §387(a) where (1) the nonparty has a direct and immediate interest in the action; (2) the intervention will not enlarge the issues in the litigation; (3) the reasons for the intervention outweigh any opposition by the parties presently in the action; and (4) the proper procedures have been followed. (*Royal Indemnity Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 203.)

### C. Mitchell Plaintiffs Have a Direct and Immediate Interest in This Case

For the purposes of permissive intervention, a "direct and immediate interest" exists when "the moving party will either gain or lose by the direct legal operation and effect of the judgment." (*Lindelli* at p. 1505) The current proposed settlement will encompass most, if not all of the Mitchell Plaintiffs. The Mitchell Plaintiffs have a direct and immediate interest in this case, as the proposed settlement would require a mass opt-out by Mitchell Plaintiffs when Mitchell Plaintiffs are still unaware of their footing on the issue of arbitration, as Judge Waddoups has set a hearing date for June 7, 2017 to determine the issue of arbitration. Mitchell Plaintiffs are put into a position where

they must accept a *de minimus* settlement, which is more of a token victory, or risk getting nothing and opting out. If the Mitchell Plaintiffs were even made aware of how many confirmed individuals were harmed and the estimated amount of damages to all the class, including damage to credit scores, Mitchell Plaintiffs would have a better understanding. However, nothing has been done by Jabbari Counsel or Wells Fargo to determine these issues.

### D. Mitchell Plaintiffs Will Not Enlarge the Issues in This Case

While the Mitchell Plaintiffs assert different causes of action, the Mitchell Plaintiffs only wish to contest the adequacy and validity of this proposed settlement. Mitchell Plaintiffs do not believe this settlement is adequate or fair to class members, and believe that such a poor settlement was the result of a last ditch effort by Counsel for Jabbari and Wells Fargo to avoid discovery and litigation. Mitchell Plaintiffs further plan to continue within their own litigation, and as such would not enlarge the issues of this case. Rather, the Mitchell Plaintiffs are only concerned with contesting this proposed settlement.

### E. Jabbari Counsel Has Stated That Other Counsel Would be Able to Object to the Settlement

When deciding permissive intervention courts weight the parties opposition in order to give litigants "freedom to control the scope of litigation they initiate." (See *Royal Indemnity Co.* at 212.) Unfortunately, Jabbari Counsel currently controls the scope of this litigation. Control over the issues does not, however, give power to prevent interest parties from contesting. Courts do not recognize one party's opposition as a freestanding basis for denying permissive intervention. In *Gray v. Begley* (2010) 182 Cal.App.4th 1509, 1521-25, permissive intervention in favor of an insurer was upheld over the opposition of both parties because the insured defendant attempted to settle with the plaintiff "to the potential detriment of the insurer." This reflects the commonsense principle that a direct and immediate interest outweighs the opposition of one, or even both parties, when fairness to the intervenor requires it.

### F. Jabbari Counsel Has Stated That Other Counsel Would be Able to Object to the Settlement

When deciding permissive intervention courts weight the parties opposition in order to give litigants "freedom to control the scope of litigation they initiate." (See *Royal Indemnity Co.* at 212.) Unfortunately, Jabbari Counsel currently controls the scope of this litigation. Control over the issues does not, however, give power to prevent interest parties from contesting. Courts do not recognize one party's opposition as a freestanding basis for denying permissive intervention. In *Gray v. Begley* (2010) 182 Cal.App.4th 1509, 1521-25, permissive intervention in favor of an insurer was upheld over the opposition of both parties because the insured defendant attempted to settle with the plaintiff "to the potential detriment of the insurer." This reflects the commonsense principle that a direct and immediate interest outweighs the opposition of one, or even both parties, when fairness to the intervenor requires it.

At the MDL Panel Hearing, Judge Vance asked: "So would all these other parties be able to intervene in the Northern District of California to be heard on the settlement?" Counsel for Jabbari, Mr. Loeser responded: "Absolutely, Your Honor...They can make themselves heard. They can object or, frankly, they can support the settlement, but nothing's been denied to them." (Transcript of MDL Hearing, p. 18).

Here, basic fairness would require for Mitchell Plaintiffs be allowed to participate and object to the proposed settlement, given Counsel's statements to the MDL Panel. The interest of Mitchell Plaintiffs in assuring a fair and adequate settlement far outweigh any possible request to exclude.

### G. Mitchell Plaintiffs Have Followed the Proper Procedures

Fed. Code Civ. Proc. §387 establishes the procedures for intervention. An intervenor must (1) seek leave of court; (2) submit a proposed complaint in intervention; which (3) states the grounds upon which the intervention rests; and (4) serve the intervention papers on all of the parties who have appeared. Because Mitchell Plaintiffs have followed each of those procedures, the Court can and should grant them permissive intervention.

### III. CONCLUSION

For the reasons stated above, Mitchell Plaintiffs respectfully request this Court to grant Mitchell Plaintiffs leave to intervene.

Respectfully submitted this 4th day of May 2017.

      /s/  Zane L. Christensen

Zane L. Christensen
Steven A. Christensen
CHRISTENSEN YOUNG & ASSOCIATES

*Attorneys for Mitchell Plaintiffs*

**ATTESTATION PURSUANT TO LOCAL RULE 5.1**

I, S. Clinton Woods, am the ECF User whose ID and password are being used to file this document. In compliance with Local Rule 5.1(i)(3), I hereby attest that the signatory to this document, Zane L. Christensen, has concurred in this filing.

DATED  May 4, 2017

                                           /s/ S. Clinton Woods

                                           S. Clinton Woods
                                           AUDET & PARTNERS, LLP