DAVID H. FRY (State Bar No. 189276)
david.fry@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

ERIN J. COX (State Bar No. 267954)
erin.cox@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:   (213) 683-3702

Attorneys for Defendants, WELLS FARGO &
COMPANY and WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No. 15-CV-02159 VC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:   Hon. Vince Chhabria<br>Ctrm.:   4<br>Date:    May 18, 2017<br>Time:    10:00 a.m. |

Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. ("Defendants") submit this reply in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

## I. INTRODUCTION

Named plaintiffs in the related actions *Stanton v. Wells Fargo & Co.*, No. 8:16-cv-03318-CEH-JSS (M.D. Fla.); *Jeffries v. Wells Fargo & Co.*, No. 2:16-cv-1987-LSC (N.D. Ala.); *Lessa v. Wells Fargo & Co.*, No. 16-cvs-011955 (Wake Cty. Super. Ct.); and *Hodge v. Campbell,* No. SU16-cv-0771 (Clarke Cty. Super. Ct.), each represented by Heninger Garrison Davis LLC, filed a combined motion to intervene and opposition to the motion for preliminary approval of the class action settlement in the *Jabbari* action ("Heninger Plaintiffs"). (Dkt. No. 117.) In opposing preliminary approval, the Heninger Plaintiffs argue, among other things, that Wells Fargo's assertion of arbitration rights would not hold up against class members who are legacy Wachovia customers. In coming to this mistaken conclusion, the Heninger Plaintiffs ignore that legacy Wachovia customers whose accounts were converted to Wells Fargo accounts are now bound by Wells Fargo's account agreements. And even if the Court were to assess their arguments against enforcing the Wachovia arbitration agreements which governed before the conversion of their accounts to Wells Fargo, it is clear that the same result as in the *Jabbari* action would apply: The incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties intended to have the arbitrator decide threshold questions of arbitrability, including the scope or validity of the arbitration agreement.

The Heninger Plaintiffs also contend that the Anti-Injunction Act bars the Court from issuing an injunction with respect to the *Lessa* and *Hodge* actions which are pending in state court, ignoring that the terms of the Act permit a federal court to take this precise action when necessary in aid of the court's jurisdiction—a power that federal courts routinely invoke when preliminarily approving a class action settlement.

## II. ARGUMENT

### A. Claims by Former Wachovia Customers Are Also Subject to Arbitration.

The Heninger Plaintiffs insist, wrongly, that Wells Fargo customers who were originally Wachovia customers might fare better in a dispute over the scope and enforceability of their arbitration agreements than did the *Jabbari* plaintiffs. As an example, they point to plaintiff Nadine Stanton, who "signed a Wachovia agreement, and became a Wells Fargo customer afterward," as with other Floridians who are Wells Fargo customers "due solely to the acquisition and conversion of Wachovia accounts." (*Id.* at 7-8.) The Heninger Plaintiffs assert that Stanton's Wachovia agreement "positively excludes her dispute from arbitration," and suggest that the later Wells Fargo agreement that governed the conversion of Stanton's Wachovia account to a Wells Fargo account does not supplant the earlier Wachovia agreement. (*Id.* at 7.) As laid out in Wells Fargo's motion to compel Stanton's claims to arbitration (attached as Exhibit A hereto), prior to the conversion of Stanton's Wachovia account into a Wells Fargo account, Wells Fargo mailed Stanton (and all Wachovia customers prior to conversion, whether in Florida or otherwise) a "conversion package" containing a welcome letter, a consumer guide, and consumer disclosure booklets that included a Consumer Account Agreement. (Ex. A at 5, and Exs. 3-5 to the Declaration of Timothy Merck in Support of Motion to Compel Arbitration (attached as Exhibit B hereto).) The welcome letter advised Stanton, and other similarly situated Wachovia customers, that after the conversion of their accounts, the accounts would be governed by the terms and conditions set forth in the enclosed consumer disclosures. (*Id.*) These legacy Wachovia customers whose accounts were converted to Wells Fargo accounts are bound by the same, or nearly identical, arbitration agreements which apply to the claims brought by the *Jabbari* plaintiffs. *See, e.g., Williams v. MetroPCS Wireless, Inc.,* 2010 WL 1645099, at *6 (S.D. Fla. Apr. 21, 2010) ("Ms. Williams did not explicitly by her words or signature agree to arbitrate . . .

[but] Ms. Williams' acceptance of the benefits of the Terms and Conditions . . . constituted acceptance of that agreement . . . ."); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012) ("Numerous courts have found that continued use or failure to opt out of a card account after the issuer provides a change in terms, including an arbitration agreement, evidences the cardholder's acceptance of those terms."); *Herrington v. Union Planters Bank, N.A.,* 113 F. Supp. 2d 1026, 1031-32 (S.D. Miss. 2000) ("[T]he plaintiffs accepted the terms of the arbitration agreement by continuing to utilize their accounts. . . . The plaintiffs could have simply declined to accept the arbitration provision by terminating their account before the effective date of the amendment."); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) (consumer who receives arbitration agreement in the mail bound by terms if he does not return the computer).

