| | |
|---|---|
| 1 | Derek W. Loeser, *admitted pro hac vice* |
| 2 | Gretchen Freeman Cappio, *admitted pro hac vice*<br>KELLER ROHRBACK L.L.P. |
| 3 | 1201 Third Avenue, Suite 3200<br>Seattle, WA 98101-3052 |
| 4 | (206) 623-1900; Fax: (206) 623-3384<br>dloeser@kellerrohrback.com |
| 5 | gcappio@kellerrohrback.com |

Jeffrey Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900; Fax: (510) 463-3901
jlewis@kellerrohrback.com

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,

Defendants.

No. 15-cv-02159-VC

**REBUTTAL DECLARATION OF EDWARD M. STOCKTON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF A SETTLEMENT CLASS**

Date:       May 18, 2017
Time:      10:00 a.m.
Courtroom:   4, 17th Floor

Judge: Vince Chhabria

No. 15-cv-02159-VC

REBUTTAL DECLARATION OF
EDWARD M. STOCKTON IN
SUPPORT OF PRELIMINARY
APPROVAL

I, Edward M. Stockton, declare as follows:

1. In my previous Declaration submitted to this Court ("Stockton Decl.") I provided an explanation of my work on this matter and my qualifications.

2. In this Rebuttal Declaration, I will respond to some of the assertions in the Declaration of Al Bingham Rejecting the Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, ECF 118-2 ("Bingham Decl."), which I have reviewed.

3. Mr. Bingham summarizes his criticisms in a list, Bingham Decl. at 4. I respond to each point in that list below.

**Point 1: Failure to address how different and all relevant issues impact a consumer's FICO credit score.**

4. As stated in my original declaration, we will receive from the credit bureau(s)—as inputs to our calculations—actual and "but-for" credit scores unique to each person. Stockton Decl. ¶ 7. The but-for credit scores are the scores that would have existed absent the effects from unauthorized inquiries and any direct or indirect effects of the unauthorized accounts. Comparing actual credit scores to those that would have existed absent the unauthorized inquiries and account(s) negates all the effects of these unauthorized events. The proposed process inherently accounts for the full impact of all different and relevant issues on FICO scores.

**Point 2: Failure to detail how a new account only impacts FICO scores for 12 months.**

5. A new account could affect FICO scores beyond 12 months. However, the effects after the initial 12 months would be diminishing. The further in time that one goes from an event that affects a FICO score, the more likely it becomes that the effect of that event becomes "swamped" by more recent events.

6. The effects after the initial 12 months would also be highly varied. Certain accounts could cause the credit score to rise because of a lower total credit balance relative to credit available,

while certain accounts could cause credit scores to decline by diminishing the average age of accounts. While certain class members may be better off with a settlement that looks beyond a year, others may be worse off.

7. The proposed method is efficient and has a justification for the use of a year. Considering impact on FICO scores beyond a year requires much more time, expense, and resources. Furthermore, extending credit impact calculations beyond a year would end up reducing payments to many consumers. Also, since the settlement covers unauthorized accounts that Wells Fargo opened until recently, the use of a longer time period would delay implementation of the settlement or would cause inconsistent implementation among class members.

**Point 3: Incorrectly assumes that there is only a 12-month period when the consumer will incur extra costs from lower FICO scores.[1]**

8. My declaration does not propose to consider only a 12-month period during which consumers may have incurred extra costs from lower FICO scores. The method proposed does take into account expected loan duration. Specifically, the hypothetical example I provided in my Declaration notes that the damage calculation incorporates expected loan duration. Stockton Decl. ¶ 9.

**Point 4: Failure to substantiate how FICO credit score[] decline[] from opening new accounts was only 12 points for each Wells Fargo consumer.**

9. My declaration does not assume a 12-point FICO score decline for each consumer. One hypothetical example assumed a 12-point decline. Stockton Decl. ¶ 9. As described in my Declaration and earlier in this document, we will assess effects on credit scores by using actual and but-for scores for each consumer.

