UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHRIAR JABBARI, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>　　　　Defendants. | Case No.  15-cv-02159-VC<br><br>**ORDER REQUESTING FURTHER BRIEFING** |

　　　　The Court requests that, by no later than tomorrow, the plaintiffs and Wells Fargo separately file briefs addressing the following questions:

　　　　1.　　How did the estimated number of false accounts rise from 2.1 million in the opening brief to 3.5 million in the reply brief?

　　　　2.　　Do the parties have the ability to estimate the number of people in the class, the number in each settlement pool, the number capable of recovering for credit-related damages, the number capable of recovering for fee-related damages, the number considered "Automatically-Enrolled Claimants," and the number considered "Consultant-Identified Persons"?  If so, what are these estimates, and how were they reached?  If not, why not?

　　　　3.　　If these cases went to trial, Wells Fargo would likely be required to pay punitive damages on any claims for which they are available.  This seems true whether the claims were adjudicated on a classwide basis in court or on an individual basis in arbitration.  Has counsel for the plaintiffs unduly discounted the likelihood of a significant punitive damages recovery?

　　　　4.　　Which class members would be eligible to recover punitive damages?  Would all class members with claims under the Fair Credit Reporting Act be eligible, or just those who suffered actual damages? What about the people with common-law claims?

5.      Aside from the issue of punitive damages, there is an argument that any settlement that doesn't guarantee full compensation to all class members who suffered actual damages would be unacceptable.  How can the Court be sure that all class members who suffered actual damages will be fully compensated for actual damages?  This is a particular concern for people whose credit scores suffered as a result of Wells Fargo's conduct.

6.      What will the plaintiffs' counsel request if one of the settlement pools runs out of money for compensatory damages?

7.      Is there a way to alter the schedule in a way that allows the Court to scrutinize the experts' "credit loss" analysis, at least for the class members who submit claims on the early side, before final approval (perhaps by extending the period between the start of the claims filing process and the hearing on final approval)?

8.      The Court is tentatively inclined to reject the phrase "could have been asserted" in the release, as it seems to be unnecessary and may cause confusion.  The Court is also tentatively of the view that the overdraft claims being asserted in MDL No. 2036 should be carved out of the release.  Would these changes require the Court to reject the proposed settlement?

9.      The Court is strongly inclined to reject the portion of the agreement which calls for an injunction following preliminary approval (or following final approval, for that matter).  Does this require the Court to reject the proposed settlement?

10.     There may be an argument that officers, principals, directors, advisors, and/or affiliates should not be protected by the release language.  What effect, if any, does the release of these parties have on the scope of claims the class members are capable of asserting, and how has this effect been reflected in the final settlement value?

11.     What is the projected cost of the expert services used to evaluate credit-related damages, and how has that cost been calculated?

**IT IS SO ORDERED.**

Dated:  May 16, 2017

_____
VINCE CHHABRIA
United States District Judge