Derek W. Loeser, *admitted pro hac vice*
Gretchen Freeman Cappio, *admitted pro hac vice*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900; Fax: (206) 623-3384
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com

Jeffrey Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900; Fax: (510) 463-3901
jlewis@kellerrohrback.com

*Attorneys for Plaintiffs*
*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 15-cv-02159-VC<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF AMENDED SETTLEMENT AGREEMENT AND IN RESPONSE TO ORDER ON MOTION FOR PRELIMINARY APPROVAL**<br><br>Judge: Hon. Vince Chhabria |

No. 15-cv-02159-VC

PLAINTIFFS' BRIEF IN SUPPORT OF AMENDED SETTLEMENT AGREEMENT AND IN RESPONSE TO ORDER ON MOTION FOR PRELIMINARY APPROVAL

## I. INTRODUCTION

Plaintiffs submit the following response to the Court's May 24, 2017 Order Re Motion for Preliminary Approval ("Order"), ECF 155. The Parties appreciate the careful attention and guidance provided by the Court in the Order and the preliminary approval hearing, and have endeavored to satisfy each of the Court's concerns.[1] The result is an Amended Settlement Agreement ("Settlement Agreement") that provides broader and more extensive relief in the manner directed by the Court.

**1. The claims period should be extended to give people more time to file claims.**

The Claims period has been extended, as reflected in the proposed schedule in the Amended Proposed Order Granting Preliminary Approval of Class Action Settlement at section VII.

**2. The claims form should include an opportunity for class members to provide further description of any credit-related injury they suffered (particularly any credit-related injury resulting from something other than a hard inquiry), to allow the Court to assess whether the current formula for compensating credit-related injury is adequate. The parties should consider whether claimants should be given an opportunity to describe their credit-related injuries in narrative form.[2]**

The Claim Form now provides an opportunity for Settlement Class Members to provide additional detail in narrative form about the credit-related injuries they suffered. *See* Settlement Agreement, Ex. 4 to Ex. B. These narratives will be available for the Court to review.

Importantly, too, the Parties have agreed to expand the scope of Credit Impact Damages. The following improvements have been made in the Settlement Agreement and Exhibits A and A-1, which explain the details of the Credit Impact Damages methodology:[3]

---

[1] The terms capitalized here have the same meaning they have in the Amended Settlement Agreement.

[2] This point originally occupied the third bullet point of the Court's Order. Plaintiffs address this point second simply for purposes of exposition.

[3] As originally proposed by the Parties in their first Settlement Agreement, the Credit Impact Damages analysis accounts for a number of factors that impact a consumers' credit score, including total number of accounts, average age of those accounts, and the likelihood that a consumer is seeking new credit. Although an important component of the relief as originally proposed, the analysis was not limited to the impact of a hard credit pull on affected consumers.

| | | |
|---|---|---|
| No. 15-cv-02159-VC | 1 | PLAINTIFFS' BRIEF IN SUPPORT OF AMENDED SETTLEMENT AGREEMENT AND IN RESPONSE TO ORDER ON MOTION FOR PRELIMINARY APPROVAL |

- **Delinquency and Derogatory Report:**[4] Credit Impact Damages are now available for Authorized Claimants who suffered delinquent and derogatory marks on their credit reports as a result of fees or charges related to Unauthorized Accounts. *See id.* ¶ 9.7.1.5.

- **Seven-Year Look-Back:** Because Delinquency and Derogatory Reports remain on credit reports for up to seven years, the Credit Impact Damages analysis will factor in the increased borrowing costs of any tradelines opened within seven years of the date of the first reported delinquency. *Id.*, Ex. A at (2)(a)(iii)(1)(a).

- **Linked Accounts:** Class Members may now be compensated for harm to their credit because an unauthorized small business or consumer deposit account was linked for overdraft purposes to an *authorized* credit card. *Id.* ¶ 2.3; *see also* Preliminary Approval Hr'g Tr. at 44-46, May 18, 2017 (discussing this issue).

