# Exhibit A

# EXHIBIT A

### CREDIT IMPACT DAMAGES METHODOLOGY

Terms defined in the Amended Stipulation and Agreement shall have the same meaning in this Exhibit A. For ease of understanding, a flow-chart summarizing the below-described methodology is attached as Exhibit A-2. This methodology is subject to change if any Consumer Reporting Agency is unable or unwilling to provide the services necessary to implement this process, and is not ordered to do so by the Court.

1. Impact of unauthorized hard pull and tradeline

    a. Step 1 – Identification of Unauthorized Credit Analysis Account(s)

        i. The Authorized Claimant must have asserted a claim for Credit Impact Damages on the Claim Form and identified either (a) the approximate calendar year(s) of the opening of the claimed Unauthorized Credit Analysis Account(s) or (b) the approximate calendar year(s) that the Authorized Claimant opened a valid credit tradeline during the Class Period that he/she believes was impacted by the claimed Unauthorized Credit Analysis Account(s).

        ii. Utilizing the name and identification number (Social Security number or other specified identification number) provided by the Authorized Claimant, Wells Fargo will search for small business checking or savings accounts and consumer or small business unsecured credit cards and unsecured lines of credit opened for that Person during the Class Period that were not used[1] or activated. If an account cannot be found, Wells Fargo will search for an Unauthorized Application that did not result in an opened account. Identified accounts or applications that did not result in an opened account will move to Step 2.

        iii. If (a) Wells Fargo does not locate at least one small business checking or savings accounts or consumer or small business unsecured credit cards or unsecured lines of credit opened for that Person for each year identified by that Person during the Class Period that were not used or activated, and (b) the claim form submitted by the Authorized Claimant indicates that the Unauthorized Credit Analysis Account or the valid credit tradeline the Claimant contends was impacted was opened prior to, or within one year after, the earliest date for which Wells Fargo has sufficient accessible records to identify unused, unactivated accounts of

---

[1] For this purpose, "not used" means there were no customer-initiated transactions in the account. A fee charged by Wells Fargo is not a customer-initiated transaction. For purposes of this analysis, a charge that is an overdraft protection payment from the Unauthorized Credit Analysis Account to another Wells Fargo account will not be treated as a customer-initiated transaction.

these types, then the Consumer Reporting Agencies will be asked to identify Wells Fargo unsecured credit cards or Wells Fargo unsecured lines of credit opened, or Unauthorized Application(s) for those accounts that did not result in an opened account during certain time frames, as follows:

1. If the Authorized Claimant indicates the approximate year in which the Unauthorized Credit Analysis Account was opened, the Consumer Reporting Agencies will be asked to identify accounts opened in the calendar year indicated on the Claim Form, as well as the calendar year immediately prior and the calendar year immediately following (i.e., in a three-year window centered on the year indicated on the Claim Form) that did not show a reported balance in any month, or Unauthorized Application(s) for those accounts that did not result in an opened account. Identified accounts or Unauthorized Application(s) will move to Step 2.

2. If the Authorized Claimant indicates the approximate year in which a valid tradeline was opened that the Authorized Claimant believes was impacted by the Unauthorized Credit Analysis Account, the Consumer Reporting Agencies will be asked to identify the valid tradeline in the calendar year indicated on the Claim Form, as well as the calendar year immediately prior and the calendar year immediately following (i.e., in a three-year window centered on the year indicated on the Claim Form). If the valid tradeline is located, the Consumer Reporting Agencies will identify any Wells Fargo unsecured credit cards or Wells Fargo unsecured lines of credit that were (a) opened in the twelve-month period prior to the opening of the valid tradeline and (b) did not show a reported balance in any month, or Unauthorized Application(s) for those accounts that did not result in an opened account. Identified accounts or Unauthorized Application(s) will move to Step 2.

b. Step 2 – Identify subsequent tradelines

i. For each Unauthorized Credit Analysis Account identified in Step 1, the Consumer Reporting Agencies will identify all tradelines opened by the Authorized Claimant in the shortest of:

1. the 12 months following the opening of any Credit Analysis Account or application that did not result in an opened account;

