UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHRIAR JABBARI, ET AL., <br><br>    Plaintiffs, <br><br> v. <br><br> WELLS FARGO & COMPANY, et al., <br><br>    Defendants. | Case No.  15-cv-02159-VC <br><br> **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL, DENYING MOTIONS TO INTERVENE** <br><br> Re: Dkt. Nos. 101, 113, 116, 117, 119 |

In response to the Court's comments at the preliminary approval hearing, the parties negotiated a revised settlement that guarantees classwide compensation for actual damages, supplements compensation for noncompensatory damages, and provides a better process for claimant input and court oversight prior to final approval.  The parties have expanded the anticipated scope of credit-impact damages, narrowed (or at least clarified) the scope of preclusion, and simplified the process for opting out.  Notice is also more comprehensive, and at no added cost to the class.  Further scrutiny will still be required at final approval, after the Court evaluates – perhaps with the assistance of a special master – any data generated through the claims process that bears on the breadth and depth of class injury and the sufficiency of settlement.  However, for the purpose of preliminary approval, the Court is satisfied that the revised settlement is fair, reasonable, and adequate within the meaning of Rule 23.[1]

---

[1] The settlement agreement is approved on the understanding that the term "barred and enjoined," appearing at sections 9.15 and 9.17 of the revised agreement (Dkt. No. 162), is unenforceable to

The Court has considered the proposed intervenors' objections to the settlement and does not find that they warrant denial of the preliminary approval motion. To the extent the proposed intervenors object to the lack of discovery in this case, their concerns are adequately addressed by the parties' recent revisions. The Court is cognizant of the proposed intervenors' concern that further discovery is required to uncover the scope of Wells Fargo's alleged wrongdoing. But if discovery of that kind is itself a benefit of pursuing litigation rather than reaching an early settlement, it's a benefit that must be weighed against the costs of further proceedings and the risk of forfeiting a recovery of real value to the injured class members. Here, the balance of costs and benefits weighs in favor of the parties' early settlement.

The proposed intervenors' objections to the size of recovery aren't entirely baseless. It is at least conceivable, for example, that the sum of statutory damages under FCRA could exceed the current value of the settlement fund. It is also conceivable that certain state-law identity-theft claims could result in recovery separate from that available under FCRA. But the Court finds that the current settlement adequately discounts from the upper limit of feasible recovery given the cost and risk associated with bringing FCRA and state-law actions, either individually or on a classwide basis. Although the Court has doubts about Wells Fargo's continued ability to enforce its adhesive arbitration agreements and class waivers (notwithstanding the Court's prior ruling on that issue), FCRA plaintiffs would face significant risk at the class certification stage even after denial of a motion to compel. This is even truer of state-law identity-theft plaintiffs. Furthermore, relatively few state statutes provide for identity-theft actions that precede criminal prosecution and offer recovery that's nonduplicative of FCRA damages. *See* Dkt. No. 133 at 2-6.

---

the extent it refers to this Court's authority to enjoin subsequent actions. As previously explained, this Court will not "bar" or "enjoin" any action as a result of this class settlement. A subsequent action will only be "barred" to the extent the court in which it is filed determines the action is precluded.

And overall, the amount Wells Fargo is required to pay under the settlement agreement is significant, especially considering the apparently low degree of actual financial harm suffered by the class members as a result of the bank's actions.

All remaining objections either lack merit or are adequately addressed by the revised settlement.  Notice has been significantly expanded – and the claims process lengthened – to account for the likelihood that there exist class members whose identities are not practical or possible to identify from Wells Fargo's existing records.  Individualized damages can now be described in the claims-form narrative the parties have approved.  And the RICO and Stored Communications Act claims floated by certain proposed intervenors are dubious.

As the proposed intervenors have offered no reason to believe the ordinary objection process is an inappropriate or inconvenient means of making themselves heard through the remainder of this case, the motions to intervene are denied.

