UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 15-cv-02159-VC<br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVING SERVICE AWARDS, AND AWARDING ATTORNEYS' FEES AND EXPENSES**<br><br>Judge: Hon. Vince Chhabria |

On March 22, 2018, this Court held a Final Fairness Hearing to determine whether the terms and conditions of the Amended Stipulation and Agreement of Class Action Settlement and Release ("Settlement," "Settlement Agreement," or "SA") agreed to by Plaintiffs Shahriar Jabbari and Kaylee Heffelfinger, and proposed Settlement Class Representatives Jose Rodriguez and Antonette Brooks, individually and on behalf of the Settlement Class (or "Class"), and Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. ("Defendants" or "Wells Fargo"), are fair, reasonable, and adequate and should be approved by the Court, and whether an Order and Final Judgment should be

entered dismissing the above-referenced Action with prejudice and releasing the Released Claims (as defined in Paragraph 2.50 of the Settlement Agreement, which definition is incorporated by reference). The Court also considered Plaintiffs' request for Class Representative service awards and an award of attorneys' fees and expenses. The Court finds that this Settlement complies with the Northern District of California's Procedural Guidance for Class Action Settlements.  The Court also finds that the Settlement represents a successful outcome for the Settlement Class; will provide significant monetary benefits to the Settlement Class while removing the risk and delay associated with further litigation; and is fair, reasonable, and adequate pursuant to Federal Rule of Procedure 23.  The Court also finds that the requested service awards, attorneys' fees, and expenses are reasonable. Therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. The Court grants the Motion for Final Approval of the Revised Class Action Settlement Agreement and Release and grants final approval to the Settlement. This Order (the "Final Approval Order") hereby incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings as set forth in the Settlement Agreement.

2. This Court has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve the Settlement Agreement.

**Compliance with Preliminary Approval Order**

3. All the revisions that the Court requested in its Preliminary Approval Order (ECF 165) have been implemented. *See* Declaration of Derek W. Loeser in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Certification of a Settlement Class, Service Awards and Fee/Cost Award (Loeser Declaration), (ECF __). Specifically, Section 39 of the revised long-form notice (ECF 162-7) was altered before distribution to make clear that mediation does not impose a binding result on the parties, but depends on the parties' mutual agreement. Also, Section 42 of the revised long-form

notice (ECF 162-7) was altered before distribution to include an appropriate email address for Class Counsel.

### Class Certification and Final Settlement Approval

4. The Court confirms its previous certification of the Settlement Class, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3). The Settlement Class is defined as follows: All Persons for whom Wells Fargo or Wells Fargo's current or former subsidiaries, affiliates, principals, officers, directors, or employees opened an Unauthorized Account or submitted an Unauthorized Application, or who obtained Identity Theft Protection Services from Wells Fargo during the period from May 1, 2002 to April 20, 2017, inclusive, with the exception of (i) Defendants' officers, directors and employees; (ii) the judicial officers and associated court staff assigned to this case, and the immediate family members of such officers and staff; and (iii) Persons who timely and properly opt-out of the Settlement Class pursuant to the procedures set out in Paragraph 12 of the Settlement Agreement. The Court confirms its previous determination in the Preliminary Approval Order that, for settlement purposes only, the Action meets all the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3).

5. The Court confirms its previous appointment of the following people as Class Representatives: Shahriar Jabbari, Kaylee Heffelfinger, Jose Rodriguez, and Antonette Brooks. The Court finds that these Class Representatives have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

6. The Court confirms its previous appointment of Derek W. Loeser, Gretchen Freeman Cappio, Daniel Mensher, Jeffrey Lewis, and Matthew J. Preusch of Keller Rohrback L.L.P. as Class Counsel. Class Counsel have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

7.  The Court confirms its previous appointment of Rust Consulting as the Settlement Administrator and finds that it has so far fulfilled its duties under the Settlement. The Court orders that the Settlement Administrator shall be paid according to the Settlement Agreement for expenses relating to the Notice Plan and administration of the Settlement.

8.  The Court finds that the Settlement creates a nonreversionary Settlement Fund of $142 million, which Wells Fargo has deposited into the Escrow Account as required by the Preliminary Approval Order. The Escrow Account was established as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-l of the U.S. Internal Revenue Code of 1986, as amended. Class Counsel shall, in its sole discretion, appoint an Escrow Agent who shall hold and distribute funds as provided herein. All costs and expenses of the Escrow Agent, including taxes, if any, shall be paid from the funds under its control, including any interest earned on the funds.

9.  The Court finds that, in addition to the $142 Settlement Fund, Wells Fargo has agreed to pay the cost of engaging the Consumer Reporting Agencies to conduct their respective tasks in connection with the analysis of Credit Impact Damages; up to $1 million of the cost of conducting the expert analysis necessary to calculate Credit Impact Damages; $1 million toward the increased cost of mailing notice by envelope to Consultant-Identified Persons; and certain call center costs related to management, training, and live support.

