Derek W. Loeser, *admitted pro hac vice*
Gretchen Freeman Cappio, *admitted pro hac vice*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900; Fax: (206) 623-3384
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com

Jeffrey Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900; Fax: (510) 463-3901
jlewis@kellerrohrback.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,<br><br>        Defendants. | No. 15-cv-02159-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:   March 22, 2018<br>Time:   10:00 a.m.<br>Courtroom: 4, 17th Floor<br><br>Judge:  Hon. Vince Chhabria |

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY ........................................................ 1

II.     STATEMENT OF RELEVANT FACTS ................................................. 3

III.    ARGUMENT ........................................................................................ 3

        A.    Class Counsel's Fee Request is Fair, Adequate, and Reasonable ...................... 4

              1.    Class counsel achieved exceptional results for the class ......................... 5

              2.    Class counsel faced a considerable risk that they would receive
                    nothing ........................................................................................ 6

              3.    Class counsel achieved substantial non-monetary benefits for the
                    class ............................................................................................. 7

              4.    Class counsel seeks a fee that falls below fees customarily awarded
                    in similar litigation .......................................................................... 8

              5.    Class counsel shouldered considerable financial burdens on a
                    contingent basis—and did so unaided by other firms ........................... 9

        B.    The Reasonableness of the Requested Fee is Confirmed by a Lodestar
              Cross-Check ........................................................................................... 9

              1.    KR's hours were necessary and appropriate ...................................... 10

              2.    KR's hourly rate is reasonable ........................................................ 11

              3.    The cross-check results in an appropriate multiplier ........................... 12

IV.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND APPROPRIATE ...... 14

V.      CONCLUSION ..................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................4, 5, 10

*Bower v. Cycle Gear, Inc.*,
    2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ................................................ 9

*Conley v. Sears, Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) ................................................................ 12

*In re Countrywide Fin. Corp. Sec. Litig.*,
    2011 WL 13238745 (C.D. Cal. Mar. 4, 2011)................................................ 15

*Davis v. City & Cnty. of S.F.*,
    976 F.2d 1536 (9th Cir. 1992), *vacated on other grounds*, 984 F.2d 345 (9th Cir.
    1993)................................................................................................ 13

*Ebarle v. Lifelock, Inc.*,
    2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) .............................................. 9

*Hendricks v. Starkist Co.*,
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) .............................................. 9

*Jones v. San Diego Metro. Transit Sys.*,
    2017 WL 5992360 (S.D. Cal. Nov. 30, 2017) .............................................. 4

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v.
    Dague*, 505 U.S. 557 (1992) ....................................................12, 13, 14

*In re Lithium Ion Batteries Antitrust Litig.*,
    2017 WL 4872978 (N.D. Cal. Oct. 27, 2017) .............................................. 15

*Malta v. Fed. Home Loan Mortg. Corp.*,
    2013 WL 444619 (S.D. Cal. Feb. 5, 2013)................................................ 7

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................ 14

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
    2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)................................................ 11

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
    2009 WL 2408560 (D. Mass. Aug. 3, 2009) .............................................. 12

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................ 5

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ................................................................... 14

*Rainbow Bus. Solutions v. MBF Leasing LLC*,
    2017 WL 6017844 (N.D. Cal. Dec. 5, 2017) .................................................. 11

*Reyes v. Bakery & Confectionary Union and Indus. Int'l Pension Fund*,
    2017 WL 6623031 (N.D. Cal. Dec. 28, 2017) ................................................ 10

*Rutti v. Lojack Corp.*,
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ................................................. 15

*Sentinel Offender Servs., LLC v. G4S Secure Solutions (USA) Inc.*,
    2017 WL 3485768 (C.D. Cal. June 20, 2017) ................................................ 10

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................................... 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................... 4

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ....................................................................... 10

*In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir, 1995) .............................................................................. 5

*Van Vraken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................ 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................5, 9, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)...........................................10, 12

*Weiss v. Mercedes-Benz of N. Am.*,
    899 F. Supp. 1297 (D.N.J. 1995) ................................................................... 12

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011), *supplemented* 2011 WL 1838562 (N.D.
    Cal. May 13, 2011)......................................................................................... 14

*Young v. Polo Retail, LLC*,
    No. 02-CV-4546-VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................... 12

**Statutes**

15 U.S.C. § 1681 ....................................................................................................... 6

