Steven B. Scow, Esq.
Koch & Scow, LLC
11500 S. Eastern Ave., Suite 210
Henderson, Nevada 89052
Office 702-318-5040
Fax 702-318-5039
sscow@kochscow.com

*Attorney for Objector*
Mike Murphy

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAHRIAR JABBARI and KAYLEE HEFFELFINGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No. 15-cv-02159-VC<br><br>**NOTICE OF OBJECTION** |

TO THE CLASS ACTION CLERK OF THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Class member and objector, Mike Murphy, ("hereinafter Objector") objects to this class action settlement. His address is 2955 Main Street, STE 110 Irvine CA 92614 and phone (949) 202-5712. He received an email advising him of his right to object to this settlement on April 12, 2018. My client is not aware of any unauthorized accounts and did not enroll in the Wells Fargo identity theft protection program. My client filed an online claim and his claim number is 70257630. We do not intend on attending the Fairness Hearing.

## I. EXCESSIVE ATTORNEY FEES

The 15% attorney's fee request in this class action is excessive because attorney's fees calculated as a percentage of a class fund should decline from the 25% benchmark for other class actions when the case involves a mega-fund settlement in excess of $100,000,000 and settlement is reached before class certification, a trial, or an appeal.

As a practical matter, any percentage-of-fund calculation must exclude notice and administration costs because those amounts are costs and not benefits to the class. A deduction of approximately $2,656,851.37 should be deducted prior to any calculation of a percentage fee award. See In re Transpacific Passenger Air Transp. Antitrust Litig., No. C 07-05634 CRB, 2015 WL 3396829, at *1-2 (N.D. Cal. May 26, 2015). In Redman v

The determination of an appropriate fee award in this case should be done based upon a pure percentage of fund analysis and it should apply the mega-fund rule. Although the circuit courts are divided on the strict application of the mega-fund rule, and the Ninth Circuit does not require its application in all cases, this is a mega-fund case where application of the rule is warranted. This case is most obviously unique for how quickly Wells Fargo settled the case within 17 months after the

complaint was filed. At the time of settlement there had been no class certification, a limited dispositive motion practice, no trial and only a notice of appeal filed.

Results Achieved for the Class. Class counsel's guarantee of full compensatory damages is commendable, but punitive damages is warranted here to deter similar future conduct of defendant and reach closer to the $600 milllion in statutory FCRA damages. The results achieved for the class do not necessarily merit a benchmark or upward departure fee percentage.

Complexity of the Case. Although a large case, a highly motivated defendant in an FCRA case is not a complex case especially in light of the concurrent prosecution of Wells Fargo by the Consumer Financial Protection Bureau ("CFPB"), the Office of the Comptroller of the Currency ("OCC") and the Los Angeles City Attorney ("LACA").

Degree of Risk Assumed by Counsel. This was not an ordinary case in that Wells Fargo reached a settlement with the CFPB, OCC and LACA on September 6, 2016. Class counsel had limited motion practice up until the point of filing a notice of appeal October 2015 and any heavy lifting was mitigated as settlement negotiations began shortly thereafter. This case has been a publicity challenge for Wells Fargo and any reasonable class action lawyer knew they would ultimately settle as indicated by the willingness to negotiate a mere 6 months after the complaint was filed and this is almost unheard of in major litigation. Class counsel in this case assumed only the most modest risk. As a result of the government's doing the heavy lifting, and Wells Fargo's own motivations to settle, the degree of risk assumed by class counsel can only reasonably be considered modest.

Size of the Fund. In class action cases, "the common fund doctrine allows a court to distribute attorney's fees from the common fund." 4 Newberg on Class Actions §14:6 (4th ed.) at 1. One of the underlying principles of the doctrine is "to

compensate the attorneys in proportion to the benefit they have obtained for the entire class. . ." Id.  There is no general rule amongst the courts as to what is a reasonable percentage of a common fund. Id.  Most courts use the percentage method of the fund and then apply several factors to the facts of the case to determine whether or not the percentage is reasonable. Id.  Although district courts have discretion as to what is reasonable, "the fund itself represents the benchmark from which reasonableness is measured." Id.