Even setting aside the conversion of legacy Wachovia accounts to Wells Fargo accounts, and the governance of the Wells Fargo account agreements following conversion, the Heninger Plaintiffs are mistaken in their assertion that the legacy Wachovia agreements would not support compelling arbitration here. As with the Wells Fargo agreement, the Wachovia deposit agreement that governed Stanton's account while it was still a Wachovia account (Ex. 2 to Ex. B (Merck Decl.) hereto) incorporates the AAA commercial arbitration rules (*id.* at 12); those rules provide that the arbitrator shall decide the validity of the arbitration agreement and the arbitrability of any claim. As numerous courts have held, including this Court, incorporation of the AAA rules is clear and unmistakable evidence that the parties intended for the arbitrator to decide threshold issues of arbitrability. *Jabbari v. Wells Fargo & Co.*, Case No. 3:15-cv-02159-VC, Dkt. No. 69 at 1 (N.D. Cal. Sept. 23, 2015) ("September 23, 2015 Order"). Because the AAA rules give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," the

1  parties' incorporation of those rules "serves as clear and unmistakable evidence of the parties'
2  intent" to delegate the determination of arbitrability to an arbitrator. *Contec Corp. v. Remote Sol.,*
3  *Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (citation and internal quotation marks omitted); *Terminix*
4  *Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005) (same); *Fallo v.*
5  *High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (same).
6
7        The Heninger Plaintiffs point to language in Stanton's Wachovia customer access
8  agreement which Stanton asserts "positively excludes her dispute from arbitration," (Dkt. 117 at
9  7), on the premise that the Wachovia agreement only applies to claims related to authorized
10 accounts.  This argument is a red herring. As was true of Plaintiffs Jabbari and Heffelfinger, the
11 Heninger Plaintiffs' allegations are tied to the accounts they acknowledge are valid, as they assert
12 that Wells Fargo converted funds they deposited into their authorized accounts, misused
13 information they provided in connection with opening their authorized accounts, and failed
14 adequately to safeguard that information.  (*See, e.g., Stanton* Complaint (attached hereto as
15 Exhibit C) at ¶ 19 ("These accounts were funded by transferring funds from these customers'
16 authorized accounts without their knowledge or consent, and these unauthorized transfers often
17 resulted in the affected customers incurring overdraft fees or other charges."); *id.* ¶ 9 ("When the
18 Plaintiff and the Class members opened their accounts with Defendants, they were required to
19 supply Defendants with certain private and identifying information, including but not limited to
20 their name, date of birth, address, phone numbers and social security number."); *id.* ¶ 11
21 ("Despite this supposed pledge to protect a customer's private and identifying information,
22 Defendants do very little to protect this information from its employees.  In fact, Defendants
23 actually make it very easy for its employees to access a customer's private and identifying
24 information . . . .").)  Accordingly, their claims concern accounts that the Heninger Plaintiffs
25 concede are governed by the agreement.  *See* September 23, 2015 Order at 2.

Nor does the language in the Wachovia customer access agreement quoted by the Heninger Plaintiffs, and upon which they base the whole of their argument, actually support the notion that an otherwise valid arbitration agreement does not reach claims associated with alleged unauthorized accounts. The language—"I understand this agreement does not apply to accounts on which my name may appear and I am not the authorized signer"—refers to situations in which an individual is listed on an account in a capacity other than as an authorized signer, such as is the case when a beneficiary is named on a trust account. It does not refer to situations where the customer is listed as the authorized signer on the account, but the account itself was opened without consent. Even if there were a question of whether this language raises an ambiguity, given the strong presumption in favor of arbitrability, any contention that there is an ambiguity "resolve[s] the issue, because all ambiguities must be resolved *in favor* of arbitrability." *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 798 (10th Cir. 1995) (emphasis in original).

The Heninger Plaintiffs' tacit acknowledgement that the Wachovia account agreement would be enforceable as to matters related to their admittedly authorized accounts should end the inquiry.[1]  "[W]here, as here, parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (internal quotation marks omitted). Put simply, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (emphasis added). Because the arbitration

---

[1] *Cf.* Ex. C (*Stanton* Complaint) at ¶ 32 ("Upon information and belief, when Plaintiff and each Class member opened his or her legitimate account with the Wells Fargo Defendants, he or she agreed to arbitrate any and 'all claims, disputes, and controversies' between themselves and Wells Fargo which 'aris[e] out of or relat[e] in any way to [their] account(s) and/or *service(s)* . . . .'").

provisions in all class members' agreements (whether or not those class members are legacy Wachovia customers) "clearly and unmistakably" provide for an arbitrator to address questions of arbitrability, a court would be bound to honor those agreements. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The Heninger Plaintiffs, as with all legacy Wachovia customers, will be forced to arbitrate their individual claims if they elect to opt out of the class settlement.