---

[1] This appears as Point 3 on page 4 of Mr. Bingham's declaration, but it is not clear where Mr. Bingham elaborates on the point in his declaration.

No. 15-cv-02159-VC                     2                     REBUTTAL DECLARATION OF
                                                             EDWARD M. STOCKTON IN
                                                             SUPPORT OF PRELIMINARY
                                                             APPROVAL

**Point 5: Failure to address the late payments and collections and the impact to the consumer's FICO credit scores that many Wells Fargo clients had in their credit report from these unauthorized Wells Fargo accounts.**

10. Mr. Bingham may misunderstand the reference to but-for scores at Stockton Decl. ¶ 7. My Declaration proposes to capture the effects of these events on consumers' credit scores by using actual and but-for scores for each consumer. Also, I understand that Wells Fargo is independently compensating consumers for fees on unauthorized accounts.

**Point 6: Failure to address how FICO credit scores determine the financial cost to the consumer.**

11. I believe Mr. Bingham is referring to the potential effect of FICO score changes on insurance rates. It is true in some cases that FICO scores affect insurance rates. However, credit reports do not report insurance pricing. It is our understanding that not all insurance companies use credit scores and that those who do consider credit scores do not do so for all customers. Furthermore, the credit score used as an insurance rate input is not generally the same as the overall credit score.[2]

12. For those insurance companies that consider credit history in their insurance pricing, credit history is one of many inputs. It is my expectation that non-party insurance companies will not share their pricing algorithms. Collectively, attempting to account for impact on insurance rates is not a feasible calculation in this class-action settlement.

13. Another interpretation of Mr. Bingham's Point 6 is that the Declaration did not state how damages would be computed. This is also incorrect, as the detailed formula for computing damages given loan amount, extra borrowing cost, loan duration and estimated probability of actual damages is given in Stockton Decl. ¶¶ 7-10.

---

[2] https://www.progressive.com/shop/car-insurance-credit-information/ (visited 5/9/2017), http://www.naic.org/documents/consumer_alert_credit_based_insurance_scores.htm (visited 5/9/2017).

No. 15-cv-02159-VC                         3                         REBUTTAL DECLARATION OF EDWARD M. STOCKTON IN SUPPORT OF PRELIMINARY APPROVAL

**Point 7: Lack of evidence to claim that there are only three, 100-point tiers in determining lenders' interest rates in using FICO credit scores.**

14. My declaration does not make that claim. The three 100-point tiers are discussed in a hypothetical example. The Declaration states that "we will use a reasonable set of tier definitions, based on public literature, to apply to all candidates, and these may or may not coincide with the following hypothetical example." *See* Stockton Decl. ¶¶ 8-9 (displaying chart with eight tiers).

**Point 8: Lack of evidence to claim . . . that lenders do not use the same pricing tiers based on FICO credit scores.**

15. Mr. Bingham's own examples, Bingham Decl. at 7-10, show exactly this. Lenders use different tiers. I stated that we would use reasonable tiers based upon literature. Stockton Decl. ¶ 9.

**Point 9: Failure to address extra costs for consumers for mortgages, personal loans, insurance premiums, and credit card interest rates based on FICO credit scores.**

16. See above responses to Points 5 and 6.

**Point 10:[3] Failure to address that the lack of access and consumer transparency has hindered their ability to know the true financial cost from lower FICO credit scores.**

17. Our method assumes that consumers have been harmed by this lack of transparency and could not mitigate. The method proposed does not require consumers to research their unique concerns and does not require individual inquiry.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of May, 2017, in 2017

Edward M. Stockton

---

[3] This is labeled as point 10 on page 3 of Mr. Bingham's declaration, but does not appear to be discussed later in that declaration.

## CERTIFICATE OF SERVICE

I, Derek W. Loeser, hereby certify that on this 11th day of May, 2017, I electronically filed **Rebuttal Declaration Of Edward M. Stockton In Support Of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement And For Certification Of A Settlement Class** with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Derek W. Loeser*
Derek W. Loeser