### 3. The schedule should be structured to allow the Court, before final approval, to scrutinize how the settlement administrator and the credit injury expert have assessed and processed a significant portion of the claims.[5]

The schedule now allows the Court to analyze the Claims process before final approval. To facilitate the Court's scrutiny, the Settlement Agreement provides that Class Counsel (in consultation with the Credit Impact Damages Experts) will provide a report on Credit Impact Damages to the Court approximately 130 days after preliminary approval of the Settlement Agreement, or at another date that the Court may set. Settlement Agreement ¶ 9.7.1.7. The report—which will make use of a sample of claimants—will include data on how Credit Impact Damages have been calculated, as well as additional analysis from the Credit Impact Damages Experts on the results of the analysis to date. *See id.*

---

[4] The Settlement defines "Delinquency or Derogatory Report" to mean certain kinds of reports that Wells Fargo made to a Consumer Reporting Agency about a delinquency, collection, or charge off. *See* Settlement Agreement ¶ 2.22.

[5] This point originally occupied the second bullet point of the Court's Order. Plaintiffs are addressing it third because they believe this order of exposition will make their discussion easier to understand.

No. 15-cv-02159-VC  2  PLAINTIFFS' BRIEF IN SUPPORT OF AMENDED SETTLEMENT AGREEMENT AND IN RESPONSE TO ORDER ON MOTION FOR PRELIMINARY APPROVAL

4. **The settlement should, to the extent possible, provide a mechanism whereby Wells Fargo gets any damaged credit scores fixed for class members. A thorough credit-repair mechanism should account for situations where suppressing negative credit information requires closing an active credit line.**

The Settlement Agreement has been amended to include a robust, detailed, and swift credit-repair mechanism, which expressly accounts for situations in which suppressing credit information would require closing an active credit line. *See* Settlement Agreement ¶¶ 9.10, 9.11, 11.2.7.

In addition, Wells Fargo will contact Early Warning Services ("EWS") and request that negative information regarding any Unauthorized consumer deposit account be removed from any EWS consumer report. EWS is a consumer reporting agency that functions like a credit bureau for deposit accounts. A negative EWS report may result in a consumer being denied the ability to open a checking or savings account with any bank that reports to EWS. *Id.* at 9.11.

5. **The settlement should give the Court the option to appoint a special master, at Wells Fargo's expense, for the purpose of scrutinizing whether the settlement and claims administration process adequately roots out credit-related injuries people may have suffered and adequately compensates people for those injuries.**

The Settlement Agreement has been amended to give the Court the option to appoint a Settlement Advisor, and the Parties have consented to a potential future appointment of a Settlement Advisor. *See* Settlement Agreement ¶ 9.7.1.6.

6. **The Court will not stay other related cases pending before other judges, nor will it enjoin class members or prospective class members from filing actions.**

The Settlement Agreement reflects this directive. *See* ¶ 2.46 of the Settlement Agreement filed on April 20, 2017 (ECF 100) and Section X.G of the Proposed Order filed on April 20, 2017 (ECF 100-1), now removed.

7. **The release language must be changed to make clear that the class members are only releasing claims based on the identical factual predicate as the claims asserted in this lawsuit, and it should, in an abundance of caution, carve out the claims currently asserted in the TCPA actions and in MDL No. 2036.**

This change has been made. *See* Settlement Agreement ¶ 2.49.

8. **The settlement should include some kind of "full-compensation" provision whereby Wells Fargo would make further payments if it becomes apparent that the class as a whole suffered significantly greater injury than is currently assumed.**

The Settlement implements two complementary safeguards, one for Compensatory Damages, and another for Non-Compensatory Damages.

- **Compensatory Damages Gross-up:** First, the Settlement Agreement now provides that in the event Net Settlement Pools 1 or 2 do not have sufficient funds to cover Compensatory Damages (Fees and Credit Impact Damages), Wells Fargo will contribute the additional funds necessary to fully fund Compensatory Damages payments under the Settlement. Settlement Agreement ¶ 9.9 (describing "gross-up" mechanism). As a result of the gross-up provision, Wells Fargo will be required to increase its total payment obligation under the Settlement in the event of a deficiency in either Net Settlement Pool. The amount of this gross-up obligation is calculated by reference to the methodology for calculating compensatory damages that the parties have agreed upon and that is laid out in the Settlement Agreement and its relevant exhibits. *See id.* ¶ 9.9.1.