2. the period from the credit inquiry until the credit inquiry and tradeline (or just the credit inquiry if a tradeline was never opened as a result of the inquiry) associated with Credit Analysis Account were suppressed by the Consumer Reporting Agency; or

2

       3. the period from the credit inquiry until the date of the first Delinquency or Derogatory Report associated with that Credit Analysis Account.

    ii. If no new tradeline is identified during the specified period, there are no Credit Impact Damages associated with the credit inquiry and tradeline for that Credit Analysis Account and the analysis of that account terminates unless there was a Delinquency or Derogatory Report for the account, in which case the methodology for Delinquency and Derogatory Reports on Unauthorized Credit Analysis Accounts outlined below will be applied.

c. Step 3 – Measure "but for" credit score

    i. The Consumer Reporting Agency from which Wells Fargo obtained the credit report for the account will compute a FICO 08 score using an archived credit bureau report 3 months after the opening of the unauthorized account exactly as it would ordinarily compute the score. The Consumer Reporting Agency will report this "actual score" to the Credit Impact Damages Experts.

    ii. The same Consumer Reporting Agency will also compute a "but for" FICO 08 credit score on the same archived credit bureau report in 1.c.i., above, but under the assumption that the Wells Fargo hard credit inquiry and the Wells Fargo unauthorized credit account did not occur. This will require that the Consumer Reporting Agency remove the inquiry and the unauthorized account (including any Delinquency and Derogatory Report for that account) from the credit report prior to running the FICO 08 score calculation. The Consumer Reporting Agency will report the resulting "but for" credit score to the Credit Impact Damages Experts.

    iii. If the Consumer Reporting Agencies is unable to calculate either the actual credit score or the "but for" credit score (or both) associated with an Unauthorized Credit Analysis Account, it will be assumed that the difference between the actual and "but for" credit score associated with that account is equal to the median difference between actual and "but for" credit scores for Unauthorized Credit Analysis Accounts without Delinquency and Derogatory Reports opened during the same calendar year.

    iv. If the "but for" credit score associated with a Credit Analysis Account is the same or higher than the actual credit score, there are no Credit Impact Damages associated with that Credit Analysis Account and the analysis of that account terminates unless there was a Delinquency or Derogatory Report for the account, in which case the methodology for Delinquency and Derogatory Reports on Unauthorized Credit Analysis Accounts outlined below will be applied.

3

    d. Step 4 – Communicate information to Credit Impact Damages Experts

        i. The Consumer Reporting Agencies will communicate to the Credit Impact Damages Experts:

            1. A unique, anonymous, identifier for each customer or the account number for each identified Unauthorized Credit Analysis Account

            2. An initial FICO 8 score at the time of the initial hard pull credit inquiry or the date of the opening of the Unauthorized Credit Analysis Account, if the date of the initial hard pull credit inquiry is unknown;

            3. An actual FICO 8 score three months after the date determined in 1.d.i.3.;

            4. A "but for" FICO 8 score three months after the initial hard pull credit inquiry; and

            5. Identification of the type of each tradeline identified in Step 2, above, as well as the date it was opened, and the amount of the tradeline.

    e. Step 5 – Measure Credit Impact Damages

        i. As more fully described in Exhibit A-1, Credit Impact Damages will be calculated by the Credit Impact Damages Experts by estimating the amount of additional borrowing costs that an Authorized Claimant would have incurred as a result of Credit Analysis Accounts.

    f. Step 6 – Identification of Credit Impact Damages for Each Claimant

        i. If it becomes necessary to do so as a result of the Consumer Reporting Agencies unwillingness to provide information in a non-anonymized manner, and in the absence of a Court Order directing them to do so, the Credit Impact Damages Experts will provide to the Consumer Reporting Agencies the amount of Credit Impact Damages for each unique, anonymous, identifier. These damage amounts will be rounded to the nearest $5 increment. If there are any rounded damage amounts that are not common to at least 5 separate identifiers, the Credit Impact Damages Experts will increase the damage amounts to the extent necessary to ensure that all reported damage amounts are assigned to at least five separate identifiers.

        ii. The Consumer Reporting Agencies will use the information provided by the Credit Impact Damages Experts to determine the amount of Credit Impact Damages assigned to each Claimant and will provide that information to the Credit Impact Damages Experts.