In light of the foregoing, the motion for preliminary approval is granted, and the parties' proposed order is adopted below, with limited modifications:

I.   **INTRODUCTION**

Plaintiffs Shahriar Jabbari and Kaylee Heffelfinger, and proposed settlement class representatives Jose Rodriguez and Antonette Brooks, individually and on behalf of the Settlement Class ("Plaintiffs"), and Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. ("Defendants") have reached a proposed settlement, as set forth in the Parties' Amended Stipulation and Agreement of Class Action Settlement and Release (the "Stipulation" or the "Settlement").  Plaintiffs, on behalf of themselves and the Settlement Class (as hereinafter defined), have applied to the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for: (1) an order approving the settlement of the above-captioned litigation (the

"Action") in accordance with the Stipulation; (2) dismissal of the Action with prejudice as against all of the Released Parties (as defined in the Stipulation), upon the terms and conditions set forth in the Stipulation; and (3) certification of the Action as a class action for settlement purposes only.

Plaintiff Jabbari filed a class action complaint against Defendants on May 13, 2015, alleging that Defendants had opened multiple accounts in his name without his knowledge or consent.  Dkt. No. 1.  On June 24, 2015, Plaintiff Heffelfinger filed a putative class action complaint captioned *Heffelfinger* v. *Wells Fargo & Co., et al.*, Case No. 3:15-cv-02942 (N.D. Cal.), asserting similar claims.  On July 30, 2015, Plaintiff Heffelfinger voluntarily dismissed *Heffelfinger v. Wells Fargo & Co., et al.*, Case No. 3:15-cv-02942, and Plaintiffs consolidated their claims against Wells Fargo and filed a Consolidated Amended Class Action Complaint on behalf of themselves and all others similarly situated.  Dkt. No. 37.  The Court granted Defendants' motion to compel arbitration on September 23, 2015.  Dkt. No. 69.  The following month, Plaintiffs appealed that order.  Dkt. No. 70.

While Plaintiffs' appeal was pending, the parties began settlement discussions.  Settlement at 2-4.  On September 8, 2016, the parties notified the Ninth Circuit that they had reached a settlement and stipulated that the appeal be dismissed, so that jurisdiction would re-vest in this Court for the purpose of settlement approval proceedings.  *See* Dkt. No. 72.

This matter has now come before the Court pursuant to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class (the "Motion").  Dkt. No. 101.  Defendants have filed a brief in support of the Court's entry of the proposed Preliminary Approval Order, Dkt. No. 106, and the Parties submitted supplemental briefing in response to questions posed by the Court on May 17, 2017.  Dkt. Nos. 145, 146.

The Court finds that it has jurisdiction over the Action, the Parties, and all Settlement Class Members for purposes of settlement under 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d).

The Court held a Preliminary Approval Hearing on May 18, 2017, received amended settlement papers from the Parties on June 13, 2017, and has considered all of the presentations and submissions related to the Motion and is otherwise fully advised of all relevant facts in connection therewith, and has found good cause for entry of the following Order.

**IT IS HEREBY ORDERED AS FOLLOWS:**

(1)     This Order (the "Preliminary Approval Order") hereby incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation;

(2)     The Court, having fully reviewed Plaintiffs' Motion, the supporting Memorandum and Declarations filed in support thereof, and supplemental briefing, determines that the Settlement appears to be the product of thorough, serious, informed, and non-collusive negotiations between experienced attorneys familiar with the legal and factual issues of this case; has no obvious deficiencies; does not improperly grant preferential treatment to the Settlement Class Representatives or segments of the Class; and appears to be fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure, such that preliminary approval of the Settlement should be granted, notice of the Settlement should be directed to the Settlement Class Members, and a Fairness Hearing should be set.

**II.     THE SETTLEMENT CLASS**

The Court hereby certifies, for settlement purposes only pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, a Settlement Class defined as follows:

All Persons for whom Wells Fargo or Wells Fargo's current or former subsidiaries, affiliates, principals, officers, directors, or employees opened an Unauthorized Account or

5

submitted an Unauthorized Application, or who obtained Identity Theft Protection Services from Wells Fargo during the period from May 1, 2002 to April 20, 2017, inclusive.

The following entities and individuals are excluded from the Class:

  A. Defendants' officers, directors and employees;

  B. Judicial officers and associated court staff assigned to this case, and the immediate family members of such officers and staff; and

  C. All those otherwise in the Class who or which timely and properly exclude themselves from the Class as provided in the Agreement.

### III. THE SETTLEMENT FUND

The Settlement creates a non-reversionary settlement fund of $142 million, which Wells Fargo shall cause to be deposited into the Escrow Account within 10 business days of entry of this Preliminary Approval Order.