10. The Court finds that the Settlement is, within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure, fair, reasonable, and adequate and in the best interests of the Class Representatives, the Settlement Class, and each of the Settlement Class Members, and is consistent and in compliance with all requirements of due process and federal law. The Court further finds that the Settlement is the result of arm's-length negotiations between experienced counsel representing the interests of the Class Representatives, the Settlement Class Members, and the Defendants. The Court

further finds that the Parties have evidenced full compliance with the Court's Preliminary Approval Order and other Orders relating to this Settlement. The Settlement shall be consummated pursuant to the terms of the Settlement Agreement and this Order, and the Parties are hereby directed to perform those terms.

11. In accordance with the Order on the Parties' Stipulation and Administrative Motion re Settlement Reserve and Schedule, the Court orders that if the number of Unauthorized Accounts, as validated by the Settlement Administrator through the Claims process, exceeds 3,500,000:

    A. the Settlement Administrator shall calculate the Excess Ratio by dividing the number of Unauthorized Accounts, as validated by the Settlement Administrator through the Claims process, by 3,500,000; and

    B. Paragraphs 9.9 and 9.9.1 of the Settlement Agreement shall be deemed modified as follows: wherever "$19,366,000" appears in such Paragraphs, it shall be replaced by a product obtained by multiplying $19,366,000 against the Excess Ratio; and wherever "$5,634,000" appears in such Paragraphs, it shall be replaced by a product obtained by multiplying $5,634,000 against the Excess Ratio.

12. The Court finds that the Notice Plan, previously approved (as modified) by the Court in its Preliminary Approval Order, has been implemented accurately and fully, and in compliance with the Preliminary Approval Order. The Notice Plan as implemented by the Parties complies with Federal Rule of Civil Procedure 23(c)(2)(B). It constituted the best practicable notice; was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and of their right to exclude themselves or object to the Settlement and to appear at the Final Fairness Hearing; and was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice.

13. The Notice Plan was extensive and robust. It included direct mail notice to 2,992,937 potential Class members based on data provided by Wells Fargo. Botzet Decl. at 6-9 (ECF ___). An additional 13,806 notice packets were mailed to those who requested them. *Id.* at 11. In addition, Wells Fargo provided email notice to 39,465,679 current and former Wells Fargo customers. Mathews Decl. at 4 (ECF ___). Wells Fargo also incorporated notices into 67,346,065 statements mailed or made electronically available to Wells Fargo customers. *Id.* at 4.

14. In addition to that robust direct mail and email notice program, the Settlement provided an extensive media and advertising component. *See* Wheatman Decl. (ECF ___). That included printing a color publication notice in national news outlets and Spanish-language outlets. *Id.* at 17-19. "Banner ads" were also placed on websites, using targeted ad campaigns. *Id.* at 23. Supplementing all of these efforts was a media outreach program designed to drive awareness of the Settlement and point Settlement Class Members to the Settlement Website, www.WFSettlement.com, which provided notice, frequently asked questions, and key court documents. *Id.* at 28-30. Class Counsel also designed and implemented several social media campaigns to encourage participation in the settlement. *Id.* at 28. In short, the parties and their Court-appointed experts used every reasonable tool to create and implement and wide-ranging program to provide the best notice practicable to potential Settlement Class Members.

15. The Court finds that the Plan of Allocation is fair, reasonable, and adequate. The Settlement provides for three types of payment: (1) Fee Damages and (2) Credit Impact Damages, both of which are "Compensatory"; and (3) and a "residual" payment, which is termed "Non-Compensatory Damages" under the Settlement. The Plan of Allocation provides that Authorized Claimants will be reimbursed from the Net Settlement Amount for Compensatory Damages, and will also be allocated Non-Compensatory Damages.

16. The Court finds that the Plan of Allocation with respect to Non-Compensatory Damages is fair, reasonable, and adequate. The Settlement provides for a reserve totaling $25 million for residual payments to Settlement Class members based on the number of Unauthorized Accounts, Unauthorized Applications, and instances of authorized enrollment in Identity Theft Protection Services for each Class member. In the event the number of Unauthorized Accounts identified by Settlement Class Members in the claims process and not disputed by the Settlement Administrator exceeds Plaintiffs' 3.5 million estimate, Wells Fargo will proportionally increase the $25 million reserve so that the ratio of reserve to Unauthorized Accounts is no less than what was implied by Plaintiffs' estimate at the time of Preliminary Approval.

17. Compensatory Damages consists of two components: (1) increased borrowing cost due to credit score impact as a result of a Credit Analysis Account ("Credit Impact Damages"); and (2) unreimbursed fees assessed by Wells Fargo in connection with certain Unauthorized Accounts ("Fee Damages").