## SHORT CITATION FORMS FOR FILINGS

| FULL TITLE OF THE FILING | CITATION OF FILING |
|---|---|
| Complaint, May 13, 2015 | ECF 1 |
| Amended Stipulation and Agreement of Class Action Settlement and Release, June 14, 2017, ECF 162 | Settlement, Settlement Agreement, or SA |
| Declaration of Derek W. Loeser in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Certification of a Settlement Class, Service Awards, and Fee/Cost Award | Loeser Decl. |
| Transcript of Official Electronic Sound Recording of Proceedings, May 18, 2017 | Prelim. App. Hr'g Tr. |
| Declaration of Professor Robert H. Klonoff Relating to Class Settlement Approval, Attorneys' Fees, Costs, and Incentive Payments | Klonoff Decl. |
| Declaration of Edward M. Stockton in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement | Stockton Decl. |
| Plaintiffs' Notice of Motion, Motion, and Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, April 20, 2017, ECF 101 | Mot. |
| Declaration of Plaintiff Kaylee Heffelfinger in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, April 20, 2017, ECF 104 | Heffelfinger Decl. |
| Declaration of Plaintiff Shahriar Jabbari in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, April 20, 2017, ECF 103 | Jabbari Decl. |

| | |
|---|---|
| Declaration of Proposed Settlement Class Representative Jose Rodriguez in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, April 20, 2017, ECF 105 | Rodriguez Decl. |
| Declaration of Proposed Settlement Class Representative Antonette Brooks in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, April 21, 2017, ECF 112 | Brooks Decl. |

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 23(h), Plaintiffs hereby move the Court for an Order awarding to Class Counsel (1) $21,300,000 as attorneys' fees, which is 15% of the $142 million common fund recovered for the benefit of the class; and (2) awarding to Class Counsel reimbursement of previously advanced litigation expenses of $442,974.75 from the common fund. This Motion is based on and supported by the Points and Authorities below, the Declarations of Derek W. Loeser and Professor Robert H. Klonoff, and the activities and events in these proceedings to date.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION AND SUMMARY

This case concerns one of the most notorious consumer frauds in recent memory. This fee request arises from a genuine victory for consumers—one that secures outstanding and, to our knowledge, unprecedented relief in the face of numerous challenges.

In May 2015, Keller Rohrback L.L.P. ("Keller Rohrback" or "KR") began investigating reports that Wells Fargo[1] systematically opened unauthorized accounts for its customers. Within two weeks, KR filed a Complaint seeking relief on behalf of Plaintiff Shahriar Jabbari and a proposed nationwide class. ECF 1. When the case was filed, it faced serious challenges. Wells Fargo had not remotely admitted it had a problem. There was no prospect of congressional hearings. The case had not yet emerged as the poster child for corporate fraud and abuse. And Wells Fargo had formidable defenses against a class action, most notably the mandatory arbitration clause imbedded in its customer account agreements. Despite these challenges, Keller Rohrback pursued the case—not as part of a consortium of firms, but on its own—well before any other similar actions were filed.

---

[1] The Defendants—the holding company Wells Fargo & Co. and its banking subsidiary Wells Fargo, N.A.—are referred to collectively as "Wells" or "Wells Fargo."

Wells Fargo filed motions to dismiss and to compel arbitration, and following a hearing, the Court granted the motion to compel arbitration and dismissed the case. Plaintiffs readied their appeal and simultaneously participated in settlement negotiations. With the assistance of Ninth Circuit Mediator Ann Julius, and, subsequently, private mediators the Hon. Layn R. Phillips (ret.) and Michelle Yoshida, the parties reached an initial agreement in principle. This, however, proved to be only the beginning of a protracted and highly contentious negotiation. Final agreement was elusive because the scope of Wells Fargo's conduct was a moving target: on several occasions, the parties made progress towards settlement only to have those discussions derailed by new information about the extent of Wells Fargo's misconduct. It took four in-person mediation sessions and dozens of additional telephone conferences with mediators Phillips and Yoshida over more than a year for the parties to reach final agreement. Loeser Decl. ¶¶ 27, 30–36, 40–43, 50–51. Mediated negotiations continued up to the parties' filing for preliminary approval, and even *after* the Court granted preliminary approval. The Settlement[2] now before the Court for Final Approval is the product of these exhaustive negotiations. Loeser Decl. ¶¶ 26–53. It is also the product of the Court's detailed input and the advice of distinguished experts who have helped design the relief obtained for the Settlement Class (or "Class").