Although the benchmark for reasonableness may be between 20 and 30% in common fund cases, this does not apply to "extraordinarily large class recoveries."  In re Domestic Air Transp. Antitrust Litigation 148 F.R.D 297, 350-351 (N.D. Ga. March 22, 1993).  Class action settlement funds over $100,000,000 are considered mega-funds; those over $1 billion are considered super mega-funds. See Carlson v. Zerox Corp., 596 F.Supp.2d 400, 406 (D. Conn. January 14, 2009); Wal-Mart, 396 F.3d at 122.  The essence of the mega-fund rule is the very justification for class action law – the costs of litigation, most of which is lawyer fees, are reduced and, thus, an overall benefit for the class members.  "The percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent." Energy Holdings PLC, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003).

In confirming the district court's reduction of class counsel's percentage of fund from 18% to 6.5%, the Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., the Second Circuit reasoned: "Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable." Walmart, 396 F.3d at 122, citing

**Class Action Notice of Objection** 15-cv-02159-VC

Goldberger, 209 F.3d at 52; see also In re Indep. Energy Holdings PLC, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003).

The court reasoned further that "[w]hile courts in mega-fund cases often award higher percentages of class funds as fees than the district court awarded in this instance…, the sheer size of the instant fund [$3.383 billion] makes a smaller percentage appropriate." Walmart, 396 F.3d at 123.  The court confirmed the award in spite of the fact lead plaintiffs consented to the 18% fee. Id.  In following the philosophy of the mega-fund rule, the appellate court stated, "Asserting its jealous regard for absent class members, the court sought to compensate plaintiffs' counsel handsomely and at the same time limit the percentage of the award so that plaintiffs' counsel would not receive a windfall detrimental to the class." Id. at 122.

Although the Ninth Circuit has not required the mega-fund rule be strictly applied, Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002), the court has concluded the size of the fund is a factor to be considered in evaluating fee requests in class actions.

There is a generally-accepted benchmark of 25% of the common fund in determining a reasonable fee award in a class action.  However, district courts should look to the mega-fund rule and make adjustments in extraordinary circumstances increasing or lowering a fee award as the facts dictate.

Courts consider a fund approaching or exceeding $100 million as an extraordinarily large fund creating a downward pressure on the percentage of fund allowed for fees – fees in the range of 6-10% are more common in mega-fund cases. See 1 Attorney Fee Awards § 2:9 (3d ed.); see also (Law & Economics, Working Paper Number 10-06, An Empirical Study of Class Action Settlements and their Fee Awards-- Table 11.)

Courts will deviate up or down from the benchmark when extraordinary circumstances are present. For example, the court awarded $19.5 million in fees, or 13% of the $150 million fund, where class counsel expedited litigation, certified the class, completed discovery, and finished 42 days of trial that dealt with complex medical and scientific issues of causation. See In re Copley Pharmaceutical, Inc. (1 F.Supp. 2d 1407 (D. Wyo. 1998); 1 Attorney Fee Awards § 2:9 (3d ed.).

In Walmart, the district court found the fee petition of plaintiff's counsel "excessive [and] fundamentally unreasonable" where counsel sought a fee of $609,012,000 representing 18% of the settlement's compensatory relief under the percentage of fund method on a $3.05 billion dollar settlement. Walmart, 396 F.3d at 103, 106. The appellate court affirmed the lower court's award of $220,290,160.44 representing 6.5% of the settlement's compensatory relief under the percentage of fund method. Id. at 106. The court awarded counsel an additional $18,716,511.44 in costs and expenses for a case taking "seven years of hard-fought litigation." Id. at 103, 106.

Here, we have fees of $21,300,000 on a $142 million dollar fund after 17 months without class certification or trial, compared to seven years of "hard-fought litigation." "[I]n mega-fund cases with class recoveries of $75–$200 million, courts are even more stringent, and fees in the 6–10 percent range and lower are common." In re Domestic Air Transp., 148 F.R.D. at 351. A mega-fund analysis of the fee award warrants a downward departure from the benchmark.

///

**Class Action Notice of Objection** 15-cv-02159-VC

## CONCLUSION

As a mega-fund class action, the Objectors request that the Court apply the mega-fund law by limiting the fee award to a reasonable amount between 5 and 10% of the total settlement fund.

Respectfully,

*[signature]*

Mike Murphy, Objector

Koch & Scow, LLC

By: /s/ Steven B. Scow
     Steven B. Scow

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on May 11, 2018, and served by the same means on all counsel of record.

By:   /s/ Steven B. Scow
      Steven B. Scow

**Class Action Notice of Objection** 15-cv-02159-VC