### B. The Court Should Issue the Requested Injunction.

Alone among the proposed intervenors, the Heninger Plaintiffs assert that the Court should not issue an injunction barring the filing or prosecution of parallel litigation following preliminary approval. (Dkt. 117 at 11-12.) They contend that the Anti-Injunction Act bars such an injunction with respect to the *Lessa* and *Hodge* actions, which are pending in state courts. (*Id.*) But, by its terms, the Anti-Injunction Act permits a federal court to enjoin state court litigation "where necessary in aid of its jurisdiction," 28 U.S.C. § 2283, and federal courts have found, again and again, that enjoining the prosecution of parallel state litigation is necessary in aid of a federal court's jurisdiction when it has preliminarily approved a class action settlement. *See*, *e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liability Litig.*, __ F. Supp. 3d __, 2017 WL 316165, at *16 (N.D. Cal. Jan. 23, 2017); *In re Vioxx Prods. Liability Litig.*, 869 F. Supp. 2d 719, 726 (E.D. La. 2012) ("In practice, the Circuit Courts have been most willing to uphold an injunction pursuant to the 'in aid of jurisdiction' exception in the MDL or complex litigation context when settlement is complete or imminent in the federal court, and often after preliminary or final certification of a class."); *see also* Manual for Complex Litigation, Fourth, § 20.32 (The All Writs Act and the Anti-Injunction Act "have been used to effectuate global settlements in large scale litigation by enjoining or removing to federal court parallel state court

litigation that would otherwise frustrate the adoption or implementation of comprehensive class settlements approved by the federal court as binding on the parties to the state court litigation.").

The Heninger Plaintiffs argue that allowing them to litigate in state court cannot interfere with this action because the case has not proceeded to discovery, class certification or a decision on the merits, citing *Del Rio v. CreditAnswers, LLC*, 2010 WL 1337700 (S.D. Cal. Apr. 1, 2010). (Dkt. 117 at 11.) But, as the *Del Rio* decision explained, the existence of a class action settlement is a circumstance where the risk of interference justifies an injunction:

> In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the Ninth Circuit upheld an injunction barring a federal class member from pursuing a state class action involving claims that were similar to those raised in a nationwide class action that was nearing resolution. *See id.* at 1025. The *Hanlon* "decision clearly recognized that a competing state class action covering a portion of the federal class posed a significant danger to the delicate and transitory process of approving a settlement agreement, and thereby threatened the district court's ability to resolve the litigation." *Sandpiper [Village Condominium Ass'n, Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 845 (9th Cir. 2005)]. Similarly, in *In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002), the court affirmed an order enjoining a parallel state action relying upon the "necessary in aid of ... jurisdiction" exception. In that case, as in *Hanlon*, the federal nationwide class action was nearing settlement at the time the state action was filed. *See id.* at 237. "In light of the sensitive stage of the federal litigation, the Third Circuit reasoned that the state court action 'might interfere with the District Court's oversight of the settlement at that time, given the careful balancing it embodied' and, therefore, posed 'a serious threat to the District Court's ability to manage the final stages of this complex litigation.'" *Sandpiper*, 428 F.3d at 845 n. 22 (quoting *In re Diet Drugs*, 282 F.3d at 236–37).

*Del Rio*, 2010 WL 1337700 at *2. The *Del Rio* court distinguished those authorities on the ground that the case before it had not reached that stage. *Id.* ("Del Rio has not shown that this action is in a 'sensitive stage.'").

In contrast to *Del Rio*, this case *is* at the "sensitive stage" identified by the Ninth Circuit in *Sandpiper*. Highlighting the risk of interference with the Court's management of the settlement approval process, counsel for the Heninger Plaintiffs has, in the *Jeffries* action, requested appointment on an expedited basis as class counsel for an Alabama class for the more-or-less express purpose of trying to interfere with the settlement. They argued that the appointment

34775100.1 - 7 - DEFTS. REPLY ISO MOT. FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. 15-CV-02159

should be made before May 18, 2017 because "[t]hat is the date their counsel expects to be heard on a proposal to settle their claims in another case," *i.e.*, this case. (Declaration of David Fry, Dkt. 106-1, Ex. 3 at 1.)  Without citation to any authority, they further claimed that the appointment would "empower Plaintiffs' attorneys to speak for and make decisions on behalf of the putative Class." (*Id.* at 1-2.)  It would, they asserted, "forestall potential future leadership clashes and ensure that putative class members' interests are protected by capable counsel, and will not be adversely impacted by other actions." (*Id.* at 11.)  It is not yet clear exactly what actions the *Jeffries* lawyers will take, but they plainly are seeking to use another proceeding to alter the course of this action—*i.e.*, to interfere with it.  An injunction to prevent further such efforts is necessary in order to ensure that this Court maintains its jurisdiction over the settlement approval process.

### III.  CONCLUSION

For the foregoing reasons, the proposed class action settlement should be preliminarily approved and the requested injunction should be included in the order preliminarily approving the settlement.

DATED: May 11, 2017                               MUNGER, TOLLES & OLSON LLP

                                                  By:  */s/ David H. Fry*
                                                       David H. Fry

                                                  Attorneys for Defendants,
                                                  Wells Fargo Bank, N.A. and Wells Fargo & Company