- **Twenty-five Million Dollar Non-Compensatory Damage Reserve:** Second, a $25 million reserve has been established for Non-Compensatory Damages. The reserve is allocated in proportion to the size of each Pool. The reserve ensures that substantial funds (at least $19,366,000 for Pool 1, and $5,634,000 for Pool 2, respectively) will be allocated to Class Members as Non-Compensatory Damages no matter the amount of Compensatory Damages ultimately allocated to Settlement Class Members. *Id.*

9. **There should be a mechanism for online objections and opt-outs.**

The Settlement Agreement provides online mechanisms for objections and opt-outs. *See* Settlement Agreement ¶¶ 12.1, 12.6, Exs. 6 & 7 to Ex. B. Objections and opt-outs will require only substantial compliance. *See id.* ¶¶ 12.1, 12.6.

- **Online Opt-outs:** The Settlement Agreement allows Class Members to opt out using an online form available at the Settlement website (WFSettlement.com) or by downloading and submitting a PDF opt-out form and submitting by mail. *See id.* ¶ 12.1, Ex. B-6.

- **Online Objection forms:** Class Members who wish to object may download and submit a pdf objection form available on the Settlement website. *See id.* ¶ 12.6, Ex. B-7. They can then mail their objection to the Court, consistent with the Northern District's *Procedural Guidance for Class Action Settlements*,

http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last visited June 13, 2017).

**10. The settlement should make clear that substantial compliance with the requirements for objecting and opting out will be sufficient.**

This change has been made, as described above in point 9. *See* Settlement Agreement ¶¶ 12.1, 12.6.

**11. The parties should consider and evaluate the Court's suggestions for a more thorough notice procedure, including emails to current Wells Fargo customers (and former customers for whom Wells Fargo still has contact information).**

The Settlement Agreement makes two substantial improvements to the notice procedure.

- **Email Notice**: Wells Fargo has agreed to send and pay for email notice to current and former Wells Fargo customers who are potential class members, and to provide that notice with "statement stuffers" in account statements sent by mail to current Wells Fargo customers who receive statements by mail. *See* Settlement Agreement ¶¶ 2.57, 8.4, Ex. B-8.

- **Mailed Notice:** Wells Fargo has agreed to pay the cost of Mailed Notice up to $1 million for Consultant-Identified Persons, whereas previously the cost was to be paid from the Settlement Fund.

\*   \*   \*   \*

In light of the substantive changes to the Settlement Agreement discussed above, and the extensive relief provided to Class Members by the Settlement, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

Respectfully submitted,

No. 15-cv-02159-VC    5    PLAINTIFFS' BRIEF IN SUPPORT OF AMENDED SETTLEMENT AGREEMENT AND IN RESPONSE TO ORDER ON MOTION FOR PRELIMINARY APPROVAL

DATED this 13th day of June, 2017.

> KELLER ROHRBACK L.L.P.
>
> By  */s/ Derek W. Loeser*
>     Derek W. Loeser, *admitted pro hac vice*
>     Gretchen Freeman Cappio*, admitted pro hac vice*
>     Daniel P. Mensher*, admitted pro hac vice*
>     KELLER ROHRBACK L.L.P.
>     1201 Third Avenue, Suite 3200
>     Seattle, WA 98101-3052
>     (206) 623-1900; Fax: (206) 623-3384
>     dloeser@kellerrohrback.com
>     gcappio@kellerrohrback.com
>     dmensher@kellerrohrback.com
>
>     Jeffrey Lewis (Bar No. 66587)
>     KELLER ROHRBACK L.L.P.
>     300 Lakeside Drive, Suite 1000
>     Oakland, CA 94612
>     (510) 463-3900; Fax: (510) 463-3901
>     jlewis@kellerrohrback.com
>
>     Matthew J. Preusch (Bar No. 298144)
>     KELLER ROHRBACK L.L.P.
>     801 Garden Street, Suite 301
>     Santa Barbara, CA 93101
>     (805) 456-1496; Fax: (805) 456-1497
>     mpreusch@kellerrohrback.com
>
>     ***Attorneys for Plaintiffs***

# CERTIFICATE OF SERVICE

I, Derek W. Loeser, hereby certify that on this 13th day of June, 2017, I electronically filed **Plaintiffs' Brief in Support of Amended Settlement Agreement and in Response to Order on Motion for Preliminary Approval** with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Derek W. Loeser*
Derek W. Loeser