2. Impact of Delinquency and Derogatory Reports ("DDR")

    a. DDR Impact for Unauthorized Credit Analysis Accounts

        i. Step 1 – Identification of Unauthorized Credit Analysis Accounts

            1. Unauthorized Credit Analysis Accounts will be identified using the method outlined in Section 1.a., above.

        ii. Step 2 – Identification of DDR

            1. For each Unauthorized Credit Analysis Account identified pursuant to Section 1.a, above and for which Wells Fargo has an account number, Wells Fargo will look for DDR reporting and determine:

                a. Whether any delinquency or derogatory report was made regarding the Unauthorized Credit Analysis Account and, if so:

                    i. The date of first delinquency; and

                    ii. The date and type of the most serious DDR.

        iii. Step 3 – Identify impacted tradelines

            1. The Consumer Reporting Agencies will identify the type and amount of each tradeline opened by the Authorized Claimant in the shorter of the following time periods:

                a. 7 years following date of first delinquency; or

                b. From the date of first delinquency until the date the tradeline was suppressed by the Consumer Reporting Agency.

            2. If no new tradeline is identified during the specified period, there are no Credit Impact Damages associated with the DDR for that Credit Analysis Account and the analysis of that account terminates.

        iv. Step 4 – Measure "but for" credit scores

            1. The Consumer Reporting Agency will compute a FICO 08 score using an archived credit bureau report 1 month prior to the opening of any tradeline opened after the date of first delinquency on the exactly as it would ordinarily compute the score.  The Consumer

5

        Reporting Agency will report this "actual score" to the Credit Impact Damages Experts.

    2. The Consumer Reporting Agency will also compute a "but for" FICO 08 credit score on the same archived credit bureau report(s) in 2.a.iv.1., above, but under the assumption that the Wells Fargo unauthorized credit account did not occur. This will require that the Consumer Reporting Agency remove the unauthorized account (including any Delinquency and Derogatory Report for that account) from the credit report prior to running the FICO 08 score calculation. The Consumer Reporting Agency will report the resulting "but for" credit score to the Credit Damages Experts.

    3. In the event that running multiple "but for" analyses proves administratively infeasible, a single "but for" score selected to adequately compensate the Authorized Claimant may be used with respect to all subsequent tradelines that may have been impacted.

    4. If the Consumer Reporting Agency is unable to calculate either the actual credit score or the "but for" credit score (or both) associated with an Unauthorized Credit Analysis Account, it will be assumed that the difference between the actual and "but for" credit score associated with that account is equal to the median difference between actual and "but for" credit scores for Unauthorized Credit Analysis Accounts with Delinquency or Derogatory Reports opened during the same calendar year.

    5. If all "but for" credit scores associated with DDR for a Credit Analysis Account are the same or higher than the corresponding actual credit scores, there are no Credit Impact Damages associated with DDR on that Credit Analysis Account and the analysis of that account terminates

  v. Step 5 – Communicate information to Credit Impact Damages Experts

    1. In addition to the information identified in Section 1.d., above, the Consumer Reporting Agency will communicate to the Credit Impact Damages Experts the following information concerning each Unauthorized Credit Analysis Account with DDR:

        a. Identification of the type of each tradeline identified in Section 2.a.iii., above, as well as the date it was opened, and the amount of the tradeline;

        b. Each actual FICO 8 score calculated in connection with the Unauthorized Credit Analysis Account with DDR; and

    c. Each "but for" FICO 8 score calculated in connection with the Unauthorized Credit Analysis Account with DDR.

 vi. Step 6 – Calculate Credit Impact Damages

  1. As more fully described in Exhibit A-1, Credit Impact Damages will be calculated by the Credit Impact Damages Experts by estimating the amount of additional borrowing costs that an Authorized Claimant would have incurred as a result of Credit Analysis Accounts.

 vii. Step 7 – Identification of Credit Impact Damages for Each Claimant

  1. If it becomes necessary to do so as a result of the Consumer Reporting Agencies unwillingness to provide information in a non-anonymized manner, and in the absence of a Court Order directing them to do so, the Credit Impact Damages Experts will provide to the Consumer Reporting Agencies the amount of the Credit Impact Damages for each unique, anonymous, identifier. These damage amounts will be rounded to the nearest $5 increment. If there are any rounded damage amounts that are not common to at least 5 separate identifiers, the Credit Impact Damages Experts will increase the damage amounts to the extent necessary to ensure that all reported damage amounts are assigned to at least five separate identifiers.