The Escrow Account established by this Order is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-l of the U.S. Internal Revenue Code of 1986, as amended.  Class Counsel shall, in its sole discretion, appoint an escrow agent who shall hold and distribute funds as provided herein.  All costs and expenses of the Escrow Agent, including taxes, if any, shall be paid from the funds under its control, including any interest earned on the funds.

After deductions for any attorneys' fees and costs that Class Counsel may apply for and the Court may award, the Named Plaintiff Service Awards, any Notice and Administration Costs, the cost of the Claims Review Process, and other Court-approved costs, expenses, or amounts, the balance of the non-reversionary $142 million settlement fund will be distributed to Authorized Claimants as set out in in the proposed Plan of Allocation set forth in Paragraph 9 of the Stipulation.

To implement the Plan of Allocation, a Settlement Administrator, working under the supervision of Class Counsel and subject to the jurisdiction of this Court, shall administer a process of receiving, reviewing, and approving or denying Settlement Class Member claims.

First, Authorized Claimants will be reimbursed from the Net Settlement Amount for out-of-pocket losses stemming from Unauthorized Accounts and Unauthorized Applications. Such out-of-pocket losses shall consist of two components: (1) increased borrowing cost due to credit score impact as a result of a Credit Analysis Account ("Credit Impact Damages"); and (2) fees assessed by Wells Fargo in connection with certain Unauthorized Accounts ("Fee Damages"). Authorized Claimants who activated or used an Unauthorized Credit Analysis Account are not eligible to receive Credit Impact Damages in connection with such account; however, they remain entitled to receive a Non-Compensatory Payment in connection with such account. Consultant-Identified Persons are not eligible to receive Fee Damages in connection with the account, product, or service identified through the Consultant Analysis as potentially being an Unauthorized Account, as any fees assessed by Wells Fargo in connection with such account, product, or service have been or will be reimbursed through a separate process. Consultant-Identified Persons remain eligible to receive Fee Damages only in connection with Unauthorized Accounts which were not identified through the Consultant Analysis. Consultant-Identified Persons are eligible to receive Credit Impact Damages in connection with an Unauthorized Credit Analysis Account, regardless of whether the Unauthorized Credit Analysis Account was identified through the Consultant Analysis.

Given the complexity of calculating Credit Impact Damages, Class Counsel has retained Credit Impact Damages Experts who have developed a process for determining the amount of compensation that will be provided to Settlement Class Members who claim Credit Impact

7

Damages, as reflected in Exhibit A to the Stipulation (Dkt. Nos. 162-1 to 162-3). The process of calculating Credit Impact Damages entails the use of historical credit reporting information that may be too old or otherwise inappropriate under the Fair Credit Reporting Act for use in determining consumers' eligibility for credit at this time. Use of such information for purposes of this Settlement, however, is appropriate for the accurate assessment of the historical impact of alleged misconduct on past extensions of credit to the consumer. *See* 15 U.S.C. § 1681b(a)(1) (permitting consumer reporting agency to furnish consumer report in response to a court order). For that reason, the Settlement contemplates that Consumer Reporting Agencies will utilize such historical information as part of the Plan of Allocation.

Second, after Authorized Claimants are compensated for their out-of-pocket losses, the balance of the Net Settlement Fund will be allocated on a *pro rata* basis defined by reference to the number of claimed Unauthorized Accounts, Unauthorized Applications, and instances of authorized enrollment in Identity Theft Protection Services identified on Authorized Claimants' Claims or, for Automatically-Enrolled Claimants who do not separately submit a Claim, on the basis of one Unauthorized Account, as set forth in the Plan of Allocation in Paragraph 9 of the Stipulation. Automatically-Enrolled Claimants who submit a Claim will be entitled to receive a Non-Compensatory Damages Payment defined by reference to the number of claimed Unauthorized Accounts, Unauthorized Applications, and authorized enrollment in Identity Theft Protection Services listed on their Claim (that is, the account or application that was the subject of the customer complaint identified through the Customer Complaint Review Process will be assumed to be included in the Automatically-Enrolled Claimant's Claim).

This Plan of Allocation ensures that the per-account compensation for accounts opened between 2009 and 2017 will not be diminished in any way by any compensation paid related to

accounts opened between 2002 and the end of 2008. In no case will any of the $142 million Settlement Fund revert to Wells Fargo if the Settlement is granted final approval.