18. The Court finds that the Plan of Allocation with respect to Credit Impact Damages is fair, reasonable, and adequate. The Court has reviewed the Declaration of Edward M. Stockton (ECF __) and the Exhibits thereto and finds that Edward M. Stockton is qualified to design the Credit Impact Damages model by his specialized knowledge; that, under the model, Credit Impact Damages are based on sufficient data under the circumstances; that the model is the product of reliable principles, reliably applied to the available data; and that the model presents a feasible, reasonable, fair, and objective method for estimating the amount of credit cost injury suffered by the Class. The model compares the cost of credit that a consumer would incur absent the alleged unauthorized conduct to the cost that the consumer incurred, or is expected to incur, assuming that the alleged unauthorized conduct did occur. The difference is equal to the estimated effect on credit cost from the allegedly unauthorized conduct, and determined through review of literature, other research, and various reliable quantification techniques. The Court deems it fair that Authorized Claimants who activated or used an Unauthorized

Credit Analysis Account are not eligible to receive Credit Impact Damages in connection with such an account, but are entitled to receive a Non-Compensatory Damages Payment in connection with such an account.

19. The Court finds that the Plan of Allocation with respect to Fee Damages is fair, reasonable, and adequate. The Plan of Allocation reasonably and fairly accounts for the unavailability of data for the 2002-2008 period by allocating Fee Damages to every account from the 2002-2008 period, but making the per-account payment equal to the average 2009-2017 Fee Damages payment. While Consultant-Identified Persons are not eligible to receive Fee Damages in connection with the account, product, or service identified through the Consultant Analysis as potentially being an Unauthorized Account, any fees assessed by Wells Fargo in connection with such an account, product, or service have been or will be reimbursed through a separate process. Consultant-Identified Persons remain eligible to receive Fee Damages in connection with Unauthorized Accounts that were not identified through the Consultant Analysis. Consultant-Identified Persons are eligible to receive Credit Impact Damages in connection with an Unauthorized Credit Analysis Account, regardless of whether the Unauthorized Credit Analysis Account was identified through the Consultant Analysis.

20. The Court has reviewed Exhibit D to the Loeser Declaration and approves that Exhibit as constituting the complete list of all Persons who have submitted timely requests for exclusion from the Settlement Class.

21. The Court has reviewed the objections to this Settlement and overrules them.

22. Pursuant to this Order and Final Judgment, with respect to the Released Parties, Settlement Class Members' Released Claims, as defined in Paragraph 2.50 of the Settlement Agreement (which definition is incorporated herein by reference), are hereby dismissed with prejudice and without costs, other than those permitted under the Settlement Agreement or by this Order.

23. As of the Effective Date, the Class Representatives, and all Settlement Class members who have not been excluded from the Settlement Class, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement or have executed and delivered a Claim Form, shall have conclusively compromised, settled, discharged, and released any and all Released Claims against any Released Party, and shall be bound by the provisions of the Settlement Agreement and this Order. Furthermore, as of the Effective Date, the Class Representatives, and all Settlement Class members shall by operation of the final judgment have expressly waived, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by California Civil Code section 1542, and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar, comparable, or equivalent to California Civil Code section 1542.

## Service Awards, Attorneys' Fees, and Expenses

24. The Court finds that the proposed service awards are fair and reasonable, and now Orders said awards to be paid out of the Settlement Fund to the following Class Representatives pursuant to the Settlement Agreement: to Shahriar Jabbari, $5,000; to Kaylee Heffelfinger, $5,000; to Jose Rodriguez, $5,000; and to Antonette Brooks, $5,000.

25. The Court hereby awards to Class Counsel attorneys' fees in the amount of $21,300,000, to be paid out of the Settlement Fund. Noting that the Ninth Circuit's "benchmark" for percentage-of-the-recovery awards is 25%, the Court finds that the attorneys' fee award is fair and reasonable under the percentage-of-the-recovery method based upon the following factors: (1) the results obtained by counsel in this case, which not only make the Class whole through guaranteed and uncapped

Compensatory Damages, but also guarantee Non-Compensatory Damages; (2) the considerable risk that Class Counsel would receive nothing, given the presence of an arbitration agreement and attendant challenges that they would face in securing and maintaining Class Certification; (3) the substantial non-monetary benefits for the Class, which suppress Unauthorized Accounts on consumer reports, scrub unauthorized deposit accounts from Early Warning Services reports, and entitle Class members to a review of their credit history for Unauthorized Accounts or credit inquiries; (4) the range of awards made in similar cases, which are typically well above the 15% fee requested here; and (5) the considerable financial burdens that Class Counsel shouldered on a contingent basis. These factors justify the requested award, which falls well below the Ninth Circuit's 25% percent benchmark.

26. A lodestar cross-check, though not required, confirms the reasonableness of the 15% fee.

27. The Court also awards to Class Counsel $442,994.75 as reimbursement of expenses. Counsel has adequately documented these expenses, all of which are compensable litigation expenses that were advanced for the benefit of the Class.

28. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the Class Representatives, the Settlement Class, and Defendants as to all matters concerning the administration, consummation, and enforcement of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: March ___, 2018

VINCE CHHABRIA
United States District Judge