As the Court noted at the preliminary approval hearing, this is a complex settlement addressing notorious misconduct. While damages are relatively modest for many Class members, those damages—particularly the injuries to Class members' credit—are also difficult to quantify and remedy. Prelim. App. Hr'g Tr. 7–8. The proposed Settlement addresses each of those challenges. The Settlement is a one-of-a-kind, bespoke deal that addresses the full range of harms experienced by Class members. They will receive a refund of all identifiable fees charged to them for purportedly Unauthorized Accounts; restitution for increased borrowing costs due to any credit damage; and, as Non-Compensatory Damages, a guaranteed *pro rata* payment for each account they believe was opened on their behalf

---

[2] The capitalized terms in this Motion have the meanings ascribed to them in the Amended Stipulation and Agreement of Class Action Settlement and Release, unless otherwise indicated.

without authorization (or, in the case of identity theft protection services, for all such accounts). Important non-monetary relief is provided as well, as discussed below.

In an exceptionally rare if not unprecedented achievement for any settlement, the Settlement also includes a guarantee that Defendants will pay all Compensatory Damages, and more. If the Net Settlement Fund is not sufficient to cover the full fee and credit damage payments the Settlement requires, plus a $25 million reserve for Non-Compensatory Damages, Wells Fargo has an uncapped obligation to add all funds necessary to make up the difference. And if the claims process identifies more Unauthorized Accounts than had been anticipated at preliminary approval, Wells Fargo must adjust the $25 million *pro rata* reserve accordingly so that there is no dilution of the reserve. The Settlement also requires Wells Fargo to bear many of the costs of administration.

KR demonstrated zeal, diligence, and creativity to achieve these results, which merit the requested award of attorneys' fees and reimbursement of expenses.

## II.     STATEMENT OF RELEVANT FACTS

Per this Court's Procedural Guidance for Class Action Settlements, the procedural history and relevant facts are set forth in the Motion for Final Approval, which is also being filed today.

## III.     ARGUMENT

Plaintiffs seek an attorneys' fee award of $21,300,000, which is 15% of the $142 million Settlement Fund. After fees and expenses, the entire Settlement Fund will go to the Class; no part of it is conditional or can revert to Wells Fargo. SA ¶ 9.12.

While Plaintiffs' requested award is based on this nonreversionary $142 million Settlement Fund, the true value of the Settlement exceeds that amount. When Wells Fargo's contribution to settlement administration and expert costs is accounted for, the true value of the Settlement to date is at least $144,656,851.37,[3] of which the requested fee is about 14.7%. The $142 million figure also does not

---

[3] In addition to the Settlement Fund, Wells Fargo has agreed to cover certain additional costs of notice, settlement administration, and credit impact damages assessment. These costs are (1) up to $1 million of

account for Wells Fargo's uncapped guarantee or its obligation to adjust the Non-Compensatory Damages reserve if more than 3.5 million accounts are identified—Settlement provisions that, like all insurance, have independent value.

For purposes of this request, however, Plaintiffs will use the $142 million figure. Plaintiffs' request for a 15% fee award falls well below the Ninth Circuit's 25% benchmark—a benchmark, as Professor Klonoff explains, that would be justified here as an award. Klonoff Decl. ¶¶ 127–128.

**A.     Class Counsel's Fee Request is Fair, Adequate, and Reasonable**

In deciding whether a requested fee amount is appropriate, the Court's role is to determine whether such amount is "'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id*.

Indeed, the percentage-of-recovery method has been described as the preferred approach. *See Jones v. San Diego Metro. Transit Sys*., No. 14-CV-01778, 2017 WL 5992360, at *4 (S.D. Cal. Nov. 30, 2017) ("[T]he percentage-of-recovery approach is preferred when fees will be drawn from a common fund."); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)

the cost of conducting the expert analysis necessary to calculate Credit Impact Damages, of which $292,441.37 has been billed to date; (2) the cost of engaging the Consumer Reporting Agencies to conduct their respective tasks in connection with the analysis of Credit Impact Damages; (3) $1 million toward the increased cost of mailing notice by envelope; (4) certain call center costs related to management, training, and telephone support—of which Wells Fargo has already paid $1.24 million, with another $124,410 billed to Wells Fargo in pending invoices; and (5) call center live support and management costs incurred after the number of live support minutes exceeds 69,252, or, to put it in dollar terms, after the total for those costs exceeds approximately $3.2 million. Loeser Decl. ¶ 86.