  2. The Consumer Reporting Agencies will use the information provided by the Credit Impact Damages Experts to determine the amount of Credit Impact Damages assigned to each Claimant and will provide that information to the Credit Impact Damages Experts.

b. DDR for Authorized Credit Analysis Accounts

 i. Step 1 – Identification of Authorized Credit Analysis Account

  1. For Consultant-Identified Persons

   a. For each Authorized Claimant who submits a Claim Form indicating that a checking or savings account identified in the Consultant Analysis is unauthorized and asserts a claim for Credit Impact Damages:

    i. Wells Fargo will determine if the checking or savings account identified in the Consultant Analysis had overdraft protection linked to a credit card.

7

      1. If there is no overdraft protection ("ODP") link between the checking or savings account and a credit card, there is not Credit Impact Damage associated with that checking or savings account and the analysis as to that account is terminated. [2]

   ii. If there was an ODP link between the checking or savings account identified in the Consultant Analysis and a credit card, Wells Fargo will determine whether there were any ODP transfers from the card to the deposit account.

      1. If there were no ODP transfers between the credit card and the checking or savings account identified by the Consultant Analysis, there were not Credit Impact Damages associated with that checking or savings account and the analysis of that account is terminated.

   iii. If there were ODP transfers between the credit card and the checking or savings account identified by the Consultant Analysis, Wells Fargo will determine whether a delinquency was reported on the credit card within 120 days of the ODP transfer and whether the delinquent balance was limited to the amount of the ODP transfer and any ODP fee.

      1. If there was no delinquency reported on the credit card within 120 days or if the credit card carried an additional balance at the time of the delinquency that was not a result of the ODP transfer or any associated ODP fee, there was no Credit Impact Damage and the analysis of the account is terminated.

      2. Credit card accounts that remain move to Step 2, below.

  2. 2009-2017 unused accounts

---

[2] If the checking or savings account was a small business checking or savings account, there may have been a hard pull credit inquiry associated with opening the account, in which case the analysis for Unauthorized Credit Analysis Accounts outlined in Section 1, above, will be performed without regard to whether the account had ODP or whether the ODP was ever utilized.

8

a. For each claimant who claims both fee damages and credit impact damages and for whom Wells Fargo locates a consumer or small business checking or savings account opened between January 1, 2009 and April 20, 2017 with no customer-initiated activity:

   i. Wells Fargo will determine if that unused deposit account had an ODP link to a credit card.

      1. If there is no ODP link, there is no Credit Impact Damage associated with that checking or savings account and the analysis of that account is terminated.[3]

   ii. If the unused checking or savings account had an ODP link to a credit card, Wells Fargo will determine whether there were any ODP transfers from the credit card to the deposit account.

      1. If there were no ODP transfers, there is no Credit Impact Damage associated with that checking or savings account and the analysis of that account is terminated.

   iii. If there were ODP transfers from the credit card to the unused checking or savings account Wells Fargo will determine whether a delinquency was reported on the credit card within 120 days of the ODP transfer and whether the delinquent balance was limited to the amount of the ODP transfer and any ODP fee.

      1. If there was no delinquency reported on the credit card within 120 days or if the credit card carried an additional balance at the time of the delinquency that was not a result of the ODP transfer or any associated ODP fee, there was no Credit Impact Damage and the analysis of the account is terminated.

---

[3] If the checking or savings account was a small business checking or savings account, there may have been a hard pull credit inquiry associated with opening the account, in which case the analysis for Unauthorized Credit Analysis Accounts outlined in Section 1, above, will be performed without regard to whether the account had ODP or whether the ODP was ever utilized.

9

        2. Credit card accounts that remain move to Step 2, below.

  ii. Steps 2-7 – Utilize the process outlined above for Unauthorized Credit Analysis Accounts, see Sections 2.a.ii-2.a.vii.