Wells Fargo does not admit wrongdoing in the Settlement. In exchange for the benefits conferred on Settlement Class Members by the Settlement, Settlement Class Members who do not opt out agree to release all claims that could have been asserted, or that arise out of the same transactions or occurrences as the claims against Wells Fargo entities that were or could have been asserted in this action, commensurate with the res judicata effect at the conclusion of the litigation, as described in the Settlement. None of Wells Fargo's obligations under its September 2016 settlements with government agencies will be diminished by this Settlement.

## IV.     **PRELIMINARY FINDINGS**

The Court preliminarily finds that this Settlement complies with the Northern District of California's Procedural Guidance for Class Action Settlements and this Court's standard for preliminary approval of class action settlements. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035-37 (N.D. Cal. 2016). Furthermore, the Court finds, on a preliminary basis, that the Settlement appears to be within the range of reasonableness of a settlement which could ultimately be given final approval by this Court, and that the Settlement is fair and reasonable to Settlement Class Members when balanced against the probable outcome of further litigation, liability and damages issues, and potential appeals of rulings, in particular given the Parties' dispute over the mandatory arbitration and class action waiver provisions contained in Defendants' Customer Account Agreements.

The Court preliminarily finds, for purposes of settlement only, that the proposed Settlement Class as defined above meets the numerosity requirement of Rule 23(a)(1) such that joinder would be impractical; that there are questions of law and fact common to the Settlement Class as required by Rule 23(a)(2); that these common questions predominate over individual

questions as required by Rule 23(b)(3); that the claims of the proposed Settlement Class Representatives are typical of the claims of the Class under Rule 23(a)(3).

In addition, the Court preliminarily finds that the Class Counsel and Plaintiffs will fairly and adequately represent the interests of the Class under Rule 23(a)(4), have done so, and are adequate under Rule 23(g)(1) and (4), and, therefore, hereby appoints them as Class Counsel and class representatives, under Rules 23(c)(1)(B) and 23(g) to implement and complete the Settlement Approval Process.

## V.     NOTICE TO CLASS MEMBERS

Under Rule 23(c)(2), the Court approves, as to content and format, the Mailed Notices (Dkt. Nos. 162-5, 162-6), Long-Form Notice (Dkt. No. 162-7), Summary Notice (Dkt. No. 162-8), and Statement Notice (Dkt. Nos. 162-10, 164-1) (collectively, "Notice") with the following modifications:

- Section 39 of the revised long-form notice (Dkt. No. 162-7) will be altered before distribution to make clear that mediation does not impose a binding result on the parties, but depends on the parties' mutual agreement.

- Section 42 of the revised long-form notice (Dkt. No. 162-7) will be altered before distribution to include an appropriate email address for class counsel.

The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Shannon Wheatman, filed on April 20, 2017, and the Parties' Stipulation – including direct First Class mailed notice to all Automatically-Enrolled Claimants and Consultant-Identified Persons, email notice to certain current and former Wells Fargo customers, notice in certain Wells Fargo monthly (or, as appropriate, quarterly) account statements, as well as an extensive and targeted publication campaign – is the best method of

notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process.

The Court further finds that the Mailed Notices, Long-Form Notice, Summary Notice, Statement Notice, Claim Form, Opt-Out Form, Objection Form (Dkt. Nos. 162-5 to 162-12, 164-1), the Notice Plan, and the Plan of Allocation fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Mailed Notices, Long-Form Notice, Summary Notice, Statement Notice, Claim Form, Opt-Out Form, Objection Form and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

Specifically, the Court further finds that the Notice and the Notice Plan adequately advise the Settlement Class about:

  A. The class action;

  B. The terms of the proposed Settlement, the benefits available to each Settlement Class Member, and proposed fees and costs to Class Counsel;

  C. Each Settlement Class Member's right to object or opt out of the settlement, and the timing and procedures for doing so;

  D. Preliminary court approval of the proposed Settlement; and

  E. The date of the Fairness Hearing as well as the rights of Settlement Class Members to file documentation in support of or in opposition to and appear in connection with said hearing.

The Court further finds that the mailing to the last known address for Automatically-Enrolled Claimants and Consultant-Identified Persons with appropriate skip tracing and mail forwarding for Notices returned undeliverable, emailing current and former customers for whom

Wells Fargo opened consumer and small business checking accounts, consumer and small business savings accounts, and unsecured credit cards and unsecured lines of credit or who enrolled in Identity Theft Protection Services during the Class Period, and including notice in monthly (or, as appropriate, quarterly) statements for Wells Fargo consumer and small business checking, savings, unsecured credit card and unsecured line of credit accounts constitutes reasonable notice to Settlement Class Members of their rights with respect to the class action and proposed Settlement.