("[A] reasonable fee under the common fund doctrine is calculated as a percentage of the recovery." (quoting *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984))). The method not only rewards efficiency, but also aligns the incentives of counsel with the class's interest in the fullest recovery possible. It is "result-oriented rather than process-oriented, [and therefore] better approximates the workings of the marketplace" than the lodestar approach. *In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

Applying the percentage-of-recovery method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure" from the benchmark. *Bluetooth*, 654 F.3d at 942. As part of determining whether to depart from that presumptive benchmark, the Ninth Circuit has approved the consideration of several different factors: (1) whether class counsel "achieved exceptional results for the class"; (2) whether the case was risky for class counsel; (3) whether counsel's performance "generated benefits beyond the cash settlement fund"; (4) the market rate of compensation for the particular field of law, a factor that is instructive but not controlling; (5) the burdens that counsel for class shouldered while litigating the case; and (6) whether the case was handled on a contingency basis. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). These factors strongly favor the requested 15% fee.

### 1.    Class counsel achieved exceptional results for the class

The Settlement provides exceptional, and perhaps unprecedented, relief to Class members. It provides a guarantee of full Compensatory Damages, including an expert-designed method for calculating Credit Impact Damages—and, on top of that, a guaranteed reserve for Non-Compensatory Damages.

Specifically, to the fullest extent possible given available data, the Settlement provides for complete recovery of fees charged in connection with Unauthorized Accounts. SA ¶ 9.7.2.

As part of the Compensatory Damages, the Settlement also provides for a guaranteed award of Credit Impact Damages. Class Counsel have retained economist Edward M. Stockton to design a method of calculating Credit Impact Damages that is individually tailored to each Class member. Using data from the Consumer Reporting Agencies, Stockton's method uses the decrease in each Class member's credit score, and the kind and amount of credit that each Class member took out, to calculate the likely credit injury suffered each suffered. *See generally* Stockton Decl. This model is extraordinary not only because it is innovative and sensitive to each Class member's individual circumstances, but also because, if this case had been litigated, the Class would have faced formidable obstacles to recovering classwide damages of this kind. Loeser Decl. ¶ 88.

After allocating Compensatory Damages, the Settlement will allocate Non-Compensatory Damages based on how many Unauthorized Accounts or Unauthorized Applications a Class member has. (For purposes of this calculation, authorized enrollment in Identify Theft Protection Services counts as one Unauthorized Account.) Again, in what appears to be an unprecedented provision, the Settlement guarantees that after Compensatory Damages are allocated, at least $19,366,000 will be available to pay Non-Compensatory Damages for the 2009-2017 period and at least $5,634,000 million will be available to pay Non-Compensatory Damages for the 2002-2008 period. Class members, in short, are guaranteed to be made more than whole.

All of this monetary relief, moreover, is available even to those Class members whose claims might well be time-barred at this point. The Class Period goes back to 2002, whereas the statute of repose for Fair Credit Reporting Act claims is five years. 15 U.S.C. § 1681p. This, too, is exceptional.

**2.      Class counsel faced a considerable risk that they would receive nothing**

This case was remarkably risky. Klonoff Decl. ¶¶ 59–64, 142. Tellingly, no other plaintiffs' firm filed a class case until after KR announced this settlement and after government regulators announced their own settlements. Loeser Decl. ¶ 9. KR's willingness to take the case before anyone else thought it

was worthwhile compounded KR's financial risk: KR litigated the case without any co-counsel to assist with staffing, help cover expenses, or share the risk in any other way. *Id*.

The law of arbitration agreements has been fiercely contested in recent years and presented another significant risk. *See* Stipanowich Decl. ¶¶ 22–29. Courts recognize that litigation is risky when the law is uncertain. *See, e.g.*, *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290-BEN, 2013 WL 444619, at *5 (S.D. Cal. Feb. 5, 2013) (risk was presented because "the law interpreting the TCPA and its consent requirement has been under flux"). But it was not merely the substantive law that created risk. There was also a significant risk—multiplied by the possibility of arbitration—that the proposed class would not have secured or maintained certification through the end of the litigation. Mot. at 10–12.