For the purpose of identifying and providing notice to potential Settlement Class Members, the Court hereby orders Wells Fargo to provide or cause to be provided to the Settlement Administrator within 60 business days of the date of entry of the Preliminary Approval Order the names, Personal Identification, last known addresses, and, if known, email addresses, of the Automatically-Enrolled Claimants and Consultant-Identified Persons to the extent such information is available at that time, and for each Consultant-Identified Person, information on the type of account and account number which was identified through the Consultant Analysis for purposes of including such information in the Claim Form sent and made available on the Settlement Website to each such Consultant-Identified Person.  If additional Automatically Enrolled Claimants or Consultant-Identified Persons are subsequently identified, Wells Fargo shall promptly provide or cause to be provided the names, Personal Identification, last known addresses and, if known, email addresses of those Persons to the Settlement Administrator, and for each Consultant-Identified Person, information on the type of account and account number which was identified through the Consultant Analysis.

Wells Fargo shall also disclose to the Settlement Administrator the following information (to the extent such information is available) regarding Settlement Class Members claiming to

have an Unauthorized Credit Analysis Account: an indication of whether that Unauthorized Credit Analysis Account was activated or used by the Settlement Class Member, the date of the hard credit inquiry associated with that Unauthorized Credit Analysis Account, the relevant Consumer Reporting Agency for the hard credit inquiry, and information concerning any Delinquency or Derogatory Report associated with that Unauthorized Credit Analysis Account. Wells Fargo shall also disclose to the Settlement Administrator the following information (to the extent such information is available) regarding Settlement Class Members claiming to have an Authorized Credit Analysis Account: information concerning any Delinquency or Derogatory Report associated with that Authorized Credit Analysis Account. Wells Fargo shall also disclose to the Settlement Administrator transaction records or information for the purpose of calculating Fee Damages, as described in Paragraph 9.7.2 of the Stipulation.

The Settlement Administrator shall not provide this information to any Person other than Class Counsel and the Credit Impact Damages Experts. Class Counsel and the Credit Impact Damages Experts shall keep such information confidential and will use the information only in connection with the administration of the Settlement. In addition, the Settlement Administrator, Class Counsel, and the Credit Impact Damages Experts shall adopt data security measures reasonably calculated to protect that information from unauthorized disclosure.

The Settlement Administrator shall mail the Mailed Notices to the Automatically-Enrolled Claimants and Consultant-Identified Persons substantially in the form attached hereto as Exhibits 1.1 and 1.2, respectively (Dkt. Nos. 162-5, 162-6), by no later than 40 days after the Settlement Administrator begins receiving the names, Personal Identification, and last known addresses of the Automatically-Enrolled Claimants and Consultant-Identified Persons from Wells Fargo. (If an Automatically-Enrolled Claimant is also a Consultant-Identified Person, that

Person shall receive the Mailed Notice which will include information on the type of account and account number which was identified through the Consultant Analysis for that Person.)

The Court otherwise hereby directs that such notice be disseminated in the manner set forth in the Settlement to Settlement Class Members under Rule 23(e)(1).

## VI.     SETTLEMENT ADMINISTRATION

The Court finds that the costs associated with the notice plan described above and the estimated costs of administering the Settlement are fair and reasonable.

The Court approves Rust Consulting to act as the class action administrator ("Settlement Administrator").

To assist the Court in its evaluation of Credit Impact Damages, Class Counsel shall file a report approximately 130 days after Preliminary Approval, or on such other date as the Court shall set, addressing the implementation of the Credit Impact Damages process.