Even after the parties' agreement in principle, a risk remained that the deal would collapse. Negotiations were unusually difficult. Loeser Decl. ¶ 26. Indeed, the parties continued to negotiate material terms of the Settlement Agreement up to the very day the Settlement was submitted to the Court for preliminary approval, and negotiations continued even after that when the parties strove to implement further changes in response to the Court's inquiries. *Id.* ¶¶ 45–48. Following the preliminary approval hearing and further input from the Court, the parties continued their negotiations. *Id.* ¶¶ 49–53. At each of these stages, Plaintiffs and KR faced the risk that settlement talks would fail, forcing Plaintiffs, and KR, to face the full risks of litigation.

### 3.   Class counsel achieved substantial non-monetary benefits for the class

The Settlement provides four kinds of substantial non-monetary relief. First, simply by submitting a claim for Credit Impact Damages, Class members are entitled to a review of their credit history for Unauthorized Accounts or credit inquiries. This functions as a de facto credit monitoring service provided to Class members at no cost. Loeser Decl. ¶ 83. Second, the Settlement provides non-monetary relief to those Class members whose credit score decreased as a result of Wells Fargo's unlawful actions, but who did not thereafter take out credit and thus did not suffer increased borrowing costs. These Class members will have any Unauthorized Accounts on their consumer reports suppressed,

7                      PLAINTIFFS' MOTION FOR
                                                                        ATTORNEYS' FEES AND COSTS

which by itself will likely increase their credit scores—which, in turn, may lower their *future* costs of borrowing. *Id*. ¶ 84. If Class members with unauthorized credit accounts wanted to achieve this same result without the Settlement, they would have to dispute each account with Wells Fargo, and possibly with each Consumer Reporting Agency—a process that is widely recognized as unreliable and costly in regard to time and money. *Id*. Third, individuals who only had an unauthorized deposit account opened in their name will have that account scrubbed from their Early Warning Services report, which is the deposit-account equivalent to a consumer report from a Credit Reporting Agency. *Id*. ¶ 85.

    **4.**    **Class counsel seeks a fee that falls below fees customarily awarded in similar litigation**

The Ninth Circuit has consistently looked to 25% as the benchmark for attorneys' fees in common fund class actions. A fee of 15% is well below the mean and median for fees in major common fund cases in the Ninth Circuit and elsewhere. Klonoff Decl. ¶ 111. In the Ninth Circuit and in the Northern District specifically, the mean attorneys' fees award was 26% and the median was 25% during the 2009-2013 period. *Id*.

Scholars have found that fee awards, as a percentage, tend to decline as the amount of the settlement increases, with the lowest awards being in so-called mega-settlements—those over $1 billion. In class actions involving dollar figures in the same range—or even much larger—than the $142 million here, mean and median attorneys' fees awards exceed 15%. *Id*. ¶ 112 (in cases involving settlements between $100 million and $250 million during the 2006–2007 period, the mean and median attorneys' fees awards were 17.9% and 16.9%, respectively); *id*. (another study of attorneys' fees in settlements over $100 million, the mean and median "varied from a low of 16.6[%] in 2009 to a high of 25.5[%] in 2011"). Mean and median fee awards are even higher in high-risk consumer class actions. *Id*. ¶ 114.

In individual contingency-fee contracts, the attorneys' fees percentage is virtually always at least 33%, and is often much higher. Klonoff Decl. ¶ 124. The requested 15% fee here is far below what would normally be set under an individual contingency-fee arrangement.

5.      **Class counsel shouldered considerable financial burdens on a contingent basis—and did so unaided by other firms**

The contingent nature of litigating a class action, and the corresponding financial burden, often justify an increase from the 25% benchmark, because counsel litigates with no present payment and no guarantee of future payment. *See Bower v. Cycle Gear, Inc.*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *6-7 (N.D. Cal. Aug. 23, 2016) (awarding 30% of common fund for fees and noting that counsel had litigated the action for almost two years with no payment and no guarantee of recovery); *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016) (finding that enhancement from 25% benchmark was warranted because class counsel carried a substantial financial burden both in advancing out-of-pocket costs and in representing plaintiff and the class members on a contingency basis). Here, KR bore significant financial burdens. On its own, the firm invested thousands of hours of time and significant out-of-pocket costs in a risky case. Loeser Decl. ¶¶ 93, 129. These burdens favor Class Counsel's 15% fee request. Klonoff Decl. ¶¶ 116–121.