## VII.     SCHEDULE AND PROCEDURES

The Court orders the following schedule and procedures for disseminating Notice, filing claims, requesting exclusion from the class, filing objections to the Settlement, and filing the motion for final approval:

| Date | Event |
| --- | --- |
| **60 days after Preliminary Approval Order** | Defendants will provide Settlement Administrator information regarding Automatically-Enrolled Claimants and Consultant-Identified Persons |

| | |
|---|---|
| **60-100 Days after Preliminary Approval Order** | Settlement Administrator will issue notice on a rolling basis as information is received from Defendants |
| **120 Days after Preliminary Approval Order** | Class Representatives to file Motion for Final Approval and/or Attorneys' Fees |
| **130 Days after Preliminary Approval Order** | Class Counsel to submit interim report to the Court regarding implementation of the Credit Impact Damages process |
| **150 Days after Preliminary Approval Order** | Objection and Opt-Out Deadline |
| **170 Days after Preliminary Approval Order** | Class Representatives to file Reply on Final Approval and/or Attorneys' Fees |
| **180 Days after Preliminary Approval Order** | Fairness Hearing |
| **210 Days after Preliminary Approval Order** | Deadline to Submit Claim Form |

## VIII.   FAIRNESS HEARING

The Fairness Hearing shall take place on Thursday, January 4, 2018, at 10:00 a.m. at the United States District Court for the Northern District of California, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Vince Chhabria, to determine whether the proposed Settlement is fair, reasonable, and adequate and should receive the Court's final approval.

      A.      Objections by Settlement Class Members (who do not timely elect to exclude themselves from the Class) to the proposed Settlement will be considered if filed in writing with the clerk within 150 days of the Preliminary Approval Order.

      B.      At the Fairness Hearing, Settlement Class Members (who do not timely elect to exclude themselves from the Class) may be heard orally in support of or in opposition to the Settlement, provided each such person file with the clerk not later than two weeks before the Fairness Hearing a written notification of his or her desire to appear personally, indicating (if in opposition to the Settlement) briefly the nature of the objection. Failure to comply with the notification requirement may be excused upon a showing of good cause.

      C.      Settlement Class Counsel and counsel for Defendants should be prepared at the hearing to respond to objections filed by Settlement Class Members and to provide other information, as appropriate, bearing on whether or not the Settlement should be approved.

## IX. **OTHER PROVISIONS**

Settlement Class Counsel and Defendants are authorized to take, without further Court approval, all necessary and appropriate steps to implement the Settlement including the approved Notice Program, including confirmatory discovery as outlined in the Motion.

The deadlines set forth in this Preliminary Approval Order, including, but not limited to, adjourning the Fairness Hearing, may be extended by Order of the Court, for good cause shown, without further notice to the Settlement Class Members, except that notice of any such extensions shall be included on the Settlement Website. Settlement Class Members should check the Settlement Website regularly for updates and further details regarding extensions of these deadlines. Exclusions and Objections must meet the deadlines and follow the requirements set

forth in the approved Class Notice in order to be valid, although the Court will accept Exclusions and Objections it deems to be in substantial compliance.

If, for any reason, the Court does not execute and file an Order of Final Approval, or if the Effective Date does not occur for any reason whatsoever, the proposed Settlement and the proposed Settlement subject of this Order and all evidence and proceedings had in connection therewith, shall be without prejudice to the status quo ante rights of the parties to the litigation as more specifically set forth in the Settlement.

Class Counsel and Defendants' Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with the Preliminary Approval Order or the Settlement, including making, without further approval of the Court, minor changes to the Settlement, to the form or content of the Notice, or to any other exhibits that the Parties jointly agree are reasonable or necessary. The Court will be advised of all such changes in the motion for final approval.

**X.    SUMMARY**

In summary, the Court:

    A.    certifies, for settlement purposes only, the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

    B.    preliminarily approves the Settlement as being a fair, reasonable, and adequate settlement as to Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure;

    C.    appoints the proposed settlement class representatives and Named Plaintiffs as Class Representatives, appoints their counsel as Class Counsel to execute this Settlement on behalf of Named Plaintiffs and the Settlement Class, and authorizes

Class Counsel to take approved steps to proceed with this Settlement on behalf of the Settlement Class;

  D. orders Defendants to provide or cause to be provided to the Settlement Administrator and Class Counsel certain customer-identifying information, and imposes appropriate confidentiality requirements and restrictions on use of this information;

  E. directs notice to be disseminated as set forth in the Settlement, and find that the notice plan and materials satisfy Rule 23 and due process; and

  F. subjects the Settlement Fund to the continuing jurisdiction of the Court.

The Court shall maintain continuing and exclusive jurisdiction and independent case management authority under Federal Rule of Civil Procedure 23 regarding the general operation of the Claims Program and those appointed to implement and oversee it.

**IT IS SO ORDERED.**

Dated: July 8, 2017

_____
VINCE CHHABRIA
United States District Judge