**B.      The Reasonableness of the Requested Fee is Confirmed by a Lodestar Cross-Check**

When counsel seeks a percentage fee award well below the Ninth Circuit 25% benchmark, courts often end their review after considering the *Vizcaino* factors to confirm the fee request's reasonableness. *See Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 5076203, at *11 (N.D. Cal. Sept. 20, 2016) ("The Court declines to conduct a lodestar cross-check in this case, given that under the percentage-of-the-fund method the fee request was significantly below the 25% benchmark."); *see also* Klonoff Decl. ¶ 39. Even though it is not required, a lodestar cross-check in this case confirms the reasonableness of KR's request.

A "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly

rate for the region and experience of the lawyer." *Bluetooth*, 654 F.3d at 941 (citation omitted).[4] The calculation incudes both the time expended to date plus the time reasonably anticipated to shepherd the settlement through approval, claims administration, and payment. *See, e.g.*, *Reyes v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, No. 14-CV-05596-JST, 2017 WL 6623031, at *14 (N.D. Cal. Dec. 28, 2017) (including estimated hours for "future work" related to, *inter alia*, "managing class members' claims"). For example, in the recent *Volkswagen* defeat device litigation, Judge Breyer included substantial "reserve" time in the lodestar calculation—over 20,000 additional hours for future reasonably anticipated work. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017); *see also* Klonoff Decl. ¶ 139. Once the lodestar is determined, the court may then adjust that figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *Bluetooth*, 654 F.3d at 941–42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

Here, the total number of hours worked to date is 7,655.40. Loeser Decl. ¶ 94. KR anticipates an additional 2,500 hours to complete the settlement approval and administration process, for a total of 10,155.40 hours. *Id.* The total lodestar is $5,945,094.50, with a blended billing rate[5] of $585.41. *Id.* ¶ 133.

### 1.    KR's hours were necessary and appropriate

This is a large, complex, high-profile class action, and it's not over. KR has litigated this massive case efficiently, with a core group of thirteen timekeepers performing more than 91% of the work on this case by hours and more than 95% of the work on the case by lodestar value through January 19, 2018. Loeser Decl. ¶ 96. Work is assigned and performed efficiently within this core group; partners and more

---

[4] For purposes of a cross-check analysis, it is appropriate to use counsel's current billing rates or historical rates adjusted for inflation. *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016); Klonoff Decl. ¶ 143. This motion uses current rates.

[5] A "blended" hourly rate is obtained by dividing the lodestar figure by the total number of hours worked. *E.g.*, *Sentinel Offender Servs., LLC v. G4S Secure Solutions (USA) Inc.*, No. 14-CV-298-JLS-JPRx, 2017 WL 3485768, at *11 (C.D. Cal. June 20, 2017).

senior team members perform high-level strategic tasks and other team members support their efforts, and provide essential day-to-day person power. *Id.* The core group has support from various other KR partners, associates, and paralegals/professional staff, each performing tasks suited to his/her professional experience and expertise. *Id.* ¶¶ 109, 113, 115. All told, KR has litigated this case with efficiency and effectiveness, achieving a coordinated team effort that draws on each professional's particular talents and experience. *Id.* ¶ 96.

KR's work on this case will not end if and when the Court enters an order of final approval. The Settlement will require significant additional investments of time and money that are expected to continue for at least sixteen months after final approval. This work will include: (1) guiding Class members through the settlement administration and allocation process; (2) consulting with the Credit Impact Damages experts on implementing their methodology; (3) coordinating with third parties, including the Credit Reporting Agencies, to implement the Credit Impact Damages methodology; (4) defending the Settlement; and (5) working with the Settlement Administrator to ensure the Settlement terms are carried out and to address any Class members' concerns and communications. Loeser Decl. ¶ 130. Based on related work KR performed between preliminary approval and the present, KR conservatively estimates that it will require an additional 2,500 hours of mixed partner/associate/paralegal reserve time to complete these tasks. *Id.* ¶ 132.

### 2.     KR's hourly rate is reasonable

The rates billed by individual KR timekeepers—$710-995 for partners, $400-650 for associates, and $225-325 for paralegals and professional staff, Loeser Decl. ¶ 133—are in line with rates approved in this District for counsel and other professionals of comparable skill, experience, and expertise. Klonoff Decl. ¶ 132; *see also, e.g.*, *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, No. 14-MD-02541-CW, 2017 WL 6040065, at *9 (N.D. Cal. Dec. 6, 2017) (approving attorney rates from $295 to $950, and noting that "[a]ll of these rates are well within the range of $200 to $1,080 charged by attorneys in California in 2015, as shown by a reputable survey of billing rates"); *Rainbow Bus. Solutions v. MBF*

PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS

*Leasing LLC*, No. 10-CV-01993-CW, 2017 WL 6017844, at *2 (N.D. Cal. Dec. 5, 2017) (finding that attorney hourly rates from $275 to $950 were "reasonable and commensurate with those charged by attorneys with similar experience who appear in this Court"); Loeser Decl. ¶¶ 135–37.

KR's blended rate for this case—a metric that is appropriate for use in a lodestar cross-check, Klonoff Decl. ¶ 137—is $585.41. This blended rate is comparable to those used to cross-check fees in other complex class actions. *Id.*; *see also, e.g.*, *In re Volkswagen*, 2017 WL 1047834, at *5 (blended rate of $529). This blended rate is especially reasonable in this case, given that so much of the work was devoted to high-level negotiations—work that, by necessity, required the most senior attorneys. Loeser Decl. ¶ 137; *see also Young v. Polo Retail, LLC*, No. 02-CV-4546-VRW, 2007 WL 951821, at *7 (N.D. Cal. Mar. 28, 2007) (where much of the work required senior attorneys to negotiate a settlement, "typical blended hourly rates" were inappropriate).

### 3.    The cross-check results in an appropriate multiplier

Applied to the requested $21.3 million fee request, the lodestar cross-check yields a multiplier of 3.62. This is a reasonable multiplier justified by the outstanding result achieved for the Class, and supported by the law of the Circuit. *See Vizcaino*, 290 F.3d at 1051 (noting that the "bar against risk multipliers in statutory fee cases does not apply to common fund cases," where the lodestar is "routinely enhanced" (quotation marks and citation omitted)). As Prof. Klonoff has noted, multipliers in this range are common. Klonoff Decl. ¶ 144 (citing numerous examples and authorities).[6]

The Ninth Circuit has identified eleven factors to consider in evaluating the suitability of a multiplier. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). These are: (1) the time and labor required;

---

[6] *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (multiplier of 3.6); *see also New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-CV-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (multiplier of 8.3); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (multiplier of 9.3); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (multiplier of 8.9).

(2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation, and the ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases.[7] Here, applying the *Kerr* factors as a cross-check confirms that the requested fee is merited as a multiplier of the lodestar. *See* Klonoff Decl. ¶¶ 147-159:

(1)  The time and labor required of KR was (and will be) considerable, requiring labor of multiple kinds by multiple persons. Loeser Decl. ¶ 93; Klonoff Decl. ¶ 146.

(2)  This action raised new and difficult legal questions, *see* Stipanowich Decl. ¶¶ 26–39. The structure of the Settlement itself—particularly the Credit Impact Damages—is also tremendously complex. Loeser Decl. ¶ 73; Klonoff Decl. ¶ 147.

(3)  It has required great skill of KR both to deal with federal arbitration law—a complicated and constantly changing area—and to negotiate a comprehensive Settlement with skilled opposing counsel. Klonoff Decl. ¶ 148.

(4)  "Keller Rohrback was clearly precluded from taking on significant work as a result of this case." Klonoff Decl. ¶ 150; Loeser Decl. ¶ 93.

(5)  As explained above, the fee here is considerably lower than is customary in comparable class actions. Klonoff Decl. ¶ 151.

(6)  Counsel faced time pressure. They had to prosecute an appeal in the Ninth Circuit and simultaneously negotiate a Settlement, lest a loss on appeal strip them of all bargaining leverage. Klonoff Decl. ¶ 152.

(7)  The Settlement Fund is large, just as is the Settlement Class. And the results obtained, as Plaintiffs have explained above, are exceptional.

(8)  "Keller Rohrback is a prestigious plaintiffs' class action firm." Klonoff Decl. ¶ 154. Loeser Decl. Ex. A.

(9)  The presence of an arbitration clause makes this a less than desirable case. As an attorney for one of the would-be intervenors in this case told a reporter, "numerous attorneys . . . held off

---

[7] A twelfth factor, "whether the fee is fixed or contingent," was recited in *Kerr*, but has since been recognized as irrelevant. *See Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1546 (9th Cir. 1992), *vacated on other grounds*, 984 F.2d 345 (9th Cir. 1993).

because they don't want to invest money or time until the arbitration matter has been decided."[8]

(10)  The relationship between KR and the Named Plaintiffs began with this case, just as in most class actions, but the Named Plaintiffs have worked closely with KR throughout this action. Heffelfinger Decl. ¶¶ 4–5; Jabbari Decl. ¶ 5; Rodriguez Decl. ¶ 7; Brooks Decl. ¶ 6.

(11)  As noted above and in Prof. Klonoff's declaration, the requested fee is lower than the usual award in similar cases. Klonoff Decl. ¶ 119.

The *Kerr* factors support the requested multiplier.

When the requested fee is compared against KR's lodestar, it is apparent that the percentage fee is entirely appropriate. The resulting 3.62 multiplier is justified given the obstacles and risks that Class Counsel faced, the skill they demonstrated in litigation and negotiation, the exceptional results achieved, and the comparatively modest fee requested.

## IV.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND APPROPRIATE

Plaintiffs ask that KR be reimbursed for $442,974.75 in litigation costs advanced for the benefit of the Class. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citations omitted). "[L]itigation related costs are reimbursable as long as they are necessary expenses incurred in furnishing effective representation." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1372 (N.D. Cal. 1996). To support an award of expenses, counsel is typically directed to "file an itemization listing the expenses by category and the total amount advanced for each category," allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-CV-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

---

[8] Amanda Bronstad, *Wells Fargo Strikes $110M Settlement Deal in Fake Accounts Cases*, The Recorder (Mar. 28, 2017, 6:52 pm), https://www.law.com/therecorder/almID/1202782282906/wells-fargo-strikes-110m-settlement-deal-in-fake-accounts-cases/.

Here, KR has submitted a detailed list of expenses by category. Loeser Decl. ¶ 37 (itemizing expenses incurred for filing fees, service of process, document delivery, courier, hearing transcripts, photocopies, research, database licensing and hosting, telephone and data usage, postage, client outreach and communications, expert witness/consultant fees, mediation services, air travel, other transportation, lodging, meals, and settlement administration). These expenses are documented out-of-pocket costs KR incurred, and all fall into well-accepted categories of recoverable costs. *See Rutti v. Lojack Corp.*, No. 06-CV-00350-DOC, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."); *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-CV-05295-MRP, 2011 WL 13238745, at *3 (C.D. Cal. Mar. 4, 2011) ("The Court finds that the reimbursement of expenses requested, including relating to consulting and testifying experts, electronic document hosting . . . , travel, computer research, and duplicating are reasonable under the circumstances, and typical of those billed by attorneys to paying clients in the marketplace."); *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420-YGR, 2017 WL 4872978, at *1 (N.D. Cal. Oct. 27, 2017) (approving expenses for document repository/hosting services).

These costs are reasonable and modest in proportion to the value of the case and the work expended. Klonoff Decl. ¶¶ 161–163. The record strongly supports an award the fully reimburses KR for these appropriate litigation costs advanced for the benefit of the class.

## V.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Class Counsel's Motion and award $21.3 million in attorneys' fees and $442,974.75 in costs.

Respectfully submitted this 19th day of January, 2018.

KELLER ROHRBACK L.L.P.

By    */s/ Derek W. Loeser*
Derek W. Loeser, *admitted pro hac vice*
Gretchen Freeman Cappio, *admitted pro hac vice*
Daniel P. Mensher, *admitted pro hac vice*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900; Fax: (206) 623-3384
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
dmensher@kellerrohrback.com

Jeffrey Lewis (Bar No. 66587)
KELLER ROHRBACK L.L.P.
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 463-3900; Fax: (510) 463-3901
jlewis@kellerrohrback.com

Matthew J. Preusch (Bar No. 298144)
1129 State Street, Suite 8
Santa Barbara, CA 93101
(805) 456-1496; Fax: (805) 456-1497
mpreusch@kellerrohrback.com

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I, Derek W. Loeser, hereby certify that on January 19, 2018, I electronically filed

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

with the Clerk of the United States District Court for the Northern District of California using the

CM/ECF system, which shall send electronic notification to all counsel of record.


*/s/ Derek W. Loeser*
Derek W. Loeser